# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN, on behalf of himself
and all others similarly situated,

                              Plaintiff,

-vs.-

AMERICAN AIRLINES GROUP, INC.,

                              Defendant,

Case No. _____

**COMPLAINT – CLASS ACTION**

**EXEMPT FROM FILING FEES
UNDER 38 U.S.C. § 4323(h)(1)**

Plaintiff James P. Scanlan, on behalf of himself and other similarly situated individuals,

by and through his attorneys, alleges as follows:

## INTRODUCTION

1.       This is a class action under the Uniformed Services Employment and

Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq*., on behalf of current and

former employees who are or were participants in the American Airlines Group Inc. Global

Profit Sharing Plan ("the Plan"), and who took military leave from their employers, but did not

receive credit under the Plan for periods in which they took military leave to honorably serve in

the uniformed services.

2.       For the purpose of calculating profit sharing awards under the Plan, American

Airlines Group Inc. ("AAG") adopted and implemented a policy or practice whereby AAG does

not credit employees with imputed earnings for or otherwise credit their military leave. In

contrast, AAG does credit and/or impute employees' earnings under the Plan for comparable

forms of non-military leave, such as jury duty leave and union leave.  AAG's policy violates

USERRA rights of the servicemembers who take military leave to serve in the Armed Forces while they are participants in the Plan in two ways.

3.  First, USERRA requires military leave to be treated no less favorably than other forms of leave that the employer accords to any comparable form of leave.  By crediting earnings of employees who took jury duty leave and union leave when calculating profit sharing awards, AAG was required to consider the imputed earnings of employees who took military leave.  By failing to do so, AAG contravened USERRA's mandate to not subordinate military leave to other forms of leave.

4.  Second, USERRA requires that any employee who takes military leave and is reemployed by his or her employer, is entitled to credit for imputed earnings under the pension plan credit during the period of military leave.  As USERRA makes both the employer and the pension plan responsible for implementing this rule, AAG was required to recognize the imputed earnings of employees who took military leave when calculating profit sharing awards.  By failing to do so, AAG violated the USERRA rights of the Plan participants who took military leave.

5.  As a result of these violations, Plaintiff and the members of the Class received smaller amounts of profit sharing awards than they otherwise would have had AAG credited them with imputed earnings for their periods of military leave and were able to defer smaller amounts into their defined contribution plan accounts

6.  This action seeks a declaration that AAG violated USERRA by failing to credit the earnings associated with periods of military leave when calculating the profit sharing awards under the Plan for Plaintiff and members of the Class, an order requiring AAG to credit imputed earnings associated with military leave in the future, and an order requiring AAG to recalculate

and pay the prior profit sharing awards of Plaintiff and members of the Class consistent with the requirements of USERRA.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 38 U.S.C. § 4323(b)(3), which provides that the district courts of the United States have jurisdiction over a USERRA action brought against a private employer.  This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this action arises under laws of the United States.

8.      Venue is proper under 38 U.S.C. § 4323(c)(2) because Defendant AAG, is a private employer and maintains a place of business in this District at the Philadelphia International Airport.  Two of AAG's wholly-owned subsidiary airlines, American Airlines, Inc. and Piedmont Airlines, Inc., have primary transportation hubs and employ thousands of employees at the Philadelphia International Airport and the Philadelphia Airport is the main base for Piedmont Airlines.  A third wholly-owned subsidiary of AAG, PSA Airlines, Inc. has one of its handful of crew bases at the Philadelphia Airport. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims in this action occurred in this District.

## PARTIES

9.      Plaintiff James P. Scanlan is and has been employed as a pilot for American Airlines, Inc. since October 1999.  James P. Scanlan is also a Major General in the United States Air Force Reserve and has served in the United States Armed Services since 1985.  Throughout his employment at American Airlines, Plaintiff has taken leave to engage in qualified military service to perform his military reserve obligations.  During 2016 and 2017, Plaintiff was a

participant in the Plan.  During the time that Plaintiff was a participant in the Plan, Plaintiff took

military leave in 2016 and 2017.  Plaintiff resides in Doylestown, Pennsylvania.

10.     Defendant American Airlines Group Inc. ("AAG"), a Delaware corporation, is the

parent company of wholly-owned subsidiaries American Airlines, Inc., Envoy Air, Inc.

("Envoy"), Piedmont Airlines, Inc. ("Piedmont"), and PSA Airlines, Inc. ("PSA") (collectively

"the AAG Airlines").  The AAG Airlines operate airlines and provide services under the

American Airlines brand with a significant hub presence in Philadelphia, Pennsylvania, which is

located in this District.  As the sole owner and parent of the AAG Airlines, Defendant AAG

established and maintains the American Airlines Group Inc. Global Profit Sharing Plan ("the

Plan") to provide benefits to employees of the AAG Airlines in the form of profit sharing based

on AAG's own profit.

11.     Under Section C of the Plan, Defendant AAG calculates and determines profit

sharing awards based on employees' wages and salaries.  Pursuant to Section C of the Plan,

Defendant AAG is obligated to make profit sharing award payments to employees annually and

from its general assets.  Pursuant to Section H of the Plan, AAG has the authority to modify,

amend, annul, or terminate the Plan and, as such, has the authority to increase, reduce, or

eliminate employees' profit sharing awards.  According to AAG's Form 10-Ks filed with the

Securities and Exchange Commission, Defendant AAG was obligated to pay profit sharing

awards under the Plan in the amounts of $316 million for 2016 and $241 million for 2017.

Defendant AAG meets the definition of an employer within the meaning of 38 U.S.C.

§ 4303(4)(A) because it "pays salary or wages for work performed" and it "has control over

employment opportunities" for the employees who are eligible participants in the Plan.

## CLASS ACTION ALLEGATIONS

12.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> Employees of American Airlines, Inc., Envoy Air, Inc., Piedmont Airlines, Inc., and PSA Airlines, Inc. who (1) are or were participants in the American Airlines Group Inc. Global Profit Sharing Plan, and (2) while participants in the Plan are or were either employed inside the United States or are or were a citizen, national or permanent resident alien of the United States employed in a foreign country, and (3) after becoming a participant in the Plan took a period of military leave during a Plan Year in which they were eligible to receive an award under the Plan (or who would have been eligible to receive an award under the Plan if earnings associated with qualified military leave had been credited); and (3) whose profit sharing award under the Plan did not include imputed earnings for periods of military leave.

Excluded from the Class are any members of the Committee which was responsible for administering the Plan, all former or current employees who previously reached settlements with or judgments against American Airlines Group, Inc. in their individual USERRA actions concerning inadequate profit sharing awards that were based on earnings that did not take into account imputed income for periods of military leave.

**Impracticality of Joinder**

13.     The class is so numerous that joinder of all members is impracticable.

14.     Participants in the Global Profit Sharing Plan include employees of American Airlines, Envoy Air, Piedmont Airlines and PSA Airlines.  American Airlines, a wholly-owned subsidiary of AAG, has over 100,000 employees.  Envoy Air (formerly American Eagle

Airlines), which is a wholly-owned subsidiary of AAG, claims to be the world's largest regional carrier that flies under the American Eagle brand, has approximately 14,000 employees. Piedmont Airlines, a wholly-owned subsidiary of AAG that flies under the American Eagle brand (formerly flying under the US Airways Express brand), has approximately 7,000 employees.  PSA Airlines, which is a wholly-owned subsidiary of AAG that flies under the American Eagle brand, has approximately 3,900 employees.

15.     American Airlines and each of its regional carriers (*i.e.*, Envoy Air, Piedmont Airlines, and PSA) actively recruit and encourage members of the military to become employees. For example, on its web site, American Airlines states that it is "committed to hiring, training and developing candidates with a strong desire to learn and grow, both personally and professionally, and to supporting the diversity of thought and rich experience that military veterans bring to our workforce and embrace the opportunity to have them as part of the American Airlines family."[1]  Piedmont Airlines dedicates an entire web page to its "military transition program," and informs servicemembers that "Piedmont values your service to our country.  If you're seeking to make a transition to civilian flying, we'll make it easy with our Military Transition Program."[2]  Based on the number of airline employees who serve in the National Guard and Reserve and the AAG Airlines' active recruitment of members of the military, at least hundreds of current and former employees of the AAG Airlines are members of the Class.

16.     The members of the Class are geographically dispersed across the country. American Airlines currently has domestic and international "hubs" in the United States at the

---

[1] https://jobs.aa.com/content/veterans/
[2] http://piedmont-airlines.com/military-transition-program

following locations: Philadelphia, Pennsylvania; Queens, New York; Brooklyn, New York; Los Angeles, California; Miami, Florida; Chicago, Illinois; Charlotte, North Carolina; and Dallas/Fort Worth, Texas.  American Airlines pilots report for flying duty at pilot domicile bases located in all the hubs and also the focus cities of Boston, Massachusetts, and St. Louis, Missouri.  Envoy currently has hubs in Queens, New York; Miami, Florida; Chicago, Illinois; and Dallas/Fort Worth, Texas. Piedmont has hubs in Philadelphia, Pennsylvania, and Charlotte, North Carolina.  PSA has a hub in Charlotte, North Carolina, and maintains crew bases in Dayton and Cincinnati, Ohio; Knoxville Tennessee; Washington, D.C.; Charlotte, North Carolina; Philadelphia, Pennsylvania; and Norfolk, Virginia.  Based on the varied locations of the employees of the Airlines whose employees are eligible to participate in the Plan, the members of the Class are geographically dispersed across the country.

**Commonality**

17.     The central questions in this case, which will generate a common answer, is whether Defendant AAG's policy or practice of failing to credit Class Members with imputed earnings for their periods of military leave in calculating profit sharing awards under the Plan violates USERRA § 4316 and/or USERRA § 4318.

18.     Plaintiff's claims raise subsidiary common questions, including the following: (a) whether for the purposes of calculating profit sharing awards the Plan had to consider imputed earnings for qualified military service, because military leave is comparable to jury duty leave or union duty leave; (b) whether the Plan is a "pension plan" under USERRA, 38 U.S.C. § 4318, such that the Plan was required to consider imputed earnings for qualified military service when determining benefits; and (c) whether Defendant AAG's violations of USERRA were willful, such that it should be required to pay liquidated damages to Class Members.

19.     Because Defendant AAG adopted and applied a uniform policy or practice of not regarding its treatment of earnings for periods of military leave in calculating profit sharing awards or otherwise crediting military leave, answers to these questions will produce common answers for all members of the Class.

20.     As Defendant AAG acted in a uniform, systematic manner with respect to the Class, all members of the Class suffered the same type of injury based on a single policy or practice, and resolving the claims of the Class will be based on common legal and factual questions. Because the calculation and determination of awards under the Global Profit Sharing Plan were based on a uniform, written policy, the issues relating to the relief Class Members should receive are also common. To the extent that the policy or practice is found to have violated USERRA, the determination of the amounts to be paid to members of the Class will be formulaic and can be readily calculated without individualized determinations.

**Typicality**

21.     Plaintiff's claims are typical of the other members of the Class because the claims challenge a uniform policy or practice by which Defendant AAG failed to credit imputed income for periods of military leave, including while crediting earnings for comparable forms of non-military leave for purposes of calculating profit sharing awards under the Plan.

**Adequacy**

22.     Plaintiff will fairly and adequately protect the interests of other members of the Class.

23.     Plaintiff does not have any conflict with any other member of the Class.

24.     Defendant has no unique defenses against the Plaintiff that would interfere with Plaintiff's representation of the Class.

25.     Plaintiff is represented by counsel with significant experience in prosecuting class action litigation, including class action litigation involving rights and benefits of servicemembers under USERRA.

**Rule 23(b)(1)**

26.     This action can be maintained as a class action under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure. The central question is whether the uniform policy or practice by which Defendant AAG failed to include imputed income for periods of military leave, including when AAG credited earnings for comparable forms of non-military leave, for purposes of calculating profit sharing awards under the Plan violated USERRA.  As a result, prosecution of separate claims by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

27.     This action can be maintained as a class action under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure.  As a practical matter, resolution of whether AAG was required under USERRA to credit imputed earnings associated with military leave under the Plan would be dispositive of that matter for other participants in the Plan even if they were not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

**Rule 23(b)(2)**

28.     This action can also be maintained as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.  Defendant AAG has acted and/or failed to act on grounds generally applicable to the Class, making declaratory and injunctive appropriate with respect to the Class as a whole.

29.     Defendant AAG maintained a uniform policy or practice as to all members of the Class. Defendant AAG is alleged to have violated USERRA by refusing to credit imputed earnings associated with military leave when calculating profit sharing awards for all Plan participants who took military leave. As such, Defendant AAG has acted or refused to act on grounds that apply generally to the Class. As a result, final declaratory and injunctive relief is appropriate respecting the Class as a whole.

30.     The relief sought consists primarily of (a) a declaration establishing that Defendant has violated USERRA by failing to include imputed income for periods of military leave in calculating profit sharing awards under the Plan and (b) an order requiring Defendant to recalculate and pay profit sharing awards to Class Members consistent with the requirements of USERRA. The monetary relief sought either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner. Specifically, the amount owed the Class can be calculated by (a) comparing the profit sharing award amount received by the Class with the amount that would have been provided had imputed income for periods of military leave been included in calculating profit sharing awards and (b) paying the Class the difference between those amounts.

**Rule 23(b)(3)**

31.     The claims can also be certified as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure because the questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

32.     The common questions of law and fact concern whether Defendant AAG's policy regarding the failure to credit imputed earnings associated with military leave under the Plan violated USERRA.  As the members of the Class were all participants in that Plan who took military leave, their payments were affected by those violations and common questions related to liability will necessarily predominate over any individual questions related to liability.  As the calculation of payments under the Plan is governed by a written plan document and relief primarily consists of a declaration and order requiring AAG to calculate and recalculate benefits consistent with USERRA, common questions as to remedies will likewise predominate over any individual issues.

33.     A class action is superior to other available methods for the fair and efficient resolution of this controversy.  By resolving the common issues in a single class proceeding, the issues will be efficiently resolved in a single proceeding rather than multiple proceedings.  Class certification is a superior method of proceeding, because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant AAG's obligations under USERRA and of the remedy that should be provided under USERRA.

34.     The following factors set forth in Rule 23(b)(3) also support certification.

a.      The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).  Additionally, many members of the Class are unlikely to have sufficient damages to justify pursuing an individual federal court action or to obtain counsel to pursue an individual action, but all Class Members would benefit from a class action that obtains relief for all members of the Class.

b.       No other litigation concerning this controversy has been filed by any other members of the Class.

c.       This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, Philadelphia is hub for the AAG Airlines, and a significant portion of the Class works and/or resides in this District.

d.       There are no difficulties in managing this case as a class action.

## FACTUAL ALLEGATIONS

### The Plan

35.     AAG and/or the Board of Directors of AAG on behalf of AAG adopted and implemented the American Airlines Group Inc. Global Profit Sharing Plan effective January 1, 2016.

36.     Section K of the Plan defines participant to include certain regular full-time and part-time employees of AAG Airlines who are in the union or non-union groups in the Plan (denominated as Work Groups) as the employees eligible to participate in the Plan. The union groups include pilots, flight attendants, mechanics, and passenger service employees of the AAG Airlines. The non-union groups include non-union-represented management and non-management employees.

37.     Pursuant to Section B of the Plan, each participant is eligible to receive a profit sharing award with respect to each Plan Year.

38.     Section K of the Plan defines "Plan Year" to mean a designated fiscal year. Upon information and belief, the Plan Year is AAG's fiscal year, which is the calendar year.

39.     Section H of the Plan provides that AAG has the authority to modify, amend, annul or terminate the Plan at any time for any reason.

**Calculation and Payment of Profit Sharing Awards under the Plan**

40.     Pursuant to Section C of the Plan, AAG is obligated to pay profit sharing awards equal to 5% of AAG's pre-tax earnings with respect to each Plan Year.  According to Section C of the Plan, profit sharing awards paid pursuant to the Plan are paid from AAG's general assets.

41.     Pursuant to Section C of the Plan, the amount of a participant's profit sharing award with respect to each Plan Year is calculated and determined by dividing 5% of AAG's pre-tax earnings by the aggregate amount of all participants' earnings and multiplying the resulting quotient by the participant's eligible earnings. In other words, each participant is allocated with respect to each Plan Year a *pro rata* amount of 5% of the AAG's pre-tax earnings based on his or her individual earnings compared to the aggregate earnings of all participants.

42.     Section K of the Plan defines "Eligible Earnings" under the Plan in relevant part to mean "Compensation" as that term is defined for purposes of employer contributions in the qualified defined contribution plan that is intended to comply with Section 401(k) of the Code that is sponsored by the Employee's Participating Employer and in which such Employee is eligible to participate at the time the profit sharing award is paid.  For Plaintiff Scanlan, that Plan was the American Airlines, Inc. 401(k) Plan for Pilots.

43.     According to the Summary Plan Description of the American Airlines, Inc. 401(k) Plan for Pilots, the employer contributions are based on a pilot's "Eligible Compensation" as defined in the 401(k) Plan.  The 401(k) Plan defines "Eligible Compensation" to include not only "all amounts reported as wage on the IRS W-2 after [the employee] become[s] an active Participant in the Plan" but explains that for "authorized military and non-military leaves of

absence" a participant is entitled to "receive Pilot Company Contributions that are made to the Plan based on Eligible Compensation earned during [the participant's] leave of absence. Upon information and belief, the 401(k) Plans for other Class Members included similar provisions with respect to military leave.

44.     From the inception of the Profit Sharing Plan through the present, AAG has adopted a policy or practice whereby it credits leave and imputes income for calculating awards under the Plan for leave for jury duty and union leave. During that same time (*i.e.*, from inception of the Plan through the present), AAG has adopted a policy or practice whereby it has refused to credit leave for military service and fails to include earnings or impute earnings for calculating awards under the Plan for leave associated with qualified military service.

45.     Pursuant to AAG's policy and practice, with respect to calculating the profit sharing awards of participants who have taken military leave from their employment at the AAG Airlines, Defendant AAG has not included in the participants' eligible earnings the amount that they would have earned from their employment had they not taken military leave. Pursuant to the same policy or practice, for participants who have taken comparable forms of non-military leave, such as jury duty leave or union leave, from their employment at the AAG Airlines, Defendant AAG credited earnings for those non-military leaves.

46.     Pursuant to Section D of the Plan, each profit sharing award allocated to a participant under Section C of the Plan is paid in the form of a lump-sum cash payment by March 15 of the immediately following Plan Year or such other date as required by applicable law.

47.     AAG's Form 10-Ks for the fiscal years ended December 31, 2016, and December 31, 2017, respectively, stated that AAG was obligated to pay profit sharing awards under the Plan in the amounts of $316 million for 2016 and $241 million for 2017.

48.     AAG's Form 10-K for the fiscal year ended December 31, 2017, stated that profit sharing awards for 2017 under the Plan would be distributed to participants in the first quarter of 2018.

**Plaintiff's USERRA-Protected Military Leave & Awards Under the Plan**

49.     Throughout 2016 and 2017, Plaintiff Scanlan took various periods of leave that qualified as a service in the uniformed services within the meaning of USERRA, 38 U.S.C. § 4303(13).  Those periods of military leave ranged approximately between two days and fourteen days.  Plaintiff's qualified military service in 2016 totaled 128 days.  Plaintiff's qualified military service in 2017 totaled 132 days.

50.     Plaintiff took military service in 2016 and 2017 on the dates listed below:

| **2016** (128 days) | **2017** (132 days) | |
|---|---|---|
| Feb 7-20, 2016 (14) | Jan 6, 2017 (1) | Jul 6-8, 2017 (3) |
| Mar 7-18, 2016 (12) | Jan 12, 2017 (1) | Jul 19-29, 2017 (11) |
| Mar 21-25, 2016 (5) | Feb 7-9, 2017 (3) | Aug 1-5, 2017 (5) |
| Apr 10-17, 2016 (8) | Feb 13-14, 2017 (2) | Aug 7-11, 2017 (5) |
| Apr 24-29, 2016 (6) | Feb 23-24, 2017 (2) | Aug 21-23, 2017 (3) |
| May 3-16, 2016 (14) | Feb 27, 2017 (1) | Aug 29-30, 2017 (2) |
| May 25-28, 2016 (4) | Mar 2-3, 2017 (2) | Sep 4-15, 2017 (12) |
| Jun 12-15, 2016 (4) | Mar 13-17, 2017 (5) | Sep 18-22, 2017 (5) |
| Jul 9-15, 2016 (7) | Mar 20-22, 2017 (3) | Sep 25, 2017 (1) |
| Jul 19-21, 2016 (3) | Mar 28-29, 2017 (2) | Oct 4-5, 2017 (2) |
| Jul 30 – Aug 4, 2016 (6) | Apr 7, 2017 (1) | Oct 10-13, 2017 (4) |
| Aug 15-27, 2016 (13) | Apr 15, 2017 (1) | Nov 7-9, 2017 (3) |
| Sep 4-15, 2016 (12) | Apr 17-21, 2017 (5) | Nov 13-17, 2017 (5) |
| Oct 3-7, 2016 (5) | May 9-12, 2017 (4) | Nov 19-21, 2017 (3) |
| Nov, 14-18, 2016 (5) | May 16-19, 2017 (4) | Dec 4-9, 2017 (6) |
| Dec 5-9, 2016 (5) | May 21-26, 2017 (6) | Dec 12-13, 2017 (2) |
| Dec 19-23, 2016 (5) | Jun 3-16, 2017 (14) | |
| | Jun 26-28, 2017 (3) | |

51.     During the time that Plaintiff took qualified military service in 2016 and 2017,

Plaintiff was a participant in the Plan.

52.     In calculating profit sharing awards for the 2016 and 2017 Plan Years, Defendant

AAG did not include, credit or impute the individual eligible earnings of participants who took

military leave in 2016 or 2017.

53.     In the first quarter of 2017 and 2018, Defendant AAG was required under the

Plan to pay and distribute and did pay and distribute profit sharing awards under the Plan for the

2016 and 2017 Plan Years, respectively.  As a result of Defendant AAG's failure to include in

his eligible earnings an imputed income for his periods of military leave in 2016 and 2017,

Plaintiff received profit sharing awards from AAG in substantially lower amounts than he would

have had Defendant calculated his profit sharing awards based on eligible earnings that included

imputed income for his periods of military leave or otherwise credited him for military leave.

**AAG Confirms its Policy and is Informed That its Policy and Practice Violates USERRA**

54.     After Plaintiff Scanlan failed to receive a profit sharing award under the Plan in

2016 that included credited or imputed earnings for periods of qualified military leave, he

inquired with the representative of his union, the Allied Pilots Association, whether the failure to

credit or include imputed earnings from military leave under the Plan was a mistake unique to

him or whether this was AAG's policy.  Specifically, Plaintiff Scanlan advised the Allied Pilots

Association in early 2017 that AAG's failure to credit his military service under the Plan violated

USERRA.

55.     In early February 2017, the Allied Pilots Association informed Mr. Scanlan that

AAG's policy was any time away from the company where there is not income generation will

reduce the calculation under the Profit Sharing Plan. The Allied Pilots Association also explained that AAG's policy regarding the Profit Sharing Plan was different than AAG's 401k plan, and that the Profit Sharing Plan was a benefit that was not negotiated between AAG and the Allied Pilots Association.

56.     In mid-February 2017, the Allied Pilots Association informed Mr. Scanlan that it had asked AAG to confirm whether or not military service qualified for profits sharing and was waiting on AAG to respond and that AAG was consulting with its legal department before delivering its response.

57.     At the end of February 2017, the Allied Pilots Association had additional discussions with AAG and was informed by AAG that *only* the actual earnings listed on a pilot's W-2 would be considered as eligible earnings for the purposes of computing profit sharing awards under the Plan. In the course of those discussions, AAG was advised that other major airlines compute profit sharing payments by including imputed earnings associated with periods of military leave.

58.     At the end of March 2017, the Allied Pilots Association informed Mr. Scanlan that AAG's final position was that it will not adjust profit sharing awards based upon imputed earnings associated with military leave. The Allied Pilots Association confirmed that AAG's Board of Directors (which has the power to interpret the Plan) had decided that imputed income for military leave of absence is not and will not be used in the calculation of profit sharing awards under the Plan.

59.     As a result of AAG's policy, each member of the Class – who by definition were participants in the Plan and took leave that qualified as a service in the uniformed services within the meaning of USERRA, 38 U.S.C. § 4303(13) – did not have his or her imputed earnings from

periods of military leave included in the calculation of his or her profit sharing awards for the 2016 and 2017 Plan Years.  And each Class Member will not have it included in future Plan Years.

60.     As a result of its policy, Defendant AAG did not credit leave for military service or include imputed earnings in the individual eligible earnings for at least hundreds of participants who had taken military leave in 2016 or 2017.

61.     By at least early 2017, if not before, Defendant AAG knew that its policy and practice of calculating the profit sharing awards of participants in the Plan who took military leave violated USERRA, but failed to bring its policy or practice into compliance with federal law.  As such, Defendant's violations of USERRA were willful.

62.     Based on references on its websites, Defendant AAG and/or the AAG Airlines are parties to contracts with the United States government that prohibit Defendant AAG and the AAG Airlines from discrimination against veterans and military service members.

63.     Defendant AAG and/or the AAG Airlines maintained workplace posters that set out employer responsibilities under USERRA as required by 38 U.S.C. § 4334 similar to those found on American Airlines website.[3]

## COUNT I

### VIOLATION OF USERRA, 38 U.S.C. § 4316(b)(1), AGAINST DEFENDANT AAG

64.     Plaintiff hereby repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

65.     USERRA, 38 U.S.C. § 4316(b)(1), provides that "a person who is absent from a position of employment by reason of service in the uniformed services shall be (A) deemed to be

---

[3] https://jobs.aa.com/sites/american-airlines/pdfs/2017-Policy-Statement-EEO-Poster.pdf

on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service."

66.     The U.S. Department of Labor  regulations that implement and interpret USERRA § 4316(b)(1), 20 C.F.R. § 1002.150(b), provide that "[i]f the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services."

67.     Pursuant to its policy or practice, Defendant AAG credited participants who had taken jury duty leave or union leave from their employment at the AAG Airlines with earnings for those periods of leave in 2016 and 2017 for the purpose of calculating profit sharing awards of in the Plan for 2016 and 2017, respectively.

68.     For the purpose of calculating the profit sharing awards of participants in the Plan who had taken military leave from their employment at the AAG Airlines in 2016 and 2017 Plan Years, Defendant AAG did not include in the participants' eligible earnings any imputed income that they would have earned from their employment had they not taken military leave.

69.     The types of leave for which AAG provided credit under the Plan -- jury duty leave and union leave -- are comparable to military leave in terms of the duration, purpose, and/or the ability of the employee to determine whether to take the leave.  For example, jury duty is compulsory and taken to perform a public service, similar to how servicemembers are often

required to take military leave to perform a public service in the Armed Forces. Union leave is similar to military leave in that earnings paid by a non-AAG entity are credited under the Plan.

70.    By adopting and applying a policy or practice of not including imputed income for Class Members' periods of military leave to calculate their profit sharing awards under the Plan, Defendant AAG denied Class members the same rights and benefits provided to employees on non-military leave, including jury duty leave and union leave, and failed to provide Class members the most favorable treatment accorded to employees on comparable forms of non-military leave. By doing so, AAG violated and continues to violate USERRA § 4316(b)(1).

71.    Due to Defendant's failure to comply with USERRA § 4316(b)(1), Plaintiff and other members of the Class received profit sharing awards that were smaller than what they would have received had Defendant AAG complied with USERRA and the Department of Labor Regulations.

72.    Upon information and belief, Defendant's violation of USERRA § 4316(b)(1) was willful.

## COUNT II

**VIOLATION OF USERRA, 38 U.S.C. § 4318(b)(1), AGAINST DEFENDANT AAG**

73.    Plaintiff hereby repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

74.    USERRA, 38 U.S.C. § 4318, describes an employee pension benefit plan to include a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2). But USERRA § 4318(a)(1)(A) expressly applies to pension plans that are not covered by ERISA. The DOL Regulations, 20 C.F.R. § 1002.260(a), explain that while all ERISA-covered pension plan are covered by USERRA, "USERRA covers certain pension plans not covered by ERISA."

75.     Section J.10 of the Plan claims that the American Airlines Global Profit Sharing Plan is intended to be "exempt from regulation under ERISA as a 'payroll practice' and 'a bonus program' as described in U.S. Department of Labor Regulations [29 C.F.R. §] 2510.3-1(b) and [29 C.F.R. §] 2510.3-2(c), respectively." The cited Department of Labor exemptions exclude from ERISA coverage employee benefit arrangements and programs that meet the definition of an ERISA pension plan and would otherwise qualify as plans under ERISA, but for the exemption. However, USERRA § 4318(a)(1)(A) includes a pension plan to include not only plans that meet the ERISA definition, but also those excluded or exempted from ERISA.

76.     The American Airlines Global Profit Sharing Plan meets the definition of an employee benefit pension plan under USERRA, 38 U.S.C. § 4318, regardless of whether it is excluded as a pension plan under ERISA. Among other things, the American Airlines Global Profit Sharing Plan permitted employees to designate the amount of their profit sharing awards toward their retirement plans and thereby defer their profit sharing awards to the termination of their employment and/or have the awards paid as retirement income.

77.     USERRA § 4318(a)(2)(B) provides that an employee's service in the uniformed service will be deemed to constitute service with the employer for purposes of determining the accrual of benefits under a pension plan.

78.     The Department of Labor's regulations, specifically 20 C.F.R. § 1002.259, require that "[o]n reemployment, the employee [be] treated as not having a break in service with the employer or the employers maintaining a pension plan, for purposes of participation, vesting and accrual of benefits, by reason of the period of absence from employment due to or necessitated by service in the uniformed services."

79.     Pursuant to USERRA, 38 U.S.C. § 4318(b)(1), an employer reemploying a person after a period of service in the uniformed services is liable to the employee benefit pension plan for funding any obligation of the plan to provide benefits, including those accrued under USERRA § 4318(a)(2)(B).

80.     For purposes of computing an employer's liability under USERRA 38 U.S.C. § 4318(b), the employee's compensation during the period of service described in § 4318 (a)(2)(B) shall be computed either (A) at the rate the employee would have received but for the period of service described in Section 4318(a)(2)(B), or (B) in the case that the determination of such rate is not reasonably certain, on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period).

81.     AAG adopted a policy that did not treat the service of employees who took leave in the uniformed service as service with the AAG Airlines under the Global Profit Sharing Plan.

82.     By failing to treat the service of employees who took leave in the uniformed service as service with the AAG Airlines under the Global Profit Sharing Plan, AAG violated and continues to violate USERRA § 4318.

83.     As a result of Defendant's failure to comply with USERRA § 4318, Plaintiff and other members of the Class received profit sharing awards that were smaller than what they would have received had Defendant complied with USERRA and were unable to use those amounts that should have been allocated to contribute amounts into their tax-qualified retirement plans.

84.     Upon information and belief, Defendant's violation of USERRA § 4318 was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant AAG on all claims and respectfully requests that this Court award the following relief:

A.      Declare that Defendant AAG's policy or practice by which Defendant failed to include imputed income for or credit toward participants' periods of military leave to calculate their profit sharing awards under the Plan violated the rights of Plaintiff and the Class under USERRA § 4316 and USERRA 4318;

B.      Declare Defendant's violations of USERRA were willful under 38 U.S.C. § 4323(d)(1)(C).

C.      Declare that the eligible earnings under the Plan for Plaintiff and the Class for their profit sharing awards must be based on amounts that include imputed income for their periods of military leave;

D.      Require Defendant AAG to recalculate the profit sharing awards that Plaintiff and the Class are entitled to receive under the Plan in accordance with the Court's declaration;

E.      Require Defendant AAG to calculate and pay profit sharing awards that participants in the Plan are entitled to receive in the future to include imputed income for or credit for their periods of military leave;

F.      Order Defendant AAG to pay all members of the Class liquidated damages in an amount to be determined at trial, 38 U.S.C. § 4323(d)(1)(C);

G.      Award pre-judgment and post-judgment interest on any monetary relief awarded or required by order of this Court.

H.      Require Defendant AAG to pay attorneys' fees, expert witness fees, litigation expenses and costs pursuant to 38 U.S.C. § 4323(h) and/or order the payment of reasonable fees

and expenses in this action to Plaintiff's Counsel on the basis of the common benefit and/or common fund doctrine out of any money or benefit recovered for the Class in this Action; and

I.       Grant such other and further relief as the Court deems proper, just and/or equitable.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38 or any similar rule or law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

Dated: September 18, 2018

Respectfully submitted,

Adam Garner (Attorney I.D. 320476)
THE GARNER FIRM LTD.
1515 Market St. Suite 1200
Philadelphia PA 19102
Telephone: (215) 645-5955
Facsimile: (215) 645-5960
Email: adam@garnerltd.com

R. Joseph Barton
(Pro Hac Vice Application to be Filed)
BLOCK & LEVITON LLP
1735 20th Street, NW
Washington D.C. 20009
Telephone: (202) 734-7046
Fax:    (617) 507-6020
jbarton@blockesq.com

Peter Romer-Friedman
(Pro Hac Vice Application to be Filed)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue, NW
Second Floor West
Washington, DC 20001
Telephone (202) 847-4400
prf@outtengolden.com

Matthew Z. Crotty
(Pro Hac Vice Application to be Filed)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave.
Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
matt@crottyandson.com

Thomas G. Jarrard
(Pro Hac Vice Application to be Filed)
LAW OFFICE OF THOMAS G. JARRARD
LLC
1020 N. Washington St.
Spokane, WA  99201
Tel:  (425) 239-7290
Fax: (509) 326-2932
Tjarrard@att.net

*Attorneys for Plaintiffs*