**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES P. SCANLAN, on behalf of himself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>-vs.-<br><br>AMERICAN AIRLINES GROUP INC., and AMERICAN AIRLINES, INC.,<br><br>　　　　　　Defendants. | Civil Action No. 2:18-cv-04040-HB |

**DEFENDANTS AMERICAN AIRLINES, INC. AND AMERICAN AIRLINES GROUP INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Mark W. Robertson (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
mrobertson@omm.com

M. Tristan Morales (*pro hac vice* pending)
O'MELVENY & MYERS LLP
1625 Eye St NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
tmorales@omm.com

Kenneth A. Murphy
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
kenneth.murphy@dbr.com

*Attorneys for Defendants American Airlines Group Inc. and American Airlines, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

PLAINTIFF'S ALLEGATIONS ......................................................................... 2

LEGAL STANDARD.......................................................................................... 4

ARGUMENT ....................................................................................................... 4

I.      PLAINTIFF FAILS TO STATE A CLAIM AGAINST AMERICAN ............................. 4

      A.      USERRA Does Not Require Employers to Pay Employees' Wages During Military Leaves ................................................................ 4

      B.      Section 4316(b) Does Not Require Employers to Pay Employees' Wages During Military Leaves ............................................. 7

            1.      Wages for Work Not Performed are Not "Benefits" Under Section 4316(b)(1) ...................................................... 8

            2.      Construing USERRA's "Benefits" Provisions to Include Wages Would be Inconsistent with Applicable Precedent and Result in Substantial Adverse Consequences ............................. 12

      C.      Plaintiff Fails to Allege Any Non-Military "Leave of Absence" Under Section 4316(b) That Could Obligate American to Pay Wages During Military Leaves ................................................ 15

II.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST AAG ............................. 17

      A.      Count I Fails to State a Claim ................................................ 18

      B.      Count II Fails to State a Claim ................................................ 19

            1.      The Profit-Sharing Plan is Not an "Employee Pension Benefit Plan" under ERISA ...................................................... 20

            2.      The Profit-Sharing Plan is Not Subject to Any Limited Exception for Non-ERISA Pension Benefit Plans ................................. 22

CONCLUSION.................................................................................................... 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accardi v. Penn. R. Co.*,
    383 U.S. 225 (1966)....................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................... 4

*Assoc. of Flight Attendants v. USAir*,
    960 F.2d 345 (3d Cir. 1992) .......................................................................... 17

*Brooks v. Fiore*,
    2001 WL 1218448 (D. Del. Oct. 11, 2001) .................................................... 5

*Buckley v. Peak6 Investments, LP*,
    827 F. Supp. 2d 846 (N.D. Ill. Oct. 27, 2011) ......................................... 6, 13

*Butterbaugh v. Dep't. of Justice*,
    336 F.3d 1332 (Fed. Cir. 2003) ...................................................................... 6

*Capraro v. United Parcel Serv. Co.*,
    993 F.2d 328 (3d Cir. 1993) .......................................................................... 17

*Carroll v. Delaware River Port Auth.*,
    843 F.3d 129 (3d Cir. 2016) ............................................................................ 4

*Dong v. Smithsonian Inst.*,
    125 F.3d 877 (D.C. Cir. 1997) ...................................................................... 10

*Duncan v. Tyco Fire Products*,
    2018 WL 3303305 (N.D. Ala. July 5, 2018) ......................................... 1, 5, 12

*Emmenegger v. Bull Moose Tube Co.*,
    197 F.3d 929 (8th Cir. 1999) ........................................................................ 21

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
    314 U.S. 95 (1941)......................................................................................... 10

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ............................................................................ 4

*Gagnon v. Sprint Corp.*,
    284 F.3d 839 (8th Cir. 2002) .......................................................................... 9

*Gordon v. Wawa, Inc.*,
    388 F.3d 78 (3d Cir. 2004) .............................................................................. 6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995)................................................................................. 10

*Hayes v. Harvey*,
   903 F.3d 32 (3d Cir. 2018) ...................................................................... 11

*Int'l Ass'n of Machinists & Aerospace Workers v. U.S. Airways, Inc.*,
   358 F.3d 255 (3d Cir. 2004) .................................................................... 17

*McIntosh v. Partridge*,
   540 F.3d 315 (5th Cir.2008) ..................................................................... 4

*Miller v. City of Indianapolis*,
   281 F.3d 648 (7th Cir. 2002) .................................................................... 5

*Monroe v. Standard Oil Co*,
   452 U.S. 549 (1981)............................................................................... 5, 6

*Murphy v. Inexco Oil Co.*,
   611 F.2d 570 (5th Cir. 1980) .................................................................. 21

*Oatway v. Am. Int'l Grp., Inc.*,
   325 F.3d 184 (3d Cir. 2003) .................................................................... 21

*Rich v. Shrader*,
   823 F.3d 1205 (9th Cir. 2016) ........................................................... 21, 22

*Rogers v City of San Antonio*,
   392 F.3d 758 (5th Cir. 2004) ........................................................ 2, 14, 18

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014) ................................................................. 3, 15

*Tolbert v. RBC Capital Markets Corp.*,
   758 F.3d 619 (5th Cir. 2014) .................................................................. 22

*United States v. Tupone*,
   442 F.3d 145 (3d Cir. 2006) .................................................................... 11

*United States v. Woody*,
   220 F. Supp.3d 682 (E.D. Va. 2016) ...................................................... 14

*Walters v. Metro. Educ. Ents., Inc.*,
   519 U.S. 202 (1997)................................................................................ 10

*Warren Gen. Hosp. v. Amgen Inc.*,
   643 F.3d 77 (3d Cir. 2011) ....................................................................... 4

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Whitman v. Am. Trucking Ass'n.*,
  531 U.S. 457 (2001) ........................................................................... 14

**Statutes**

29 U.S.C. § 1002(2) ............................................................................. 20

29 U.S.C. § 1003(b) ............................................................................. 22

38 U.S.C. § 4301(a)(1) ......................................................................... 4

38 U.S.C. § 4303(2) ..................................................................... passim

38 U.S.C. § 4311 ................................................................................. 4

38 U.S.C. § 4316(b) ...................................................................... 15, 19

38 U.S.C. § 4316(b)(1) ................................................................ passim

38 U.S.C. § 4316(b)(1)(B) ................................................................. 12

38 U.S.C. § 4316(d) ........................................................................... 12

38 U.S.C. § 4318 ......................................................................... 19, 23

38 U.S.C. § 4323(d)(1)(B) ................................................................. 11

45 U.S.C. § 151a ............................................................................... 17

5 U.S.C. § 6323(a)(1) ........................................................................... 6

**Other Authorities**

156 CONG. REC. S7656-02 (daily ed. Sep. 28, 2010) ........................... 9

Black's Law Dictionary (10th ed. 2014) ............................................ 10

*Employee Compensation and Benefits Tax Guide* (2018) .................... 9

Jackson Brainerd, *Paid Family Leave in the States*, 25 LEGIS BRIEF 31 (Aug. 2017),
  http://www.ncsl.org/research/labor-and-employment/paid-family-leave-in-the-
  states.aspx ..................................................................................... 13

*Jury Duty*, U.S. DEP'T. LABOR, https://www.dol.gov/general/topic/benefits-
  leave/juryduty (last visited Apr. 9, 2019) ....................................... 13

*General Frequently Asked Questions*, U.S. DEP'T.
  LABOR, https://www.dol.gov/vets/generalfaq.htm (last visited Apr. 9, 2019) ........................... 7

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Jury Duty Leave Laws*, EMP'T. LAW
HANDBOOK, https://www.employmentlawhandbook.com/leave-laws/jury-duty-leave-laws/ (last visited Apr. 9, 2019) ........................................................................... 13

U.S. ATT'Y. OFF., DIST. AZ., UNIF'D. SERV. EMP'T. & REEMP'T. RIGHTS ACT (2011),
https://www.justice.gov/sites/default/files/usao-az/legacy/2011/01/07/USERRA_Handbook.pdf ........................................................ 7

*Jury Management*, NAT'L. CTR. STATE CT., https://www.ncsc.org/topics/jury/jury-management/state-links.aspx?cat=Juror%20Pay (last visited Apr. 9, 2019) ........................... 13

Kathryn Piscitelli & Edward Still, THE USERRA MANUAL: UNIFORM SERVICES
EMPLOYMENT & REEMPLOYMENT RIGHTS (2011) ..................................................... 6

**Rules**

Rule 12(b)(6).................................................................................................................... 23

**Regulations**

20 C.F.R. § 1002.2 ............................................................................................................ 5

20 C.F.R. § 1002.260 ........................................................................................................ 20

20 C.F.R. § 1002.7 ............................................................................................................ 7

20 C.F.R. 1002.260(a)....................................................................................................... 22

29 C.F.R. § 2510.3-2(c) .................................................................................................... 20

70 FR 75246-01 ............................................................................................................ 1, 7

## PRELIMINARY STATEMENT

Plaintiff James Scanlan, a pilot at American Airlines, Inc. ("American"), asserts that the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § *et seq.*, requires American to pay his wages during periods of short-term military leave. Plaintiff is wrong.  The Department of Labor ("DOL")—the entity tasked with implementing USERRA—has expressly stated that wage payments "by employers to their employees absent to perform military service" are "neither required nor addressed in USERRA."  70 FR 75246-01 ("DOL Final Rules") at 75249.  Courts, in turn, have recognized that USERRA "does not require an employer to pay an employee for time away from work performing service."  *Duncan v. Tyco Fire Products*, 2018 WL 3303305, at *4 (N.D. Ala. July 5, 2018).  "[W]hen an employer provides paid military leave under its policies, it does so above and beyond any requirements in USERRA."  *Id.*  Plaintiff does not even appear to disagree with this accepted principle.  Instead, he contends that because American continues to pay its employees' wages during certain short-term work absences—for example, jury duty—it must also pay employee wages during short-term military leave.  That requirement, however, is found nowhere in USERRA and would be an end-run around the established rule that USERRA does not require paid military leave.  For this and the other reasons explained in detail below, Plaintiff's sole count against American (Count III) fails to state a claim and should be dismissed with prejudice.

Plaintiff's two counts against American's parent company (American Airlines Group Inc. ("AAG")) regarding the AAG Global Profit Sharing Plan (the "Profit-Sharing Plan") (Counts I and II) fare no better.  Plaintiff alleges that AAG violated USERRA when it "failed to include imputed income for periods of short-term military leave" when calculating profit-sharing awards. (First Amended Complaint ("FAC") at ¶ 29.)  But AAG does not "include imputed income" for

any employees when calculating profit-sharing awards—whether or not they are on a leave of absence.  Instead, as Plaintiff alleges, the Profit Sharing Plan calculates all profit-sharing awards solely based on an employee's actual earnings.  (*Id.* at ¶ 61.)  Because Count I seeks a "benefit" for pilots on military leave that is not provided to pilots on any non-military leave of absence, it fails to state a claim under Section 4316(b)(1).  *See Rogers v City of San Antonio*, 392 F.3d 758, 769 (5th Cir. 2004) (section 4316(b)(1)'s purpose is to "guarantee a measure of equality of treatment with respect to military and non-military leaves and to strike an appropriate balance between benefits to employee-service persons and costs to employers.")  Nor can Plaintiff state a claim for relief under Section 4318 (Count II), because the Profit-Sharing Plan is not an "employee pension benefit plan" under USERRA as required to state a claim—it is a bonus program.  Accordingly, Counts I and II against AAG also fail to state a claim and likewise should be dismissed with prejudice.

## PLAINTIFF'S ALLEGATIONS

Plaintiff is a pilot for American.  (FAC ¶ 9.)  Plaintiff alleges that American violated USERRA by failing "to pay the regular compensation of military service members who take short-term military leave or the difference between their regular [American] pay and their military pay during such short-term military leave."  (*Id.* ¶¶ 71, 94-101.)  Plaintiff asserts that American must pay him and other American employees on short-term military leave "the amount equal to what they would have earned had they continued to work their ordinary work schedules for American."  (*Id.* ¶ 14.)  Plaintiff's basis for this claim (set forth in Count III) is Section 4316(b)(1) of USERRA.  (*Id.* ¶¶ 97-98.)

Separately, Plaintiff brings two claims (Counts I and II) against AAG regarding the Profit-Sharing Plan.  The Profit-Sharing Plan is a "bonus program" that rewards eligible

employees for their efforts in helping achieve AAG's strategic, financial, and operating objectives by providing those employees with an opportunity to share in AAG's profits for each Plan year.  (*Id.* at ¶ 84; Declaration of Todd F. Jewett ¶ 4, Ex. 1 ("Decl. Ex. 1") at 1, 5.)[1] Plaintiff alleges that, in 2017, the Allied Pilots Association ("APA") (his certified union representative) informed him that, "any time away from the company where there is not income generation will not be included in the calculation under the Profit Sharing Plan."  (FAC ¶ 59.) Plaintiff alleges that APA further informed him that, "*only* the actual earnings listed on a pilot's W-2 would be considered as eligible earnings for the purposes of computing profit-sharing awards."  (*Id.* at ¶ 61.)

Plaintiff alleges that AAG violated USERRA when it "failed to include imputed income for periods of short-term military leave" when calculating profit-sharing awards.  (*Id.* ¶ 29.) Specifically, in Count I, Plaintiff alleges that Section 4316(b)(1) requires AAG to "include imputed income for periods of short-term military leave" in profit-sharing calculations because these calculations include "earnings" received by employees on jury duty and union duty—two forms of paid leave.  (*Id.* at ¶¶ 29, 72-80.)  In Count II, Plaintiff alleges that the Profit-Sharing Plan is an "employee pension benefit plan" under Section 4318 and that AAG is therefore obligated to treat periods of short-term military leave as periods of "service" at American when calculating the profit-sharing award.  (*Id.* at ¶¶ 81-93.)

---

[1] The terms of the Profit-Sharing Plan are integral to and expressly relied upon by Plaintiff in the First Amended Complaint.  (*See, e.g.*, FAC ¶¶ 39-50, 84).  Under Rule 12(b)(6), a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *See*, *e.g., Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation and citation omitted).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "This requires a plaintiff to plead 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

## ARGUMENT

## I.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST AMERICAN

Plaintiff alleges that American violated Section 4316(b)(1) when it "failed to pay its employees during periods of short-term military leave," because it pays employees "for various forms of comparable non-military leave," including jury duty, union duty, and sick leave. (FAC ¶ 97.) But USERRA does not require, in Section 4316(b) or otherwise, that a civilian employer pay employees' wages for periods of military service. Accordingly, Plaintiff's sole claim against American (Count III) should be dismissed for failure to state a claim.

### A.     USERRA Does Not Require Employers to Pay Employees' Wages During Military Leaves

USERRA "protects employees from being discriminated against by their employers because of their military service." *McIntosh v. Partridge*, 540 F.3d 315, 320 (5th Cir.2008) (citing 38 U.S.C. § 4311). Its purpose is to "encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." *Carroll v. Delaware River Port Auth.*, 843 F.3d 129, 131 (3d Cir. 2016) (quoting 38 U.S.C. § 4301(a)(1)). To effectuate this purpose, USERRA includes provisions regarding non-discrimination (Section 4311), reemployment (Sections 4312 and

4313), entitlement to seniority-based and non-seniority-based benefits after periods of uniformed service (Section 4316), and entitlement to specific benefits, such as health (Section 4317) and pension (Section 4318).  *See generally* 38 U.S.C. §§ 4301-4335.

USERRA, however, does not include any provision requiring employers to pay employees' wages for periods of military service.  In this regard, USERRA mirrors its immediate predecessor statute, the Vietnam Era Veterans' Readjustment Assistance Act of 1974 ("VRRA"), which similarly did "not require the employer to pay the employee for the time he is absent for military training duty, or even to make up the difference between his military pay and his regular earnings for that period."  *See Monroe v. Standard Oil Co*, 452 U.S. 549, 563, n.14 (1981); *see also* 20 C.F.R. § 1002.2 ("In enacting USERRA, Congress emphasized USERRA's continuity with the VRRA.").

Precedent confirms what the statute's text and structure already make clear.  For example, in rejecting an employee's claim that USERRA entitled him to "forty hours of pay each week . . . while he was away on active military duty," one federal court recently held that:

> USERRA "does not require an employer to pay an employee for time away from work performing service, [but] an employer policy, plan, or practice that provides such a benefit is permissible under USERRA."  20 C.F.R. § 1002.7; *see* 38 U.S.C. § 4316(b)(1)(B).  In other words, when an employer provides paid military leave under its policies, it does so above and beyond any requirements in USERRA.  *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 891 (7th Cir. 2011).

*Duncan v. Tyco Fire Products*, 2018 WL 3303305, at *4 (N.D. Ala. July 5, 2018).  Federal courts have repeatedly recognized this uncontroversial proposition.  *See, e.g., Miller v. City of Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002) ("[USERRA] does not expressly require paid military leave.").  *Brooks v. Fiore*, 2001 WL 1218448, at *9 (D. Del. Oct. 11, 2001) (employer has "*voluntary* policy of paying its employees the difference between any military pay received and their usual pay during periods of military service.  However, there is no requirement under

USERRA that [the employer] provide such differential pay to its employees.") (emphasis in original); *Buckley v. Peak6 Investments, LP*, 827 F. Supp. 2d 846, 856 (N.D. Ill. Oct. 27, 2011) ("USERRA . . . does not require employers to pay employees on military leave.") (citing Kathryn Piscitelli & Edward Still, THE USERRA MANUAL: UNIFORM SERVICES EMPLOYMENT & REEMPLOYMENT RIGHTS (2011) ("Generally, USERRA does not require employers to pay employees wages for time spent performing military service.")).[2]

        "If Congress had wanted to impose an additional obligation upon employers, guaranteeing that employee-reservists . . . earn the same amount of pay that they would have earned without absences attributable to military reserve duties, it could have done so expressly." *See Monroe*, 452 U.S. at 564.  Indeed, when Congress *has* required compensation during periods of military service, it has said so clearly.  For example, Congress in USERRA expressly requires employers to provide certain pension and healthcare benefits during periods of active service. *See* 38 U.S.C. §§ 4317-4318.  And outside the USERRA context, Congress expressly requires that federal employees receive wages for periods of military service of up to 15 days per year. *See* 5 U.S.C. § 6323(a)(1) (federal employees are "entitled to leave without loss in pay . . . at the rate of 15 days per fiscal year."); *Butterbaugh v. Dep't. of Justice*, 336 F.3d 1332, 1333 (Fed. Cir. 2003) ("By statute, 5 U.S.C. § 6323(a)(1) (2000), federal employees are granted up to '15 days' of paid leave to attend reserve or National Guard training.").  The presence of a wage payment requirement for *federal* employees (albeit limited to 15 days) highlights the absence of such a requirement for non-federal employees like Plaintiff under USERRA.

---

[2] The Third Circuit has recognized *in dicta* that USERRA does not guarantee employees the right to paid military leave.  *See Gordon v. Wawa, Inc.*, 388 F.3d 78, 82 (3d Cir. 2004).

Indeed, the two federal agencies with primary responsibility for administering and enforcing USERRA have expressly confirmed that the statute does not require employers to pay wages during periods of military service.  The DOL, the agency delegated authority to administer USERRA, has explained that "employees absent from employment for military service are *not* required [under the statute] to be compensated by their civilian employer during that service." DOL Final Rules (2005) at 75292, 20 C.F.R. § 1002.7; *see also* DOL Final Rules (2005) at 75249 ("The term 'differential pay' refers to payments by employers to their employees absent to perform military service, and this pay is neither required nor addressed in USERRA.")  The DOL also provides the following FAQ guidance regarding pay under USERRA: "While many employers take the commendable step of providing all or part of employees' pay while they perform military service, there is no obligation under . . . [USERRA] for them to do so."[3] Department of Justice officials who enforce USERRA have similarly stated:  "Although some private and many government employers provide full or partial civilian pay to employees absent on military duty-usually for a limited period of time—the law requires only an unpaid leave of absence."[4]

**B.     Section 4316(b) Does Not Require Employers to Pay Employees' Wages During Military Leaves**

According to Plaintiff, even though USERRA does not include any "Pay" provision requiring payment of employees' wages during military leave, he is entitled to pay as a "benefit" under Section 4316(b).  (FAC ¶¶ 94-101.)  Section 4316(b)(1) provides, in relevant part, that an

---

[3] *General Frequently Asked Questions*, U.S. DEP'T. LABOR, https://www.dol.gov/vets/generalfaq.htm (last visited Apr. 9, 2019).

[4] *See, e.g.,* U.S. ATT'Y. OFF., DIST. AZ., UNIF'D. SERV. EMP'T. & REEMP'T. RIGHTS ACT (2011), https://www.justice.gov/sites/default/files/usaoaz/legacy/2011/01/07/USERRA_Handbook.pdf.

employee on military leave is "entitled to such other rights and benefits not determined by seniority as are generally provided by the employer . . . to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy practice, or plan." 38 U.S.C. § 4316(b)(1). Plaintiff alleges that Section 4316(b) requires American to "pay employees when they take short-term military leave" because American pays the wages of employees on jury duty, union duty, and sick leave. (FAC ¶¶ 97-100.) In other words, Plaintiff argues that American must pay him wages for work he did not perform because pay for work not performed constitutes a "benefit" under Section 4316(b).

Plaintiff's theory of Section 4316(b) has no basis in the text or structure of the statute. And if adopted, it would not only contradict the universally accepted principle just described— i.e., that USERRA does *not* require pay for periods of military service—but would also result in substantial adverse practical consequences that Congress could not have envisioned.

1.   Wages for Work Not Performed are Not "Benefits" Under Section 4316(b)(1)

Plaintiff is not entitled to wages under Section 4316(b) because wages for work not performed—i.e. wages for a military leave of absence—are not a "benefit" under Section 4316(b). Section 4316(b)(1) provides that employees on military leave are "entitled to such other rights and benefits not determined by seniority as are generally provided by the employer . . . to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy practice, or plan." 38 U.S.C. § 4316(b)(1). Section 4303(2), in turn, defines "benefits" to mean:

> the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment

8

benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).

Wages for work not performed are not a "benefit" under USERRA.  The only reference to wages in Section 4303(2) is the phrase "including wages or salary for work performed," which Congress added in 2010 with the specific purpose of overruling an Eighth Circuit decision, *Gagnon v. Sprint Corp.*, 284 F.3d 839 (8th Cir. 2002).  In *Gagnon*, the court held that an employee's wage *rate* was not a benefit within the meaning of the statute.  *Id.* at 853.  Congress added this proviso in 2010 solely "to make it clear that wage discrimination is not permitted under USERRA," 156 CONG. REC. S7656-02 (daily ed. Sep. 28, 2010).  Thus, if an employer applies different wage *rates* to active employees based on their prior military service—if, for example, an employee is paid $40 per hour but would have received $50 per hour but for her military absence—then Section 4303(2) may permit the employee to assert a claim for wage rate discrimination under USERRA.  By contrast, Congress has not included any provision—in Section 4303(2) or otherwise—requiring employers to *pay wages* for periods that employees are not working due to military leave.

Plaintiff's assertion that USERRA includes "wages" in the "benefits" that an employer must provide for periods of military service is also inconsistent with the fundamental tenet of employment law that wages and benefits are distinct.  A benefit is not a wage, and a wage is not a benefit:

> Employee fringe benefits are a broad form of compensation which are generally provided by the employer to executives and other employees on a current basis as a supplement to current salary and bonus payments. There are many separate types of benefits that are included in this classification such as group-term life insurance, meals and lodging furnished by the employer, employer health and accident insurance, and others.

*Employee Compensation and Benefits Tax Guide*, at 301 (2018).

9

There is zero indication that Congress meant to depart from these settled principles when it enacted USERRA—on the contrary, Congress codified them.  To start, Congress's decision to use the term "accrues" in the definition of "benefits" dictates that wages, no matter the type, fall outside the definition of benefits.  In ordinary, common parlance, the transitive verb "accrue" means "[t]o accumulate periodically; to increase over a period of time."  Black's Law Dictionary (10th ed. 2014); *see also* Merriam Webster (same); *see also Walters v. Metro. Educ. Ents., Inc.*, 519 U.S. 202, 207 (1997) ("In the absence of an indication to the contrary, words in a statute are assumed to bear their 'ordinary, contemporary, common meaning.'") (quotations omitted)).  Pension benefits, for example, accrue over time.  So do wage *rates*—for example, increased seniority might result in a higher hourly rate.  But wages, as that term is commonly used, do not accrue.  They do not accumulate periodically; rather they are *earned*, usually "based on time worked or quantity produced."  Black's Law Dictionary (10th ed. 2014).  It follows that wages cannot be considered a "benefit" under USERRA because USERRA benefits "accrue."

This is confirmed by the context in which the term "benefit" is defined.  In addition to setting forth a general definition, Section 4303(2) contains a non-exhaustive list of benefits, and it is axiomatic that the inclusion of such a list is "illustrative of . . . the general principle."  *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941); *see, e.g., Dong v. Smithsonian Inst.*, 125 F.3d 877, 880 (D.C. Cir. 1997).  This interpretive principle is consistent with the *noscitur a sociis* canon, which holds "that a word is known by the company it keeps."  *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995).  Courts rely on this canon "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress."  *Id*. (quotations omitted).

Here, all the examples of "benefits" listed in § 4303(2) are perks of employment that are not directly tethered to work performed—they flow from the *fact of the employment relationship* and not work performed pursuant to it.  For instance, benefits under a health or employee stock ownership plan, and insurance coverage and awards, are all types of compensation, but none depends on actual work—an employee is usually awarded such benefits simply because he or she is and remains employed.  Severance pay and unemployment benefits are the same, except they accrue when that relationship is terminated.  *See, e.g., Accardi v. Penn. R. Co.*, 383 U.S. 225, 230 (1966) (under predecessor statute, holding that severance pay is compensation for the loss of "rights and benefits [an employee] forfeits by giving up his job").  And the opportunity to select work hours or location of employment (and one's wage rate, as discussed below) is generally a function of longevity with a company—again, the fact of a continued employment relationship, not direct compensation for services rendered.  Wages are the exact opposite.  They are direct remuneration for work performed by the employee for the employer.  For this reason too, wages cannot be considered "benefits" under § 4303(2).

A contrary interpretation of the term "benefits" is also incompatible with USERRA's broader structure.  *See, e.g., United States v. Tupone*, 442 F.3d 145, 151 (3d Cir. 2006) ("The Supreme Court has stated consistently that the text of a statute must be considered in the larger context or structure of the statute in which it is found.").  Congress expressly provided in USERRA's remedy provision that "[t]he court may require the employer to compensate the person for any loss of wages *or* benefits suffered by reason of such employer's failure to comply with the provisions of this chapter."  38 U.S.C. § 4323(d)(1)(B) (emphasis added).  If wages were included within the meaning of benefits, there would have been no reason for Congress separately to provide for recovery of wages.  Congress could simply have stated that an

11

employee can recover for "any loss of benefits."  It did not, and Plaintiff's reading of the term

"benefits" would render § 4323(d)(1)(B)'s use of the term "wages" redundant.  *See, e.g., Hayes*

*v. Harvey*, 903 F.3d 32, 42 (3d Cir. 2018) (noting the "well-established canon of statutory

interpretation that statutes should be read to avoid making any provision superfluous, void, or

insignificant" (quotations omitted)).[5]

Finally, even if wages were included within the definition of "benefits," that definition by

its terms only applies to "wages or salary for work *performed*."  38 U.S.C. § 4303(2) (emphasis

added).  But what Plaintiffs are asking for here is to be paid wages for work *not* performed.

There is simply no basis in text or logic to Plaintiff's construction of USERRA.

Plainly, then, Congress's inclusion of the phrase "wages or salary for work performed"

was not meant to fundamentally overhaul the definition of benefits and unmoor USERRA from

its employment law underpinnings.  Yet that is precisely what Plaintiff would have this Court do.

Under Plaintiff's reading, that phrase would cover not only wage *rates*, but *wages* writ large.

That is clearly not what Congress intended when it included this statutory language.

> 2.   Construing USERRA's "Benefits" Provisions to Include Wages
>       Would be Inconsistent with Applicable Precedent and Result in
>       Substantial Adverse Consequences

Plaintiff's assertion that Section 4316(b) includes a wages requirement also cannot be

reconciled with the accepted proposition that USERRA does *not* require employers to pay wages

during periods of military service.  Indeed, both *Duncan* and *Buckley* expressly acknowledged

the "benefits" provisions in Section 4316(b)(1) but nevertheless affirmed the longstanding

---

[5] Plaintiff's assertion that the "benefits" provision in Section 4316(b) requires American to pay employees'
wages during periods of military service would also render superfluous Section 4316(d), which provides
that employees on a military leave of absence can use "vacation, annual, or similar leave with pay accrued
by the person before the commencement of such service."  38 U.S.C. § 4316(d).

principle that USERRA does not require payment of employees' wages.  *Duncan*, 2018 WL 3303305, at *4 ("USERRA does not require an employer to pay an employee for time away from work performing service) (citing, *inter alia*, 38 U.S.C. § 4316(b)(1)(B)); *Buckley,* 827 F. Supp. 2d at 856 ("USERRA . . . does not require employers to pay employees on military leave." (citing, *inter alia*, 38 U.S.C. § 4316(b)(1)).

Plaintiff's reading of Section 4613(b), moreover, would result in serious negative and unintended consequences.  For example, it would render USERRA benefits dependent on differences in state and local wage laws.  State laws require a significant number of employers in the United States to pay wages for some form of non-military absences.  For example, "some state laws require employers to pay employees who are asked to serve jury duty."[6]  Other state laws require employers to pay wages for sick absences.[7]  Plaintiff's argument would mean that a service member in a state that requires wage payments for non-military absences (including jury duty and sick leave) would be automatically entitled under USERRA to wages during periods of service, whereas a similarly situated service member in a state with no such requirement would not be.  Congress would not have excluded an express wage payment provision in USERRA only to indirectly impose a wage payment requirement dependent on a patchwork of state and local benefits laws.

---

[6] *Jury Duty*, U.S. DEP'T. LABOR, https://www.dol.gov/general/topic/benefits-leave/juryduty (last visited Apr. 9, 2019.  At least eight states and Washington D.C. require employers to pay at least a portion of employees' wages while on jury duty.  (*Id.*); (*Jury Duty Leave Laws*, EMP'T. LAW HANDBOOK, https://www.employmentlawhandbook.com/leave-laws/jury-duty-leave-laws/ (last visited Apr. 9, 2019)).

[7] "Seven states and D.C. require paid sick leave." (Jackson Brainerd, *Paid Family Leave in the States*, 25 LEGIS BRIEF 31 (Aug. 2017), http://www.ncsl.org/research/labor-and-employment/paid-family-leave-in-the-states.aspx)

Indeed, Plaintiff's *sui generis* theory would attach dramatic consequences to any non-military paid absence provision—for example, paid sick leave, jury duty, or union duty. Any employer in any industry that provides for any one of these paid absences would be required to pay employees' wages under USERRA for periods of military leave.[8] This theory is incompatible with "the common sense principle of statutory construction that Congress 'does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouse holes." *See United States v. Woody*, 220 F. Supp.3d 682 (E.D. Va. 2016) (citing *Whitman v. Am. Trucking Ass'n.*, 531 U.S. 457, 468 (2001)).

Finally, Plaintiff's theory would have the perverse effect of encouraging employers, as well as state and local governments, to reduce the availability of pay for sick leave, jury duty, maternity or bereavement, and others form of non-military absences. This disruptive effect—triggering immense economic consequences for employers based on non-military paid leaves—would be magnified in cases like this one, where the terms of Plaintiff's employment (including wages, military leave, and non-military absences) are collectively bargained for a "geographically dispersed" work force. (FAC ¶¶ 19, 68-69.) There is absolutely no indication that Congress intended Section 4316(b)(1) to enact such a dramatic overhaul of employers' (or state and local governments') decisions regarding whether non-military absences should be paid or unpaid. Plaintiff's reading of Section 4316(b) should be rejected for this reason as well. *See Rogers v City of San Antonio*, 392 F.3d 758, 769 (5th Cir. 2004) ("Congress sought by §

---

[8] One factor that magnifies the sweeping impact of Plaintiff's theory is that USERRA, unlike a number of other employment discrimination statutes, does not include any minimum employee threshold. *Compare* Title VII, 42 U.S.C. § 2000e(b) (covered "employer" has "fifteen or more employees") *with* USERRA, 38 U.S.C. § 4303(4)(A) (no minimum employee threshold for "employer").

4316(b)(1) . . . to strike an appropriate balance between benefits to employee-service persons and costs to employers.  USERRA does not authorize the courts to add to or detract from that guarantee or to restrike that balance.").

C.      **Plaintiff Fails to Allege Any Non-Military "Leave of Absence" Under Section 4316(b) That Could Obligate American to Pay Wages during Military Leaves**

Even if wages for work *not* performed were a benefit within the meaning of § 4316(b), Plaintiff's claim against American would still fail because Plaintiff has not identified a "leave of absence under a contract, agreement, policy, practice or plan" pursuant to which American pays an employee's wages, which he must do to state a claim.  38 U.S.C. § 4316(b).

Plaintiff alleges that American violated § 4316(b) because it does not provide differential pay for pilots on short-term military leave, but does so for pilots on jury duty, and pays pilots' full wages while out for short-term sick and union duty.  (FAC ¶¶ 68-71, 95-100.)  Under Section 4316(b), however, employees on military leave are entitled only to the same non-seniority rights and benefits as other employees "who are on furlough or leave of absence *under a contract, agreement, policy, practice, or plan*." 38 U.S.C. § 4316(b) (emphasis added).  Thus, if short-term jury duty, short-term union duty, or short-term sick absences are not a leave of absence under the CBA governing Plaintiff's employment, then Plaintiff's claim fails with respect to that type of absence—and if all three are not leaves of absence, then Plaintiff's claim fails on this basis alone.[9]

That is precisely the case here.  As Plaintiff confirms in his complaint, a CBA governs Plaintiff's employment relationship with American.  *See* (FAC ¶¶ 68-69); (Declaration of Todd

---

[9] None of these absences are a "furlough" under the CBA, nor does Plaintiff allege any "furlough" as a basis for his claim under Section 4316(b).

F. Jewett ¶ 5, Ex. 2 ("Decl. Ex. 2").)[10]  And that CBA defines what constitutes a leave of absence.  (*See* Decl. Ex. 2 § 11 ("Leaves of Absence")).  None of the absences for which Plaintiff seeks benefits—short-term jury duty, short-term sick leave, or short-term union duty— is a leave of absence under the CBA.  Indeed, the relevant section of the CBA (Section 11) does not even mention any of those absences.

Jury duty, for example, is notably absent from Section 11 addressing "leaves of absence," and is instead addressed by Section 5 of the CBA.  That section provides that a pilot on jury-duty leave is effectively treated as if he or she were still flying, and is entitled to compensation "for the trips such pilot was scheduled to fly."  (Decl. Ex. 2 § 5(B).)

Like jury-duty leave, the CBA addresses sick leave in a separate section (Section 10), which specifically addresses short-term sick leave.  (Decl. Ex. 2 § 10(B)(1), (3).)  The only material difference between jury-duty leave and sick leave is that Section § 11—the section expressly governing leaves of absence—does mention sick leaves.  But that reference further undermines Plaintiff's claim, because it shows that only specific *long-term* sick absences could be a leave of absence under the CBA.  (*Id.* § 11(D) ("leave of absence for sickness or injury shall not commence until after a pilot has exhausted his accrued sick leave credits in accordance with Section 10.C.8," which generally requires the exhaustion of short-term sick leave before "Long Term Disability").)[11]

---

[10] Like the Profit Sharing Plan, the Court can consider the terms of the CBA because they are integral to and expressly relied upon in the First Amended Complaint.  (FAC ¶¶ 68-69); *see Schmidt*, 770 F.3d at 249.

[11] Pursuant to Section 11.D, pilots typically must be on long-term disability to receive benefits.  (Decl. Ex. 2 § 11(D).)  The benefits addressed in Section 11.D do not entitle Plaintiff to any benefits for military leave because the benefits provided to pilots on long-term disability are not "generally provided" to American's pilots and, in any event, are not provided to pilots on a "similar . . . status."  *See* Section 4316(b)(1).

Finally, Section 11's reference to union duty ("Duty with the Association") excludes the short-term union leave for which Plaintiff seeks compensation.  Under the CBA, union absences constitute a leave of absence only when a pilot is providing services to the union "on a full time basis," and the CBA clarifies that only three pilots may take such a leave at a time.  Decl. Ex. 2 § 11(F).  Short-term union duty, by definition, is not performed on a full-time basis.

Accordingly, because short-term jury-duty, short-term union duty, and short-term sick leave are not leaves of absence under the plain language of the CBA, Plaintiff fails to state a claim against American.[12]

## II.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST AAG

Plaintiff alleges that AAG (American's parent corporation) violated USERRA by failing to "include imputed income for periods of short-term military leave" when calculating profit-sharing awards.  (FAC ¶ 29.)  Because neither Section 4316(b) (Count I) nor Section 4318 (Count II) require AAG to "include imputed income" when calculating profit-sharing awards, Counts I and II should be dismissed.

---

[12] If Plaintiff disagrees with this interpretation of the CBA, Count III must still be dismissed as a "minor dispute" under principles of RLA preclusion.  The RLA "prohibits federal courts from becoming involved in minor disputes"; minor disputes are instead subject to mandatory arbitration by specialized adjustment boards.  *Assoc. of Flight Attendants v. USAir*, 960 F.2d 345, 348 (3d Cir. 1992); *Int'l Ass'n of Machinists & Aerospace Workers v. U.S. Airways, Inc.*, 358 F.3d 255, 260 (3d Cir. 2004); *Capraro v. United Parcel Serv. Co.*, 993 F.2d 328, 332 (3d Cir. 1993).  A dispute is "minor" under the RLA where it requires "interpretation or application of agreements covering rates of pay, rules, or working conditions."  45 U.S.C. § 151a; *Assoc. of Flight Attendants*, 960 F.3d at 348.  Thus, neither federal nor state courts have jurisdiction if resolution of a claim involves the "interpretation of the collective bargaining agreement, either because employee's claim or the employer's defense relies on the agreement," including cases involving "course and practice under the collective bargaining agreement or the 'common law of the shop.'"  *Capraro*, 993 F.2d at 332.  Any dispute about the meaning of the CBA—including whether short-term jury duty, short-term sick leave, or short-term union duty is a "leave of absence" under the CBA—is subject to the exclusive jurisdiction of the applicable System Board, depriving this Court of subject matter jurisdiction over the dispute.

A.    **Count I Fails to State a Claim**

In Count I, Plaintiff alleges that Section 4316(b)(1) requires AAG to include "imputed income" for periods of short-term military leave when calculating employees' profit-sharing awards for 2016 and 2017.  (FAC ¶¶ 75-76.)  Plaintiff argues this is required because AAG "credited participants who had taken jury duty leave or union leave . . . with earnings for those periods of leave in 2016 and 2017 for the purpose of calculating their profit sharing awards."  (*Id*.)  Count I fails to state a claim.

First, Plaintiff has not alleged that AAG included "imputed income" in the profit-sharing calculation for *any* employee for *any* reason, whether or not they were on a military leave of absence.  Under Section 4316(b)(1), an employee on a military leave of absence is entitled to the same non-seniority benefits "as are generally provided by the employer . . . to employees having similar seniority, status, and pay who are on a furlough or leave of absence under a contract, agreement, policy, practice, or plan."  38 U.S.C. § 4316(b)(1).  Here, Plaintiff alleges that AAG denied him the non-seniority benefit of including "imputed income" as "eligible earnings" when calculating his profit-sharing award for 2016 and 2017.  (FAC ¶ 76.)  But Section 4316(b)(1) does not guarantee service members any particular benefit.  Rather, the aim of section 4316(b)(1) is to "guarantee a measure of equality of treatment with respect to military and non-military leaves."  *Rogers*, 392 F.3d at 769.  Thus, to prevail on this claim, Plaintiff would have to allege that AAG provided *other employees* the non-seniority benefit of including "imputed income" as "eligible earnings" when calculating their profit-sharing award for 2016 and 2017—i.e. that AAG provided other employees the "benefit" of artificially assuming that earnings existed during a leave of absence.

Plaintiff alleges no such thing.  He alleges only that employees who performed jury duty or union obligations at American in 2016 or 2017 received their *wages* and therefore had

"eligible earnings" when calculating their profit-sharing awards.  (FAC ¶¶ 68, 75-78.)[13]  But wages are not benefits for the reasons already explained, and Plaintiff was treated just like every other employee on leave with respect to benefits.  (*Id.* at ¶¶ 59-61 (emphasis in original).)  Thus, Count I simply restates (and is entirely dependent on) the flawed claim for wages in Count III against American, described above.  Accordingly, Count I fails to state a claim.

Second, Count I fails for the added reason that employees performing jury duty or union duty at American are not on a qualifying "leave of absence" under Section 4316(b), such that American is required to provide the alleged profit-sharing "benefits" at issue to employees on short-term military leaves.  Specifically, as set forth at Section I.C above, under the plain language of the CBA that governs the employment of Plaintiff (and other American pilots), short-term jury-duty and short-term union duty are not a "leave of absence."  *See* 4316(b)(1).  Accordingly, Plaintiff's claim fails under Section 4316(b) because it fails to identify any "leave of absence under a contract" for which the alleged profit-sharing benefit at issue is generally provided.

### B.   Count II Fails to State a Claim

In Count II, Plaintiff asserts that he is entitled to profit-sharing benefits under USERRA Section 4318.  *See* 38 U.S.C. § 4318 ("Employee pension benefit plans").  Section 4318 addresses, in relevant part, rights "provided pursuant to an employee pension benefit plan (including those described in sections 3(2) and 3(33) of [ERISA]."  USERRA's implementing regulations provide as follows:

What pension benefit plans are covered under USERRA?

---

[13] Count I includes a single, apparently stray, reference to sick absences as well (FAC ¶ 77), but Count I does not allege any facts supporting a claim on the basis of sick leave and any such claim would fail for the reasons set forth with respect to jury duty and union duty.

> (a) The Employee Retirement Income Security Act of 1974 (ERISA) defines an employee pension benefit plan as a plan that provides retirement income to employees, or defers employee income to a period extending to or beyond the termination of employment. Any such plan maintained by the employer or employers is covered under USERRA. USERRA also covers certain pension plans not covered by ERISA, such as those sponsored by a State, government entity, or church for its employees.

(20 C.F.R. § 1002.260.)  Thus, to qualify as an "employee pension benefit plan" under USERRA, a pension plan must qualify as an "employee pension benefit plan" under ERISA, except that ERISA excludes plans—"such as those sponsored by a State, government entity, or church for its employees"—that would otherwise qualify as ERISA pension benefit plans, whereas USERRA includes no such exclusion.  The Profit-Sharing Plan is not an "employee pension benefit plan" under USERRA because it is not an "employee pension benefit plan under ERISA," and it plainly does not qualify for any of USERRA's limited exceptions for non-ERISA-qualifying plans.

1.     **The Profit-Sharing Plan is Not an "Employee Pension Benefit Plan" under ERISA**

ERISA defines an "employee pension benefit plan" as "a plan, fund or program" that "provides retirement income to employees" or "results in the deferral of income by employees for periods extending to the termination of covered employment or beyond."  29 U.S.C. § 1002(2).  Consistent with that statutory definition, DOL regulations specifically provide that an "employee pension benefit plan" does not include "payments made by an employer to some or all of its employees," i.e., a "bonus program," "unless such payments are *systematically* deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees."  29 C.F.R. § 2510.3-2(c) (emphasis added).

Both the statutory and regulatory language place the Profit-Sharing Plan cleanly outside the category of "employee pension benefit plans."  The Profit-Sharing Plan is, in fact, nothing

20

more than a garden-variety "bonus program" that rewards eligible employees for their efforts in

helping achieve AAG's strategic, financial, and operating objectives by providing those

employees with an opportunity to share in AAG's profits for each Plan year.  (FAC at ¶ 84; Decl.

Ex. 1 at 5; *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 932–33 (8th Cir. 1999)

(describing "reward (higher cash value) for superior performance (higher corporate earnings)" as

a "classic 'bonus' situation").)  And it is not a bonus program that "systematically" defers

income to retirement or termination from employment.  To the contrary, as Plaintiff

acknowledges, payments under the Profit-Sharing Plan are made shortly following the

conclusion of the calendar year for which AAG earned profits (i.e. in the early months of 2018

for Plan Year 2017).  (FAC ¶ 50.)  The primary purpose of the program is thus neither to provide

deferred compensation until after employment nor to provide retirement income.  *See Oatway v.*

*Am. Int'l Grp., Inc.*, 325 F.3d 184, 188–89 (3d Cir. 2003) (plan was not ERISA plan "because its

purpose was to operate as an incentive and bonus program, and not as a means to defer

compensation or provide retirement benefits"); *Rich v. Shrader*, 823 F.3d 1205, 1210 (9th Cir.

2016) (under Section 1002(2) "the paramount consideration is whether the primary purpose of

the plan is to provide deferred compensation or other retirement benefits.") (citing *Murphy v.*

*Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir. 1980) ("The words 'provides retirement income'

patently refer only to plans designed for the purpose of paying retirement income whether as a

result of their express terms or surrounding circumstances.")).

     The only theory Plaintiff can muster for treating the Profit-Sharing Plan as an "employee

pension benefit plan" under ERISA (and thus USERRA) is that employees can elect to contribute

a portion of their profit sharing payments to an American retirement plan.  (FAC ¶ 85; Decl. Ex.

1 at 5.)  But the mere possibility that a bonus program could result in a retirement contribution is

not enough to render the program a pension plan—the deferral must be systematic.  *See Emmenegger*, 197 F.3d at 931–34 ("Though the [Phantom Stock Plan's (PSP)] vesting requirement could result in the deferral of a portion of any earned incentive until a participant's termination or retirement, . . . such a deferral would only occur by happenstance.  In fact, the stated purpose of the vesting requirement reinforces our conclusion that the PSP is a non-ERISA bonus plan."); *Rich*, 823 F.3d at 1210-11 ("[M]ere possibility that income can be deferred does not mandate ERISA coverage."); *Cf. Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619 (5th Cir. 2014) (wealth accumulation plan was "an employee pension benefit plan" where its stated purpose was to provide a "deferred compensation plan" and it was "not a bonus plan.").  Here, the *systematic* effect of the Profit-Sharing Plan's design is to pay employees promptly and not wait until those employees retire or otherwise leave employment.

Moreover, the mere fact that employees can elect to contribute a portion of their profit-sharing payments to a retirement plan does nothing to distinguish those payments from ordinary wages.  Wages too may be contributed in part to a retirement plan. (FAC ¶ 85; Decl. Ex. 1 at 5.) Yet no one could reasonably contend that ordinary wages themselves are part of an "employee pension benefit plan" or that the primary purpose of wages is to defer compensation until *after* one ceases employment.  If anything, the fact that, just as with their wages, employees must contribute their profit sharing payments to a retirement plan in order to defer payment until retirement demonstrates that the Profit Sharing Plan is not a retirement plan—if it were, no such contribution would be necessary.

2.  **The Profit-Sharing Plan is Not Subject to Any Limited Exception for Non-ERISA Pension Benefit Plans**

In Count II, Plaintiff also asserts that "USERRA § 4318(a)(1) expressly applies to pension plans that are not covered by ERISA."  (FAC ¶ 82.)  This assertion is both incomplete

and misleading.  ERISA expressly exempts church and governmental plans (including state governments) that would otherwise qualify as pension plans under ERISA.  29 U.S.C. § 1003(b).  The DOL's USERRA regulation, 20 C.F.R. 1002.260(a), which Plaintiff acknowledges provides the definition of an "employee pension benefit plan" under USERRA, (FAC ¶ 82), states that "USERRA also covers certain pension plans not covered by ERISA, such as those sponsored by a State, government entity, or church for its employees."  Thus, the DOL's USERRA regulation simply clarifies that plans that fall within ERISA's general definition of a pension plan are covered by USERRA, even if they are expressly excluded by ERISA (i.e. church or governmental plans).

The exceptions are thus irrelevant here—setting aside the fact that the Profit-Sharing Plan is not "sponsored by a State, government entity, or church," it could never be covered by USERRA because it does not fall within ERISA's general definition of "employee pension benefit plan" in the first place.  Plaintiff would expand an exception whose obvious purpose is to ensure that USERRA covers church- and government-plans even though ERISA does not into a wholesale exception for any pension plan not covered by ERISA would swallow the rule, and finds no support in Section 4318.  Count II should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## **CONCLUSION**

For these reasons, Defendants respectfully request that this Court dismiss the First

Amended Complaint with prejudice.

Dated:  April 9, 2019

Respectfully submitted,

By: */s/ Mark W. Robertson*

Mark W. Robertson, Esq. (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
mrobertson@omm.com

M. Tristan Morales, D.C. Bar #278498
(*pro hac vice* pending)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
tmorales@omm.com

Kenneth A. Murphy
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
kenneth.murphy@dbr.com

*Attorneys for Defendants American Airlines Group Inc. and American Airlines, Inc.*

24