# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN, on behalf of himself
and all others similarly situated

                        Plaintiff

-vs.-

AMERICAN AIRLINES GROUP, INC. and
AMERICAN AIRLINES, INC.

                        Defendants

**Case No. 18-4040**

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ALLEGATIONS OF THE COMPLAINT ......................................................................... 2

ARGUMENT ...................................................................................................................... 3

I.   Under the Proper Legal Standards, Defendants' Motion Should Be Denied .................. 3

   A.   Rule 12(b)(6) Requires Considering the Context of the Claim and the Statute .......... 3

   B.   Defendants' Motion Ignores the Canons Used to Interpret USERRA ........................ 3

II.  Count III States Claim Under USERRA § 4316(b) Against American ............................ 4

   A.   USERRA § 4316(b) Guarantees That Employees Who Take Military Leave Receive
      the Same "Rights and Benefits" As Other Employees Who Take Non-Military
      Leave, Including Wages ................................................................................................ 5

      1.   Section 4316(b) Mandates That Employees Must Be Paid for Military Leave
         When the Employer Pays Comparable Leave ......................................................... 6

      2.   Section 4303(2)'s Text in its Original and Amended Versions Provides  that
         "Rights and Benefits" Includes Pay When No Work Is Performed ....................... 7

      3.   USERRA's Legislative History Confirms That Payment When Work Is Not
         Performed Are "Rights and Benefits" For § 4316(b) ........................................... 11

      4.   The 2010 Amendment to § 4303(2) Did Not Implicitly Exempt Wages for Work
         Not Performed From, But Instead Expanded the Scope of § 4303(2) ................. 12

   B.   Proper Interpretation of USERRA § 4316 Will Not Impose a General or Absolute
      Mandate on Employers to Provide Paid Military Leave ............................................. 13

   C.   American's Collective Bargaining Agreements Do Not Determine What Constitutes
      a Leaves of Absence Under USERRA ....................................................................... 16

   D.   The Consequences of Applying § 4316(b) As Written Will Be Minimal, But Should
      Not Be Considered When Interpreting USERRA ...................................................... 17

III. Count I Properly Alleges a Claim under USERRA § 4316(b) Against AAG ................. 17

IV. Count II Properly Alleges a Claim Under USERRA § 4318 ......................................... 20

   A.   Count II Sufficiently Alleges that the Profit Sharing Plan is a Pension Plan Under
      USERRA Regardless of Whether It is An ERISA Pension Plan ............................... 20

**B. The Complaint Sufficiently Alleges That the Profit Sharing Plan Meets the Definition of a Pension Plan Under ERISA § 3(2)** ....................................................... **22**

**V. Even if an ERISA Exemption Applied to a USERRA Definition, Count II Sufficiently Alleges That the Profit Sharing Plan is a Pension Plan** ................................................... **24**

**CONCLUSION** ............................................................................................................... **25**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ali v. Fed. Bureau of Prisons*,
　552 U.S. 214 (2008) ......................................................................................................8

*Anderson v. UNUM Provident Corp.*,
　369 F.3d 1257 (11th Cir. 2004) ..................................................................................22

*Benetiz v. Montebello*,
　No. 2009 Civ. 0303, 2010 WL 3814374 (C.D. Cal. Sept. 27, 2010)........................18

*Boyle v. United States*,
　556 U.S. 938 (2009)......................................................................................................8

*Brill v. AK Steel Corp.*,
　No. 2:09-cv-534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012) ...........................4, 6

*Brown v. Gardner*,
　513 U.S. 115 (1994)......................................................................................................3

*D'Elia v. Unum Life Ins. Co. of Am.*,
　223 F. Supp. 3d 380 (E.D. Pa. 2016) ..........................................................................23

*Dahlstrom v. Sun-Times Media, LLC*,
　777 F.3d 937 (7th Cir. 2015) ......................................................................................13

*Daniels-Hall v. Nat'l Educ. Ass'n*,
　629 F.3d 992 (9th Cir. 2010) ......................................................................................23

*Darby v. C. I. R.*,
　97 T.C. 51 (Tax Ct. 1991)...........................................................................................22

*Donovan v. Anheuser-Busch, Inc.*,
　666 F.2d 315 (8th Cir. 1981) ......................................................................................21

*Duffer v. United Cont'l Holdings, Inc.*,
　173 F. Supp. 3d 689 (N.D. Ill. 2016) ...............................................................4, 6, 16

*Emmenegger v. Bull Moose Tube Co.*,
　197 F.3d 929 (8th Cir. 1999) ................................................................................24, 25

*Fishgold v. Sullivan Drydock & Repair Corp.*,
　328 U.S. 275 (1946)...........................................................................................3, 10, 16

*Gagnon v. Sprint Corp.*,
284 F.3d 839 (8th Cir. 2002) .................................................................12, 13

*Gordon v. Wawa, Inc.*,
388 F.3d 78 (3d Cir. 2004)..............................................................................3

*In re Haman*,
366 B.R. 307 (Bankr. D. Del. 2007) ............................................................21

*Holansky v. Prudential Fin.*,
No. 2002 Civ. 4820, 2004 WL 1404016 (N.D. Ill. June 21, 2004) ..............25

*Holzer v. Prudential Eq. Group LLC*,
458 F. Supp. 2d 587 (N.D. Ill. 2006) ...........................................................24

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010)............................................................................8

*Kaufman v. S & A Rest. Corp.*,
No. 2006 Civ. 2192, 2008 WL 2242621 (N.D. Tex. May 30, 2008).............24

*Keeley v. Loomis Fargo & Co.*,
183 F.3d 257 (3d Cir. 1999)............................................................................7

*Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*,
95 F. Supp. 3d 402 (S.D.N.Y. 2015)..............................................................24

*Lam v. Cleveland*,
No. 16 Civ. 1563, 2018 WL 4206919 (N.D. Ohio Sept. 4, 2018) ..................4

*Lapine v. Wellesley*,
304 F.3d 90 (1st Cir. 2002).............................................................................4

*Leckey v. Stefano*,
263 F.3d 267 (3d Cir. 2001)..........................................................................22

*In re Lenton*,
358 B.R. 651 (Bankr. E.D. Pa. 2006) ...........................................................21

*Loughrin v. United States*,
573 U.S. 351 (2014).......................................................................................10

*Maher v. Chicago*,
463 F. Supp. 2d 837 (N.D. Ill. 2006), *aff'd* 547 F.3d 817 (7th Cir. 2008) ..............11

*McCann v. Unum Provident*,
907 F.3d 130 (3d Cir. 2018)..........................................................................24

*McKinney v. Mo.-Kan.-Tex. R.R. Co.*,
    357 U.S. 265 (1958) ...................................................................................16

*In re Meinen*,
    228 B.R. 368 (Bankr. W.D. Pa. 1998) .......................................................22

*Meredith v. Time Ins. Co.*,
    980 F.2d 352 (5th Cir. 1993) ......................................................................22

*Modzelewski v. ADR Tr. Corp.*,
    14 F.3d 1374 (9th Cir. 1994) ......................................................................23

*Monroe v. Standard Oil Co.*,
    452 U.S. 549 (1981) ...................................................................................14

*N.J. Air Nat'l Guard v. Fed. Labor Relations Auth.*,
    677 F.2d 276 (3d Cir. 1982) .......................................................................15

*Oatway v. Am. Int'l Group, Inc.*,
    325 F.3d 184 (3d Cir. 2003) .................................................................24, 25

*Petty v. Metro. Gov't of Nashville & Davidson Cty.*,
    687 F.3d 710 (6th Cir. 2012) ......................................................................11

*Pucilowski v. Dep't of Justice*,
    498 F.3d 1341 (Fed. Cir. 2007) ........................................................5, 15, 16

*Raypole v. Chemi-Trol Chem. Co., Inc.*,
    754 F.2d 169 (6th Cir. 1985) ......................................................................21

*U.S. ex rel. Reilly v. New Eng. Teamsters and Trucking Indus. Pension Fund*,
    737 F.2d 1274 (2d Cir. 1984) .....................................................................21

*Rich v. Shrader*,
    823 F.3d 1205 (9th Cir. 2016) ....................................................................24

*Rich v. Shrader*,
    No. 2009 Civ. 0652, 2011 WL 4434852 (S.D. Cal. Sept. 22, 2011) .........25

*Sebelius v. Cloer*,
    569 U.S. 369 (2013) ...................................................................................17

*Sweda v. U. of Pa.*,
    No. 17-3244, 2019 WL 1941310 (3d Cir. May 2, 2019) .............................3

*Tolbert v. RBC Capital Markets Corp.*,
    758 F.3d 619 (5th Cir. 2014) ................................................................24, 25

*United States v. Alabama Dep't of Mental Health & Mental Retardation*,
   673 F.3d 1320 (11th Cir. 2012) .................................................................................4

*United States v. Godoy*,
   706 F.3d 493 (D.C. Cir. 2013) .................................................................................21

*United States v. Missouri*,
   67 F. Supp. 3d 1047 (W.D. Mo. 2014) ....................................................................15

*Waltermeyer v. Aluminum Co. of America*,
   804 F.2d 821 (3d Cir. 1986).............................................................................. *passim*

*Woodall v. Am. Airlines*,
   No. 06 Civ. 72, 2006 WL 2914135 (N.D. Tex. Oct. 6, 2006) ..................................4

**Statutes**

5 U.S.C. § 6323(a)(1).................................................................................................15

ERISA § 3(2), 29 U.S.C. § 1002(2).........................................................20, 22, 23, 24

Pub. L. No. 111-275, § 701(a), 124 Stat. 2864 (2010) ........................................7, 14

USERRA § 4301(a)(1), 38 U.S.C. § 4301(a)(1)...................................................17,

USERRA § 4302(a), 38 U.S.C. § 4302(a) .................................................................15

USERRA § 4302(b), 38 U.S.C. § 4302(b)..................................................................16

USERRA § 4303(2), 38 U.S.C. § 4303(2)........................................................ *passim*

USERRA § 4311(a), 38 U.S.C. § 4311(a) ........................................................ *passim*

USERRA § 4311(b), 38 U.S.C. § 4311(b)..................................................................11

USERRA § 4312(a), 38 U.S.C. § 4312(a) ..................................................................11

USERRA § 4316, 38 U.S.C. § 4316 ...........................................................................16

USERRA § 4316(b), 38 U.S.C. § 4316(b).......................................................... *passim*

USERRA § 4316(b)(1), 38 U.S.C. § 4316(b)(1) ...........................................2, 16, 17, 18

USERRA § 4316(c), 38 U.S.C. § 4316(c) ..................................................................11

USERRA § 4317, 38 U.S.C. § 4317 ...........................................................................16

USERRA § 4318, 38 U.S.C. § 4318 .................................................................. *passim*

USERRA § 4318(a)(1), 38 U.S.C. § 4318(a)(1) ...............................................22

USERRA § 4318(a)(1)(A), 38 U.S.C. § 4318(a)(1)(A) ....................................23

USERRA § 4318(a)(2)(B), 38 U.S.C. § 4318(a)(2)(B) ....................................20

USERRA § 4323(d), 38 U.S.C. § 4323(d)........................................................10

USERRA § 4323(d)(1)(B), 38 U.S.C. § 4323(d)(1)(B) ...................................11

USERRA § 4323(d)(1)(C), 38 U.S.C. § 4323(d)(1)(C) ...................................11

**Other Authorities**

20 C.F.R. § 1002.149 ......................................................................................17

20 C.F.R. § 1002.150(b) ...................................................................................6

20 C.F.R. § 1002.260 ......................................................................................20

20 C.F.R. § 1002.312(c)...................................................................................11

29 C.F.R. § 2510.3-2 .......................................................................................23

29 C.F.R. § 2510.3-2(c) ...................................................................................23

140 Cong. Rec. H9136 (daily ed. Sept. 13, 1994), *reprinted in* 1994 U.S.C.C.A.N.
2493, 1994 WL 724533 ................................................................................11

156 Cong. Rec. S7656-02 (daily ed. Sep. 28, 2010)...................................7, 12

*Black's Law Dictionary* (10th ed. 2014).........................................................9

Dep't of Labor, *News Release* USDL 96-394, 1996 WL 538255 (Sept. 18, 1996).................21, 22

Fed. R. Civ. P. 12(b)(6)......................................................................................3

H.R. Rep. No. 103-65(1)........................................................................... *passim*

IRS Notice 2010-15, 2010-6 I.R.B., 2010 WL 177753, (Feb. 8, 2010) ........................22

S. Rep. No. 103-158 (1993) ...................................................................... *passim*

Webster's New World Dictionary 9 (1994)........................................................9

Webster's New World Dictionary 18 (1994)......................................................8

Webster's Ninth New College Dictionary 50 (1986) .........................................9

Webster's Ninth New Collegiate Dictionary 939 (1986) ..................................8

## INTRODUCTION

This suit arises out of violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") by American Airlines Group, Inc. ("AAG") in failing to provide benefits under the AAG Global Profit-Sharing Plan for short-term military leave and by American Airlines, Inc. ("American" ) in failing to pay employees when they take short-term military leave even though American pays employees who take other comparable forms of leave.

The Complaint alleges that USERRA § 4316(b) requires American to provide reservists with the same "rights and benefits" that other employees receive when they take jury duty and other comparable forms of leave. Under this equality principle, which the Third Circuit adopted in *Waltermeyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986), and Congress codified in § 4316(b), it is well established that reservists on short term military leave must be get paid if employers pay other employees when they take jury duty or other comparable leave. Instead of parsing the text or legislative history of § 4316(b) and the term "rights and benefits" defined in § 4303(2), American mischaracterizes this claim as demanding that USERRA imposes a general or universal mandate to pay all reservists whenever they take military leave.

The Complaint also alleges that AAG violated USERRA § 4316(b) by crediting employees' jury duty and union leave to calculate benefits for the Profit Sharing Plan, but failed to credit for employees' short term military leave. AAG mischaracterize the benefit that Plaintiff seeks to be provided equally, rather than address the text of USERRA and case law that require such credit to be provided equally to those on military leave and other forms of leave.

Finally, the Complaint alleges that AAG failed to provide pension credit to reservists under § 4318 by not counting their military leave when calculating their Profit Sharing Plan awards. AAG disputes whether the Profit Sharing Plan is a USERRA pension plan, but fails to

address the allegations of the Complaint and instead argues whether this Plan is covered by the Employee Income Retirement Security Act ("ERISA"). The Complaint adequately alleges that the Profit Sharing Plan is a pension plan under USERRA.

## ALLEGATIONS OF THE COMPLAINT

James Scanlan is a pilot for American Airlines, Inc. and a major general in the United States Air Force Reserve. ECF No. 13 ("Am. Compl.") ¶ 9. During his employment at American, Scanlan has taken leave to perform his military reserve duties. *Id.*

The Amended Complaint alleges three claims on behalf of two classes concerning Defendants' policies on short-term military leave. *Id.* ¶¶ 2-3. Count I and II allege USERRA violations by AAG regarding short-term military leave under its Profit-Sharing Plan. *Id.* ¶¶ 72-80, 81-93. Under the Plan, AAG is obligated to pay profit sharing awards equal to 5% of its pre-tax earnings to a large number of employees based solely on their credited earnings (not based on any individual performance). *Id.* at ¶¶ 44- 45. Participants who took jury duty or union duty leave were credited with earnings for those leaves to calculate their benefits under the Plan, but participants who took military leave were not. *Id.* ¶¶ 48-49, 76. Count I alleges that this practice violated 38 U.S.C. § 4316(b)(1), which requires that when employees take military leave they must be given the most favorable treatment given to employees who take any comparable form of leave. *Id.* ¶¶ 73-74, 78. Count II alleges that the Plan is a pension plan under USERRA and failure to credit participants under the Plan for periods of military service violated 38 U.S.C. § 4318, which requires that periods of military service must be deemed service with the employer for the purposes of determining the accrual of benefits under a pension plan. *Id.* ¶¶ 82-85, 90-91.

Count III alleges that American violated USERRA § 4316(b) by failing to pay employees when they take short term military leave, but paying employees who take comparable forms of

non-military leave. *Id.* ¶¶ 94-101. The Complaint alleges that short -term military leave is comparable to jury duty, sick leave, and union leave, as they are short-term, involuntary, and taken for a public purpose. *Id.* ¶¶ 68-70**.** When employees take short-term leave because of jury duty (and other leaves), American pays those employees the difference between their usual compensation and the amount it receives from the government (or another source). *Id*. ¶ 68, 71. But American does *not* provide such pay for short-term military leave or the difference between their American pay and military pay. *Id*. ¶ 68.

## ARGUMENT

### I.      Under the Proper Legal Standards, Defendants' Motion Should Be Denied

#### A.      Rule 12(b)(6) Requires Considering the Context of the Claim and the Statute

Dismissal under Rule 12(b)(6) "deprives a plaintiff of the benefit of the court's adjudication of the merits of its claim before the court considers any evidence." *Sweda v. U. of Pa.*, No. 17-3244, 2019 WL 1941310, at *2 (3d Cir. May 2, 2019). "That is why" a complaint is construed "'in the light most favorable to the plaintiff,' to determine whether it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,'" *Id.* (reversing dismissal). In evaluating the complaint, the court "must examine the context of a claim, including the underlying substantive law, in order to assess its plausibility," including taking into account the any "protective function" of the underlying statute. *Id.* at *3.

#### B.      Defendants' Motion Ignores the Canons Used to Interpret USERRA

The Supreme Court and Congress have directed courts to apply two canons to interpret USERRA. *First*, courts must "construe USERRA's provisions liberally, in favor of the service member." *Gordon v. Wawa, Inc.*, 388 F.3d 78, 81 (3d Cir. 2004) (citing *Fishgold v. Sullivan Drydock & Repair Corp*., 328 U.S. 275, 285 (1946)). Any "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). This canon "remains in full

3

force and effect" under USERRA. H.R. Rep. No. 103-65(1), at 19(1993) ("House Rpt."); *see* S. Rep. No. 103-158, at 40 (1993) ("Senate Rpt."). *Second*, "the extensive body of case law under the predecessor statutes [] remain[s] in full force and effect to the extent it is consistent with USERRA." *United States v. Alabama Dep't of Mental Health & Mental Retardation*, 673 F.3d 1320, 1329 n.6 (11th Cir. 2012); House Rpt. at 19; Senate Rpt. at 40. Thus, USERRA "needs to be read, not in isolation, but in the context of the history and evolution of the entire statute[.]" *Lapine v. Wellesley,* 304 F.3d 90, 97-98 (1st Cir. 2002).

## II.    Count III States Claim Under USERRA § 4316(b) Against American

Count III alleges that American violated USERRA § 4316(b) by failing to pay employees when they take short term military leave, but paying employees who take comparable forms of non-military leave. Am. Compl. ¶¶ 94-101. The Complaint alleges that short -term military leave is comparable to jury duty, sick leave, and union leave, as they are short-term, involuntary, and taken for a public purpose. *Id.* ¶¶ 68-70**.** When employees take jury duty, sick leave, and union leave, they are paid their ordinary wages (or the difference between wages and the pay they get on jury duty). *Id.* ¶ 71. American does not contest that short-term military leave is comparable to jury duty, sick leave, or union leave, or that it treats military leave differently. *See* Def. Mem. at 4.[1] Instead, American's main argument to characterize paid leave as "wages for work not performed" and claim that such paid leave is not "rights and benefits" under § 4303(2). *Id.* at 8. But this view ignores USERRA's text, legislative history, and caselaw.

---

[1] Courts have found the same types of leave comparable to military leave. *Waltermyer*, 804 F.2d at 824 (jury duty/sick leave); *Duffer v. United Cont'l Holdings, Inc.*, 173 F. Supp. 3d 689, 704 (N.D. Ill. 2016) (same); *Lam v. Cleveland*, No. 16 Civ. 1563, 2018 WL 4206919 (N.D. Ohio Sept. 4, 2018) (jury duty); *Brill v. AK Steel Corp.*, No. 2:09-cv-534, 2012 WL 893902, at *6 (S.D. Ohio Mar. 14, 2012) (same); *Woodall v. Am. Airlines*, No. 06 Civ. 72, 2006 WL 2914135, at *4 (N.D. Tex. Oct. 6, 2006) (jury duty).

A.   **USERRA § 4316(b) Guarantees That Employees Who Take Military Leave Receive the Same "Rights and Benefits" As Other Employees Who Take Non-Military Leave, Including Wages**

In Section 4316(b), Congress re-codified an equality rule that existed under the Veterans Reemployment Rights Act ("VRRA"): employees on military leave are entitled to the same "rights and benefits" as employees who take other forms of leave. 38 U.S.C. § 4316(b). As Congress explained, § 4316(b) "would codify court decisions that have interpreted current law [VRRA] as providing a statutorily-mandated leave of absence for military service that entitles servicemembers to participate in benefits that are accorded other employees." Senate Rpt. at 58 (citing *Waltermeyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986)). In *Waltermyer*, the Third Circuit recognized "equality as the test," holding an employee who took military leave on a holiday must receive pay for that day on the same terms as employees who took jury duty that day and received pay when not performing work. *Waltermyer*, 804 F.2d at 824-26. Thus, this rule "merely establishes equality for . . . reservists, not preferential treatment." *Id.* at 825.

USERRA defines "rights and benefits" to include "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest . . . that accrues by reason of an employment contract or agreement" or "policy, plan or practice." 38 U.S.C. § 4303(2). Consistent with the goal of strengthening prior rights, these "rights and benefits" are "given an 'expansive interpretation'" that encompass those provided by statute or agreement, including wages when work is not performed. *See Pucilowski v. Dep't of Justice*, 498 F.3d 1341, 1344 (Fed. Cir. 2007) (finding statutorily paid military leave was a benefit of employment). Not only does an expansive view of these terms include wages, but the non-exhaustive examples includes compensation paid to employees when *they do not* perform work: "severance pay, supplemental unemployment benefits, vacations." 38 U.S.C. § 4303(2).

1.      **Section 4316(b) Mandates That Employees Must Be Paid for Military Leave When the Employer Pays Comparable Leave**

Section 4316(b) requires that employees who take military leave receive the same "rights and benefits" as employees "on furlough or leave of absence," including wages. 38 U.S.C. § 4316(b); 20 C.F.R. § 1002.150(b) (providing that reservists on leave "must be given the most favorable treatment accorded to any comparable form of leave."). The "most significant factor" to "determine whether any two types of leave are comparable" is "duration of the leave," as well as "the purpose of the leave" and ability to choose when to take it. 20 C.F.R. § 1002.150(b).

Courts have held that § 4316(b)'s equality rule requires employees who take military leave to be paid if employees who take comparable leave (jury duty or sick leave) are paid. *Brill*, 2012 WL 893902, at *6 (holding military duty comparable to jury duty and person on military duty was entitled same pay as those on jury duty); *Duffer*, 173 F. Supp. 3d at 704 (holding military leave comparable to jury duty and sick leave and employer paying retroactive wages to employees who took jury duty or sick leave must pay same wages to those on military leave). *Brill* explained how paying employees who take military leave and jury duty is required by § 4316(b), which "was intended to codify [*Waltermyer's*] equality rule," and doing so did not give preferential treatment to reservists:

> Defendant would not be providing anything it does not already provide to employees on jury duty/witness leave by paying Plaintiff his full salary for time spent on military leave. Actually, by paying an employee in this manner, Defendant would be complying with the statutory mandate to give the employee the most favorable treatment accorded any comparable form of leave.

*Brill,* 2012 WL 893902, at *5-6 (citing House Rpt. at 33-34). None of American's cases rejects *Brill* or *Duffer* or holds "rights and benefits" under § 4316(b) excludes payment when work is not done.

### 2.    Section 4303(2)'s Text in its Original and Amended Versions Provides that "Rights and Benefits" Includes Pay When No Work Is Performed

The crux of American's argument is that § 4303(2)'s term "rights and benefits" does not include wages or salary for work not performed. Def. Mem. at 8-9. American is wrong. Under both the original and current versions of § 4303(2), "rights and benefits" includes many types of benefits providing monetary compensation when work is not performed, including wages.

The original version of § 4303(2) included a *single exemption* of "wages or salary for *work performed.*" 38 U.S.C. § 4303(2) (1996) (emphasis added). The express *exclusion* of "wages or salary *for work performed*" in § 4303(2)'s sole exemption evidences that Congress intended to *include* wages or salary *for work not performed* in § 4303(2). Under the *expressio unius est exclusio alterius* canon, if a legislature expressly includes exception in a law it "indicates its intention to exclude other exemptions." *Keeley v. Loomis Fargo & Co.*, 183 F.3d 257, 266 (3d Cir. 1999). If Congress intended *no types* of wages or salary to be included, it would have simply excluded "any wages or salary" from § 4303(2). But Congress originally only excluded "wages or salary for work performed" from § 4303(2) and did not exclude wages for work *not performed*. Including wages for work *not performed* in § 4303(2)'s definition of "rights and benefits" is consistent with Congress' intent to "affirm the decision in *Waltermyer*" that persons on military leave receive "the most favorable treatment accorded any particular leave." House Rpt. at 33-34; *accord* Senate Rpt. at 58.

In 2010, Congress amended § 4303(2) for the sole purpose of clarifying that USERRA bans wage discrimination under § 4311(a). 156 Cong. Rec. S7656-02 (daily ed. Sep. 28, 2010). The amendment *expanded* § 4303(2) by removing its sole exemption "(other than wages or salary for work performed)" and inserting "(including wages or salary for work performed)." Veterans' Benefits Act of 2010, Pub. L. No. 111-275, § 701(a), 124 Stat. 2864 (2010). Now

Section 4303(2) defines "rights and benefits" broadly to cover *all* aspects of an employment relationship, including wages for work not performed *and* performed. 38 U.S.C. § 4303(2).

Section 4303(2) has no exclusions and contains the word "including" or "includes" three times. While any proper interpretation of this non-exhaustive list means that "rights and benefits" includes wages for work not performed, any ambiguity must be decided in favor of reservists. *Supra* at I.B. American's request to find an *implicit exemption* of wages for work not performed in § 4303(2) ignores longstanding case law, including *Waltermyer's* equality principle, and also would violate the canon that USERRA must be interpreted in light of its prior case law. *See id.*

Section 4303(2) has always defined "rights and benefits" as "*any advantage, profit, privilege, gain, status, account, or interest*" in an employment relationship. Each of these terms include wages, salaries, or other job-related compensation.[2] Wages are the top "advantage" of a job and how employees "gain" from a job. *See* Bureau of Labor Statistics, Employer Costs for Employee Compensation, https://www.bls.gov/ news.release/pdf/ecec.pdf ("Wages and salaries [] accounted for 68.6 percent of [employee compensation]"). As employees "profit" from jobs by receiving wages, it would be illogical to read "*any* advantage, profit, privilege, gain" to exclude the most significant form of advantage, profit, or gain that employees receive from employers.[3]

American asserts that these illustrations of "rights and benefits" support its interpretation.

---

[2] *E.g.*, Webster's Ninth New Collegiate Dictionary 939 (1986) (defining "Profit" as "a valuable return; gain" or "net income usu. for a given period of time"); *id.* at 502 (defining "Gain" as "resources or advantaged acquired or increased," "the act or process of gaining," or "an increase in amount, magnitude or degree"); Webster's New World Dictionary 18 (1994) (defining "advantage" as "a favorable or beneficial circumstance" or "gain or benefit").

[3] "The term 'any' ensures that the definition has a wide reach." *Boyle v. United States*, 556 U.S. 938, 944 (2009)."Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind,'" leaving no basis to limit the types of things after "any." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 214 (2008); *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 366 (3d Cir. 2010).

Def. Mem. at 10. But that "rights and benefits" in § 4303(2) includes payment when work is *not performed* is illustrated by the examples "severance pay, supplemental unemployment benefits, vacations" for which employees receive monetary compensation despite performing no work. By definition, "severance pay" and "supplemental unemployment benefits" are paid to former employees no longer performing work. Likewise, the benefit provided to employees for paid "vacations" is that receive pay when not performing work. Under the federal tax code, payments from "severance pay, supplemental unemployment benefits, vacations" are all treated as taxable wages and must be reported on a W-2 Form. *See* IRS Publication 15, (Circular E) Employer's Tax Guide at 15 (Dec. 17, 2018), https://www.irs.gov/pub/irs-pdf/p15.pdf; IRS Publication 4128, Tax Impact of Job Loss at 1-2 (2015), https://www.irs.gov/pub/irs-pdf/p4128.pdf.

American also argues that the verb "accrue" in Section 4303(2) suggests that wages of all kinds fall outside the definition of "rights and benefits." Def. Mem. at 10. American fails to mention that its own dictionary definition of "accrue" is the *secondary or alternative definition.* The primary definition of accrue is "1. To come into existence as an enforceable claim or right; to arise." *Black's Law Dictionary* (10th ed. 2014); *see also* Webster's New World Dictionary 9 (1994) Webster's Ninth New College Dictionary 50 (1986).  Applying this definition of "accrue" simply means that "any advantage, profit, privilege gain" *comes into existence from* the employment relationship. And American does not dispute that the right to paid leaves (for jury duty, union or sick leave) *comes into existence from* the employment relationship.

Moreover, the Third Circuit in *Waltermyer* used the word accrue in describing the full range of rights and benefits – including pay – that employees must receive under the equality rule. *Waltermyer* 804 F.2d at 825. The Third Circuit referred interchangeably to "holiday pay" as a "benefit[] that *accrued* during" a period of military leave in a prior case and a "claim for

9

vacation rights *accruing* during" an employee's "eighteen months of military service" in another case. *Id.* at 824. As Congress was not only aware of *Waltermyer*, but affirmed it, it strains credulity to suggest that by using the word "accrued" in § 4303(2) Congress implicitly excluded wages for work *not performed* from the "rights and benefits" protected by § 4316(b).

To hold that § 4303(2) exempts wages for work not performed would render meaningless (1) § 4303(2)'s broad text that "rights and benefits" includes "any advantage, profit, privilege, gain," (2) the express exclusion in § 4303(2)'s original version of only "wages or salary for work performed" in the next clause, and (3) § 4303(2)'s examples of "rights and benefits"— "severance pay, supplemental unemployment benefits, and vacations"—all of which provide payments when no work is performed. It also violates the "cardinal principle[s]" that courts "must give effect, if possible, to every clause and word of a statute," *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (internal quotations omitted), and that each "separate provision[]" of the reemployment law must be given "as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." *Fishgold*, 328 U.S. at 285.

American also cites a tax guide discussing "fringe benefits" to support its definition of benefit under § 4303(2). Def. Mem. at 9. But § 4303(2) does not just define the term "benefit." It defines three specific terms found in USERRA: "benefit," "benefit of employment," and "rights and benefits." 38 U.S.C. § 4303(2). Importantly for this case, § 4316(b) does not use the term "benefit," but provides that reservists must receive the "*rights and benefits* as are generally provided by the employer" to other employees who take leave. *Id.* § 4316(b) (emphasis added).

Finally, American argues that including payment when work is not performed would be inconsistent with USERRA's remedies section, § 4323(d), by asserting that "if wages were included within the meaning of benefits [in § 4303(2)], there would have been no reason for

Congress separately to provide for recovery of wages." Def. Mem. at 11. But there is a simple

explanation why Congress included the word "wages" in § 4323(d)(1)(B), as well as the term

"benefit." Employees *lose wages* when they are fired due to discrimination or retaliation in

violation of § 4311(a)-(b), denied reemployment under § 4312(a), or discharged "except for

cause" in violation of § 4316(c). It is well established that § 4323(d)(1)(B) authorizes backpay

and front pay as a remedy to compensate persons who lose "wages" when they are no longer

employed by former employers, as well as liquidated damages on such lost "wages." *Id.* §

4323(d)(1)(C).[4] Thus, using the term "wages" in § 4323(d)(1)(B) addresses a different type of

wages than Congress chose to protect reservists under § 4303(2) and § 4316(b).

### 3.     USERRA's Legislative History Confirms That Payment When Work Is Not Performed Are "Rights and Benefits" For § 4316(b)

In addition to the plain language of § 4303(2), USERRA's legislative history makes this

conclusion even clearer. In enacting USERRA, Congress explained that

> Section 4303(2) would define "benefit, 'benefit,' "benefit of employment," and
> employment related "rights and benefits." These are the rights, incident to
> employment, which are protected under chapter 43. *These rights are broadly
> defined to include all attributes of the employment relationship* which are affected
> by the absence of a member of the uniformed services because of military service.
> *The list of benefits is illustrative and not intended to be all inclusive.*

House Rpt. at 21 (emphasis added); *see* 140 Cong. Rec. H9136 (daily ed. Sept. 13, 1994),

*reprinted in* 1994 U.S.C.C.A.N. 2493, 1994 WL 724533 (identifying all material differences

between House and Senate versions of USERRA without mentioning differences in § 4303(2)).

Thus, Congress intended all aspects of the employment relationship to be within the scope of §

---

[4] *E.g.*, *Petty v. Metro. Gov't of Nashville & Davidson Cty.*, 687 F.3d 710, 716-18 (6th Cir. 2012)
(affirming award of back pay and reinstatement of reservist denied reemployment); *Maher v.
Chicago*, 463 F. Supp. 2d 837, 840 (N.D. Ill. 2006), *aff'd* 547 F.3d 817 (7th Cir. 2008)
(describing how Congress expanded ability to get back pay under USERRA and added liquidated
damages to deter violations); 20 C.F.R. § 1002.312(c) (allowing recovery of "lost wages").

4303(2), and the illustrations of "rights and benefits" in § 4303(2) are not exhaustive. *Id.* Wages, of course, are the greatest attribute of an employment relationship.

Moreover, Congress expressly affirmed the Third Circuit's decision in *Waltermyer* that awarded a servicemember *wages for work not performed* and cited *Waltermyer* as the example of when servicemembers must receive the same "rights and benefits" given to other employees who take leave. House Rpt. at 33-34 ("Committee intends to affirm the decision in *Waltermyer*"); *accord* Senate Rpt. at 58. By affirming *Waltermyer*, Congress clearly expressed its intent to include wages for work not performed under § 4316(b) and § 4303(2).

### 4. The 2010 Amendment to § 4303(2) Did Not Implicitly Exempt Wages for Work Not Performed From, But Instead Expanded the Scope of § 4303(2)

American argues that a 2010 amendment enacted "solely 'to make it clear that wage discrimination is not permitted under USERRA [§ 4311(a)],'" suggests that Congress never intended to include wages for work not performed under § 4303(2) or § 4316(b). Def. Mem. at 9 (quoting 156 Cong. Rec. S7656-02 (daily ed. Sep. 28, 2010)). This disregards the meaning of § 4316(b) and § 4303(2) before 2010 and asks the Court to find that Congress implicitly eliminated rights that existed since 1994—even though the amendment was solely intended to clarify or expand rights under a different section, USERRA § 4311(a).

In *Gagnon v. Sprint Corp.*, 284 F.3d 839 (8th Cir. 2002), a veteran claimed he was paid $1,000 less per year due to his military service. *Id.* at 853. The Court rejected his discrimination claim under § 4311(a), because § 4311(a) required him to show that his employer "denied him a benefit of employment," and at that time "the term 'benefit, as defined by the USERRA, specifically excludes wages or salary for work performed." *Id. Gagnon* offered no analysis and did not distinguish between wages and *wage rates*, as American suggests. *See* Def. Mem. at 9.

In 2010, Congress overruled *Gagnon* by changing the phrase "(*other than* wages or salary

for work performed)" to "(*including* wages or salary for work performed)." Pub. L. No. 111-275, § 701(a). In Congress' sole explanation of the amendment, it summarized *Gagnon's* holding and said the amendment "would amend section 4303(2) . . . to make it clear that wage discrimination is not permitted under USERRA." 156 Cong. Rec. S7656-02. This amendment's narrow focus is reflected in its section heading: "Clarification That USERRA Prohibits Wage Discrimination Against Members of the Armed Forces."  Pub. L. No. 111-275, § 701(a).

The proper reading of this amendment is Congress wanted to clarify or expand § 4303(2)'s scope by "including wages or salary for work performed" in "rights and benefits" to bar wage bias under § 4311(a), not abandon § 4316(b) and *Waltermyer's* longstanding equality rule. Nothing in its text or history suggests otherwise. Indeed, eliminating the sole exemption that ever existed in § 4303(2) can only be viewed as a reaffirmation that Congress always intended for § 4303(2) to cover "all attributes of the employment relationship." House Rpt. at 21.

Even if the Court construed § 4303(2)'s phrase "(including wages or salary for work performed)" without considering the jurisprudence and prior statutory enactments, the mere inclusion of "wages or salary for work performed" cannot justify concluding that § 4303(2) implicitly exempts wages or salary for work *not* performed. The *expressio unius* canon does not apply here, where the statute uses the term "including" to introduce a list of one or more items. *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 943 (7th Cir. 2015) ("[T]he term 'including' is typically 'illustrative and not limitative.'"). And Congress expressed that the list of rights and benefits in § 4303(2) "is illustrative and not intended to be all inclusive." House Rpt. at 21.

### B.    Proper Interpretation of USERRA § 4316 Will Not Impose a General or Absolute Mandate on Employers to Provide Paid Military Leave

American repeatedly focuses on the uncontroversial point that USERRA does not impose a general or absolute mandate to pay employees whenever they take military leave. Def. Mem. at

4-7. But the Complaint does not claim that American must provide pay whenever employees take military leave, merely that § 4316(b) requires paid leave for short-term military leave when it is comparable to other leaves for which employees get paid. *See* Am. Compl. ¶ 99.

From the non-controversial premise that USERRA does not *always* require paid military leave, American reaches the unsupported conclusion that USERRA *never* requires paid military leave. Def. Mem. at 4-7. Not only is this conclusion devoid of logic, but it ignores case law, the contrary statutory text and legislative history. American fails to address *Waltmyer* or any legislative history. As such, American's attempt to bridge this illogical gap fails.

*First*, American cites *Monroe v. Standard Oil Co.*, 452 U.S. 549 (1981), for the proposition that the VRRA did not impose a general "guarantee" of paid military leave. Def. Mem. at 5. But the Third Circuit distinguished *Monroe* as a case where a reservist wanted the same rights as employees who *were working* from *Waltermyer*, where a reservist only wanted the same rights to holiday pay given to employees who *were not working* due to jury duty. *Waltermyer*, 804 F.3d at 823. In enacting § 4316(b), Congress affirmed that *Waltermyer's* equality rule applies when the comparable leaves involve employees *not working*. House Rpt. at 33-34.

*Second*, American cites cases where courts rejected the argument that if an employer voluntarily gives paid military leave as a benefit, failure to follow that promise is discrimination under § 4311(a). Def. Mem. at 5 (citing *Duncan v. Tyco Fire Prods.*, No. 1:16-cv-916-SGC, 2018 WL 3303305, at *4 (N.D. Ala. July 5, 2018); *Miller v. Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002); *Brooks v. Fiore*, No. 2000 Civ. 803, 2001 WL 1218448, at *9 (D. Del. Oct. 11, 2001)). But these cases did not involve § 4316(b) claims, or any argument that military leave should be paid because it is comparable to other leave. None analyzed § 4303(2) or §4316(b). *Id.*

14

By contrast, courts that *did* consider § 4303(2) in determining whether paid leave policies are "rights and benefits" under § 4303(2) for the purposes of § 4311(a) have held that voluntary paid leave for military service is, in fact, a "right or benefit" under § 4303(2). *Pucilowski*, 498 F.3d at 1344; *United States v. Missouri*, 67 F. Supp. 3d 1047, 1050-51 (W.D. Mo. 2014). Thus, wages for work not performed (including paid military leave) are "rights and benefits" under USERRA.

*Third*, the regulations and handbooks to which American points merely set for the general principle that USERRA does not generally or always require paid military leave or differential pay. Def. Mem. at 7. None addresses § 4316(b)'s application to comparable paid leave.

*Fourth*, American cites a treatise for the proposition that "[g]enerally, USERRA does not require employers to pay employees wages for time spent performing military service." Def. Mem. at 6 (quoting Kathryn Piscitelli *et al*., The USERRA Manual § 3:5 (2018)). But the next sentence of the Manual explains: "Nonetheless there are circumstances under which an employee on military leave would be entitled to pay," and refers to cases requiring paid military leave, *i.e.*, under § 4316(b) when employees who take non-military leave receive pay for not working. *Id.*

*Fifth*, Congress' enactment of a law providing 15 days of paid military leave to federal employees, 5 U.S.C. § 6323(a)(1), cannot vitiate rights Congress expressly and later adopted in USERRA. *See* Def. Mem. at 6. "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *N.J. Air Nat'l Guard v. Fed. Labor Relations Auth*., 677 F.2d 276, 282 (3d Cir. 1982) (citation omitted). These laws can and have been be read consistently. USERRA § 4302(a) provides that other federal laws can grant additional rights beyond USERRA. 38 U.S.C. § 4302(a). The limited paid leave that § 4316(b) requires under the equality rule does not preclude paid leave from being provided under § 6323(a)(1). Indeed, paid leave under § 6323(a)(1) is

15

even considered a benefit under USERRA § 4303(2). *Pucilowski*, 498 F.3d at 1344.

*Finally*, USERRA's mandate for continued health and pension benefits in § 4317 and § 4318 says nothing about what Congress intended in § 4316(b). At best it shows Congress would not adopt an absolute mandate for paid military leave USERRA without expressly saying so.

### C.    American's Collective Bargaining Agreements Do Not Determine What Constitutes a Leaves of Absence Under USERRA

American argues that the Complaint fails to allege a comparable "leave of absence under a contract, agreement, policy, practice or plan" under § 4316, because American's collective bargaining agreements ("CBAs") do not define jury duty, sick leave, or union duty as leaves of absence. Def. Mem. at 15-16. The Complaint alleges that jury duty, sick leave, and union duty are leaves of absence under USERRA § 4316(b)(1). Am. Compl. ¶¶ 68-70, 97-99. But USERRA does not permit employers to decide what constitutes a leave of absence to evade its obligations.[5]

American offers no authority that a CBA can override servicemembers' rights under USERRA preempt USERRA by defining leaves that are typically considered "leaves of absence" under USERRA (like jury duty and sick leave) as something else. Def. Mem. at 15-17. USERRA expressly supersedes any "contract . . .that reduces, limits, or eliminates in any manner any right or benefit provided [under USERRA]." 38 U.S.C. § 4302(b). This codifies the *Fishgold* principle that CBAs cannot "cut down [benefits]" of servicemembers. 328 U.S. at 285. The Third Circuit has held employers are forbidden from using "'transparent labels and definitions to deprive a

---

[5] In a footnote, American argues that Railway Labor Act ("RLA") preempts this claim. Def. Mem. at 17 n.12. But RLA preemption does not apply where "the parties dispute the construction of a federal law in the context of a clear contract provision." *Duffer*, 173 F. Supp. 3d at 713 (holding RLA preemption does not apply in USERRA case because "the parties dispute the construction of a federal law" rather than a "contract provision"). Even if this case involved interpretation of a CBA term, the Supreme Court previously held the RLA cannot eliminate federal reemployment rights. *McKinney v. Mo.-Kan.-Tex. R.R. Co.*, 357 U.S. 265, 268-271 (1958). ("The rights petitioner asserts are rights created by federal statute even though their determination may necessarily involve interpretation of a collective bargaining agreement.").

veteran [or reservist] of substantial rights guaranteed by the Act.'" *Waltermeyer,* 804 F.2d at 825. Department of Labor ("DOL") regulations explain the same. 20 C.F.R. § 1002.149 ("[I]f the employer characterizes the employee as 'terminated' … this characterization cannot be used to avoid USERRA's requirement that the employee be deemed on furlough or leave of absence.")

### D.   The Consequences of Applying § 4316(b) As Written Will Be Minimal, But Should Not Be Considered When Interpreting USERRA

American argues a parade of horribles could occur if Section 4316(b) is properly applied. Def. Mem. at. 12-14. But a court cannot disregard a law's clear text and legislative history because an employer thinks it may have negative consequences. *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013). Congress presumably was aware of laws requiring forms of leave comparable to short-term military leave. *See* Def. Mem. at 13. Not only was § 4316(b) enacted to reaffirm the equality rule of *Waltermyer* and codify an expansive definition of "rights and benefits," but the mandate for paid military leave under limited situations is consistent with USERRA's purpose to "eliminat[e] or minimize[e] the disadvantages to civilian careers" from military service. 38 U.S.C. §4301(a)(1). The impact is small. Less than 1% of employees in the labor force are reservists, about 1.1 million reservists out of 162 million workers.[6] Even if was a proper consideration, such a limited obligation to provide paid short-term military leave to a small part of the labor force cannot have a major impact.

### III.   Count I Properly Alleges a Claim under USERRA § 4316(b) Against AAG

Count I alleges that AAG violated USERRA § 4316(b)(1) by crediting participants who had taken jury duty or union duty with earnings for the purpose of calculating profit-sharing

---

[6] *See* Dep't of Defense, 2016 Demographics: Profile of the Military Community 59 (2016), https://download.militaryonesource.mil/12038/MOS/Reports/2016-Demographics-Report.pdf; Bureau of Labor Statistics, Employment Situation Summary Table A. Household data, seasonally adjusted (May 3, 2019), https://www.bls.gov/news.release/empsit.a.htm.

benefits, but failed to so for short-term military leave. Am. Compl. ¶¶ 48-49, 75-76. Similar to Count III, Count I alleges that participants on short-term military leave did not receive earnings credit under the Plan while participants who took comparable leave did. *Id.* ¶¶ 77-78. AAG argues employees who performed jury duty or union duty were paid and their credits under the Plan just reflect these wages. Def. Mem. at 18-19.[7] AAG recharacterizes Count I as "artificially assuming that earnings existed during a leave of absence," a benefit that employees on jury duty and union duty did not enjoy given that they were actually paid. *Id.* From that premise, AAG then argues that employees on short term military leave were treated like any other employee on leave for purposes of the Plan. *Id.* at 19.

AAG misunderstands both the allegations of the Complaint and the requirements of USERRA. The Complaint alleges that the denied benefit was the accrual of credits while on leave for the purpose of calculating profit sharing benefits. Am. Compl. ¶ 75. The accrual of such credits is among the "rights and benefits" protected by § 4316(b)(1), as defined in § 4303(2). *See supra* II.A. That such profit sharing credits were *otherwise* awarded to employees on *paid* leave does not make the relevant "right and benefit" under a § 4316(b)(1) analysis the right to the artificial assumption that Plaintiff was paid while on unpaid military leave. *See Benetiz v. Montebello*, No. 2009 Civ. 0303, 2010 WL 3814374 (C.D. Cal. Sept. 27, 2010). In *Benetiz*, the city had two categories of leave: paid and unpaid. *Id.* at *1-2. Employees on paid leave accrued time off under the city's policies, but employees on unpaid leave did not. *Id.* at *1. Military leave was unpaid leave. *Id.* There, the Court held the city violated USERRA "when [it] denied Plaintiff annual leave accrual while he was on military leave." *Id.* at *2. The relevant benefit was the

---

[7] By making this argument, AAG appears to concede that if Count III adequately states a claim under § 4316(b), then so does Count I. But dismissal of Count III does not necessitate dismissal of Count I, as it is not solely dependent on payment by American for military leave.

"annual leave accrual" and not the assumption that if the plaintiff had been paid, he would have *in turn* been entitled to accrual of time off under city's policy. *See id.* Likewise, here Plaintiff is entitled to the accrual of credits under the Plan equivalent to those accrued by employees on comparable forms of non-military leave. That the accrual of these credits on a comparable basis can only be calculated by imputing earnings of an employee on military leave does not make Plaintiff's claim an entitlement to a *sui generis* benefit of artificial earnings that other employees do not enjoy.

This reasoning also comports with *Waltermeyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986) where the Third Circuit considered a benefit by which employees received pay for designated holidays only if they worked during that week or were on various forms of paid leave, including jury duty. *Id.* at 822, 825. But employees absent on military leave did not receive the benefit. *Id*. at 822. In finding that USERRA required applying the policy to employees on military leave, the Third Circuit found it was "relieving those on military leave from the work requirement." *Id*. at 825. Had the Third Circuit adopted AAG's characterization, it would have found the reservist was seeking the special entitlement of artificially imputed payment of wages during the holiday week, a benefit not available to employees on paid leave. But employers "are [not] empowered by the use of transparent labels and definitions to deprive a veteran [or reservist] of substantial rights" *Id.* at 825 (insertions in original) (quoting *Accardi v. Pa. R.R. Co.*, 383 U.S. 225, 229 (1966)). Thus, AAG cannot deny Plaintiff his rights under USERRA by mischaracterizing the benefit to which he is entitled under the Plan. [8]

---

**IV.     Count II Properly Alleges a Claim Under USERRA § 4318**

Count II alleges that AAG violated USERRA § 4318 by failing to treat short term military leave as service with the employer, as required by USERRA § 4318(a)(2)(B), for the purposes of calculating benefits under the Profit Sharing Plan. Am. Compl. ¶¶ 81-93. Count II alleges that the Profit Sharing Plan is a pension plan under USERRA, regardless of whether it is an ERISA-covered plan and also alleges facts that the Plan meets the definition of a pension plan under ERISA. *Id.* ¶¶ 82-85. AAG does not challenge the sufficiency of these allegations, but instead argues that the Plan meets a special exemption under ERISA to exclude otherwise covered plans from ERISA coverage and asserts that exemption also applies to USERRA.

**A.     Count II Sufficiently Alleges that the Profit Sharing Plan is a Pension Plan Under USERRA Regardless of Whether It is An ERISA Pension Plan**

AAG argues that a pension plan under USERRA is limited to (1) plans that meet the definition of a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2), or (2) plans specifically mentioned in a DOL regulation as mere *examples* of ERISA-exempt pension plans that are covered by USERRA. Def. Mem. at 19-20. AAG's entirely unsupported interpretation is contrary to proper statutory interpretation and USERRA's legislative history.

USERRA does not define a pension plan. As AAG recognizes, the DOL regulation explains that "Any such [ERISA-covered] plan maintained by the employer or employers is covered under USERRA," but adds that "**USERRA also covers certain pension plans not covered by ERISA, such as those** sponsored by a State, government entity, or church for its employees." 20 C.F.R. § 1002.260 (emphasis added). Based on this regulation, AAG asserts, without any authority, that USERRA's definition of pension plan is limited only to those three examples in the regulation. Def. Mem. at 19-20, 22-23. That logic is simply wrong.

Contrary to AAG's unsupported interpretation, "[t]he phrase 'such as' typically indicates that enumerated examples are not comprehensive." *United States v. Godoy*, 706 F.3d 493, 495 (D.C. Cir. 2013) (refusing to interpret "'such as' to mean 'limited to'"); *Donovan v. Anheuser-Busch, Inc.*, 666 F.2d 315, 326–27 (8th Cir. 1981) (finding the phrase "such as" does not "constitute words of limitation" but rather "is an example or illustration"); *In re Haman*, 366 B.R. 307, 313 (Bankr. D. Del. 2007) (finding that "use of the words 'such as' to introduce the examples indicate [an] intent to provide a non-exhaustive list of illustrations rather than to constrict any application of the statute"); *In re Lenton*, 358 B.R. 651, 661 (Bankr. E.D. Pa. 2006) (same). If DOL (or Congress) wanted to limit USERRA coverage to certain specified plans, it would have done so. Thus, the argument that USERRA is limited to ERISA-covered plans and certain specified non-ERISA covered plans is contrary to proper statutory interpretation.

In enacting USERRA, Congress rejected the decision in *Raypole v. Chemi-Trol Chem. Co., Inc.*, 754 F.2d 169 (6th Cir. 1985),[9] to protect servicemembers participating in "profit sharing plans." *Id.* at 172. House Rpt. at 35-36 ("The protections of these sections apply equally to defined benefit . . . and contribution plans" and "[t]he same would be true of those profit sharing plans which are in reality rewards for length of service"); Senate Rpt. at 64-65 (stating bill would apply to profit sharing plans). Indeed, AAG's argument that the Plan merely provides bonuses or wages is similar to *Raypole's* now rejected rationale. *Compare* Def. Mem. at 21, 22 *with Raypole*, 754 F.2d at 175 ("'real nature' of [profit-sharing] Plan is short-term compensation for work performed by employees"). The DOL and IRS describe USERRA as "requir[ing]

---

[9] While *Raypole* held profit-sharing plans are not covered, not all courts adopted this view of USERRA's predecessor law. *See U.S. ex rel. Reilly v. New Eng. Teamsters and Trucking Indus. Pension Fund*, 737 F.2d 1274, 1283 (2d Cir. 1984) (finding defined contribution plan to be covered). Congress adopted this view and, in fact, cited this case. *Supra* IV.A.

restoration of pension, profit sharing and similar benefits that would have accrued but for the

employee's absence due to military service." Dep't of Labor, *News Release* USDL 96-394, 1996

WL 538255 (Sept. 18, 1996); IRS Notice 2010-15, 2010-6 I.R.B., 2010 WL 177753, *1 (Feb. 8,

2010).

### B.     The Complaint Sufficiently Alleges That the Profit Sharing Plan Meets the Definition of a Pension Plan Under ERISA § 3(2)

As ERISA plans are undisputedly *included* under § 4318(a)(1), AAG argues that –

despite being entitled a Profit Sharing Plan – this Plan is, in fact, a bonus plan and therefore is

subject to a special exemption under the DOL ERISA Regulations that apply to "bonus plans."

Def. Mem. at 20-22. AAG ignores that the Plan does not use the term "bonus" or describe itself

as a bonus program, except to claim that it is intended to meet an exemption from ERISA as a

payroll practice or a bonus program *See* Def. Ex. 1 § J.10.[10]

First, the designation as a profit-sharing plan suggests that it is a pension plan, because

"(a) profit-sharing plans are a type of defined contribution plan, and (b) ERISA describes defined

contribution plans as pension plans." *In re Meinen*, 228 B.R. 368, 382 (Bankr. W.D. Pa. 1998)

(finding profit-sharing plan to be ERISA-covered pension plan); *Leckey v. Stefano*, 263 F.3d

267, 272 (3d Cir. 2001) (finding profit sharing plan was governed by ERISA and reversing

dismissal); *Darby v. C. I. R.*, 97 T.C. 51, 59 (Tax Ct. 1991) ("Under section 3(2) of ERISA,

'pension plan' is defined to include, for purposes of title I (the labor title) of ERISA, what the

Internal Revenue Code refers to as 'profit-sharing' plans."). Thus, AAG's own designation of the

Plan as a profit-sharing plan suggests that the Plan is a pension plan.

---

[10] Whether the employer intended the Plan to be governed by ERISA does not determine whether ERISA, in fact, governs the Plan. *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263-64 (11th Cir. 2004); *Meredith v. Time Ins. Co.*, 980 F.2d 352, 354 (5th Cir. 1993).

Second, AAG does *not* claim that this Plan fails to meet the definition of a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2).[11] Instead it argues that a "safe harbor provision" in a DOL Regulation, 29 C.F.R. § 2510.3-2(c), exempts this Plan from ERISA coverage and then assumes, without explanation or authority, that this ERISA exemption and regulation also apply to USERRA. Def. Mem. at 20. But DOL's "safe harbor" exemptions are expressly limited to clarifying the "defined terms 'employee pension benefit plan' and 'pension plan' for purposes of Title I of [ERISA]," and only "for those purposes." 29 C.F.R. § 2510.3-2. Had DOL intended its USERRA regulation governing the definition of a pension plan under USERRA to exclude plans exempted under ERISA, its USERRA regulation would have stated so.[12]

Third, AAG ignores that the Complaint pleads that the terms of the Plan acknowledge that this Plan meets the definition under ERISA § 3(2) by relying on an exemption from ERISA coverage, not exclusion from the definition. *Compare* Def. Mem. at 22-23 *with* Compl. ¶ 84. The DOL exemption excludes from ERISA coverage plans that would "otherwise be covered by ERISA." *D'Elia v. Unum Life Ins. Co. of Am.*, 223 F. Supp. 3d 380, 385 (E.D. Pa. 2016); *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 1004 (9th Cir. 2010) (explaining § 2510.3-2 exempts plans that "would otherwise be subject to the requirements of" [ERISA]). Since the Plan terms recognize that but for the exemption, the Plan would otherwise meet the definition under

---

[11] "ERISA's definition of a pension plan is so broad, virtually any contract that provides for some type of deferred compensation will also establish a de facto pension plan, whether or not the parties intended to do so." *Modzelewski v. ADR Tr. Corp.*, 14 F.3d 1374, 1377 (9th Cir. 1994). By utilizing this broad definition for USERRA without reference to any exemptions, USERRA intended to cover plans that are subject to ERISA exemptions.

[12] Similarly, USERRA § 4318 provides that it applies "to an employee pension benefit plan (including those described in sections 3(2) and 3(33) of [ERISA])," without mentioning any safe harbor exemptions. 38 U.S.C. § 4318(a)(1)(A) (emphasis added).

ERISA § 3(2), that suffices for purposes of USERRA § 4318 and the USERRA regulation. *Id.*

Thus, Count II adequately alleges that this Plan is a pension plan under USERRA.

## V.   Even if an ERISA Exemption Applied to a USERRA Definition, Count II Sufficiently Alleges That the Profit Sharing Plan is a Pension Plan

Even if the bonus plan exemption applied to USERRA, the burden to establish that

exemption applies "rests with the party asserting the exception." *McCann v. Unum Provident*,

907 F.3d 130, 143 (3d Cir. 2018) (finding exemption from ERISA coverage not established).

AAG argues that the Plan is simply a "garden-variety 'bonus program.'" Def. Mem. at 21. But

"Defendants' argument that [a program] is not an ERISA-covered pension plan solely by virtue

of the fact that it provides a bonus to employees by itself does not carry the day." *Kuhbier v.

McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 412 (S.D.N.Y.

2015) (denying motion to dismiss based on bonus plan exemption to ERISA); *Kaufman v. S & A

Rest. Corp.,* No. 2006 Civ.  2192, 2008 WL 2242621, at *7 (N.D. Tex. May 30, 2008) (denying

summary judgment on the same issue). A plan is "not a bonus plan" where awards "are not

granted to certain employees as performance rewards, but rather everyone within certain classes

of employees is allowed (and . . . encouraged) to participate." *Holzer v. Prudential Eq. Group

LLC*, 458 F. Supp. 2d 587, 591 (N.D. Ill. 2006) (denying motion to dismiss); *see Tolbert v. RBC

Capital Markets Corp.*, 758 F.3d 619, 626 (5th Cir. 2014) (finding a "deferred compensation

plan" is "not a bonus plan"). AAG's three "bonus plan" cases provided benefits only to "key

employees" and were given "in recognition of special service." *Oatway v. Am. Int'l Group, Inc.*,

325 F.3d 184, 186, 188 (3d Cir. 2003); *see Rich v. Shrader*, 823 F.3d 1205, 1211 (9th Cir. 2016)

(explaining Board "held 'sole discretion' to 'grant Stock Rights in such amounts and to such

Officers as it determines'"); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 930 (8th Cir.

1999) (involving phantom stock plans provided to 7 members of management). By contrast, this

Plan applies to a broad spectrum of employees and the condition of and amount of payment is set by formula; it is not discretionary or based on special service. ECF No. 36-3 §§ B, C, K.

AAG asserts that employees' ability to defer compensation to retirement is insufficient. Def. Mem. at 22. Yet none of AAG's "bonus plan" cases allowed employees to defer income until the termination of employment. *E.g.*, *Emmenegger*, 197 F.3d at 933 ("There is no indication in the record that PSP redemptions were regularly deferred."); *Rich v. Shrader*, No. 2009 Civ. 0652, 2011 WL 4434852, at *8 (S.D. Cal. Sept. 22, 2011) ("There is no systematic deferral of income into the retirement years."). These cases all involve *stock awards*, and "courts have uniformly held an incentive stock option plan is not an ERISA plan." *Oatway*, 325 F.3d at 187. In these cases, the mere ability to hold the stock until retirement or exercise the options to receive payment post-employment was insufficient to constitute the systematic deferral of income required for a bonus plan to be an ERISA pension plan. *Supra*. But as AAG's own case explains, a plan that is not a bonus plan does not need to systematically defer income, but rather merely "result in a 'deferral of income.'" *Tolbert*, 758 F.3d at 627 (finding plan that allowed employees the "option to defer income" was an ERISA pension plan); *see Holansky v. Prudential Fin.*, No. 2002 Civ. 4820, 2004 WL 1404016, at *2 (N.D. Ill. June 21, 2004) (denying motion to dismiss as plan could be a pension plan if employees regularly utilized it as a retirement plan). Here, the Complaint alleges that the Plan allowed employees to defer their payment under this Profit Sharing Plan until termination of employment or retirement. Am. Compl. ¶¶ 50, 85. That is sufficient allegation that this Plan is a pension plan under USERRA.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Dated: May 7, 2019

Respectfully submitted,

R. Joseph Barton (admitted *pro hac vice*)
Colin M. Downes (admitted *pro hac vice*)
BLOCK & LEVITON LLP
1735 20th Street, NW
Washington D.C. 20009
Telephone: (202) 734-7046
Fax:    (617) 507-6020
Email: jbarton@blockesq.com
Email: colin@blockesq.com

Adam Garner
THE GARNER FIRM LTD.
1515 Market St. Suite 1200
Philadelphia PA 19102
Telephone: (215) 645-5955
Facsimile: (215) 645-5960
Email: adam@garnerltd.com

Peter Romer-Friedman (admitted *pro hac vice*)
Hannah Cole-Chu (admitted *pro hac vice*)[13]
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue, NW
Second Floor West
Washington, DC 20001
Telephone (202) 847-4400
Email:prf@outtengolden.com

Matthew Z. Crotty (admitted *pro hac vice*)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave.
Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email:matt@crottyandson.com

---

[13] Admitted to practice in Maryland and the U.S. District Court for the District of Maryland. Not licensed to practice law in the District of Columbia; practicing under the supervision of a member of the D.C. bar.

Thomas G. Jarrard (admitted *pro hac vice*)
LAW OFFICE OF
THOMAS G. JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Fax: (509) 326-2932
Email: Tjarrard@att.net

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Ming Siegel, hereby certify that on May 7, 2019, I electronically filed the foregoing

Plaintiff's Memorandum in Opposition to Motion to Dismiss using the CM/ECF system, which

will send notification of such filing to all counsel of record.

_____
Ming Siegel
