# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES P. SCANLAN, on behalf of himself and all others similarly situated, | |
| Plaintiff, | **Case No. 2:18-cv-04040-HB** |
| -vs.- | **SECOND AMENDED COMPLAINT – CLASS ACTION** |
| AMERICAN AIRLINES GROUP, INC., and AMERICAN AIRLINES, INC. | |
| Defendants. | **EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(h)(1)** |

Plaintiff James P. Scanlan, on behalf of himself and other similarly situated individuals, by and through his attorneys, alleges as follows:

**INTRODUCTION**

1.      This is a class action under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq*., and a breach of contract action on behalf of current and former employees of American Airlines Group, Inc. ("AAG") and American Airlines, Inc. ("AAI") who took military leave from their employers, and (1) did not receive credit under the American Airlines Group Inc. Global Profit Sharing Plan ("the Plan") for periods during which they took military leave, and/or (2) did not receive pay from AAI during short-term military leave, consisting of payment of the differential between the employee's regular salary and the amount he or she received in compensation for his or her military service while on leave (as he or she would have been paid for jury duty leave).

2.      USERRA protects the rights of military service members who take leaves of absence from their civilian employers to perform qualified military service.  USERRA § 4316(b)

1

requires military leave to be treated no less favorably than other, comparable forms of leave. AAG and its subsidiary, AAI, violated this provision in two ways. First, AAG adopted and implemented a policy or practice whereby AAG does not credit employees with imputed earnings or otherwise credit their short-term military leave under the Plan. In contrast, AAG does credit and/or impute employees' earnings under the Plan for comparable forms of non-military leave, such as jury duty leave and bereavement leave. By crediting earnings of employees who took non-military leave when calculating profit sharing awards, AAG was required to credit the imputed earnings of employees who took short-term military leave.

3.      Second, AAI continued to pay AAI employees who went on leave for non-military reasons, such as jury duty (for which employees receive the difference between their regular compensation and the compensation received from the government during the period of their leave) and bereavement leave. However, AAI did not pay equivalent compensation to AAI employees who went on short-term military leave. As a result, AAG and AAI contravened USERRA's mandate to not subordinate military leave to other forms of leave.

4.      As a result of these violations, Plaintiff and other servicemembers employed by AAI received less compensation than they would have received had AAI provided them with paid leave during periods of their short-term military leave on an equivalent basis to other comparable forms of non-military leave. In addition, Plaintiff and other servicemembers employed by AAG received smaller profit sharing awards than they otherwise would have had AAG credited them with imputed earnings for their periods of military leave and were able to defer smaller amounts of compensation into their defined contribution plan accounts than they otherwise would have had AAG complied with USERRA.

5.     On behalf of the servicemember-employees who are or were participants in the Plan, this action seeks (a) a declaration that AAG violated USERRA by failing to credit the earnings associated with periods of military leave when calculating the profit sharing awards under the Plan for Plaintiff and members of the Class, (b) an order requiring AAG to credit imputed earnings associated with military leave in the future, and (c) an order requiring AAG to recalculate and pay the prior profit sharing awards of Plaintiff and members of the Class consistent with the requirements of USERRA and the terms of the Profit Sharing Plan.

6.     On behalf of the servicemember-employees of AAI, Plaintiff seeks (a) a declaration that AAI violated USERRA by failing to provide these Class Members with paid leave during periods of their short-term military leave on an equivalent basis to other, comparable forms of non-military leave; (b) an order requiring AAI to provide paid leave during periods of short-term military leave on an equivalent basis to other, comparable forms of non-military leave; and (c) an order requiring AAI to recalculate and pay the compensation of Plaintiff and members of the Class consistent with the requirements of USERRA (*i.e.*, the differential between an employee's regular wages or salary and the amount he or she received in compensation for his or her military service while on leave).

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over Count I and Count III pursuant to 38 U.S.C. § 4323(b)(3), which provides that the district courts of the United States have jurisdiction over a USERRA action brought against a private employer.  This Court also has subject matter jurisdiction over Count I and Count III under 28 U.S.C. § 1331, because this action arises under laws of the United States. This Court has supplemental jurisdiction over

Plaintiff's state law claim under Count IV pursuant to 28 U.S.C. § 1367 because the state law claim is so related to Plaintiff's other claims that they form part of the same case or controversy.

8.      Venue is proper under 38 U.S.C. § 4323(c)(2), because Defendant AAG is a private employer and maintains a place of business in this District at the Philadelphia International Airport.  Defendant American Airlines, Inc., as well as another wholly-owned subsidiary airline of AAG, Piedmont Airlines, Inc. ("Piedmont"), have primary transportation hubs and employ thousands of employees at the Philadelphia International Airport, and the Philadelphia Airport is the main base for Piedmont Airlines.  A third wholly-owned subsidiary of AAG, PSA Airlines, Inc. ("PSA"), has one of its handful of crew bases at the Philadelphia Airport.  Venue is also proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims in this action occurred in this District.

## PARTIES

9.      Plaintiff James P. Scanlan is and has been employed as a pilot for American Airlines, Inc. since October 1999.  James P. Scanlan is also a Major General in the United States Air Force Reserve and has served in the United States Armed Services since 1985**.**  Throughout his employment at American Airlines, Plaintiff has taken leave to engage in qualified military service to perform his military reserve obligations.  During 2016 and 2017, Plaintiff was a participant in the Plan.  During the time that Plaintiff was a participant in the Plan, Plaintiff took military leave in 2016 and 2017.  Plaintiff resides in Doylestown, Pennsylvania.

10.      Defendant American Airlines Group Inc. ("AAG"), a Delaware corporation, is the parent company of wholly-owned subsidiaries AAI, Envoy Air, Inc. ("Envoy"), Piedmont, and PSA (collectively, "the AAG Airlines").  The AAG Airlines operate airlines and provide services under the American Airlines brand with a significant hub presence in Philadelphia, Pennsylvania,

which is located in this District.  As the sole owner and parent of the AAG Airlines, Defendant AAG established and maintains the American Airlines Group Inc. Global Profit Sharing Plan ("the Plan") to provide benefits to employees of the AAG Airlines in the form of profit sharing based on AAG's profit.

11.     Defendant American Airlines, Inc. ("AAI"), a Delaware corporation, is a wholly-owned subsidiary of Defendant AAG.  AAI provides scheduled air transportation services for passengers and cargo.  At all times during Plaintiff Scanlan's employment with AAI, AAI paid Plaintiff's employment compensation.

12.     Under Section C of the Plan, Defendant AAG calculates and determines profit sharing awards based on employees' wages and salaries.  Pursuant to Section C of the Plan, Defendant AAG is obligated to make profit sharing award payments to employees annually and from its general assets.  Pursuant to Section H of the Plan, AAG has the authority to modify, amend, annul, or terminate the Plan and, as such, has the authority to increase, reduce, or eliminate employees' profit sharing awards.  According to AAG's Form 10-Ks filed with the Securities and Exchange Commission, Defendant AAG was obligated to pay profit sharing awards under the Plan in the amounts of $316 million for 2016 and $241 million for 2017. Defendant AAG meets the definition of an employer within the meaning of 38 U.S.C. § 4303(4)(A), because it "pays salary or wages for work performed" and it "has control over employment opportunities" for the employees who are eligible participants in the Plan.

## CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Profit Sharing Class:

> Current and former employees of American Airlines, Inc., Envoy Air, Inc., Piedmont Airlines, Inc., and PSA Airlines, Inc. who, from January 1, 2016

through the date of judgment in this action, (1) are or were participants in the American Airlines Group Inc. Global Profit Sharing Plan, and (2) while participants in the Plan are or were either employed inside the United States or are or were a citizen, national or permanent resident alien of the United States employed in a foreign country, (3) after becoming a participant in the Plan took a period of military leave during a Plan Year in which they were eligible to receive an award under the Plan (or who would have been eligible to receive an award under the Plan if earnings associated with qualified military leave had been credited) and (4) whose profit sharing award under the Plan did not include credit or imputed earnings for periods of military leave.

14.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following Subclass of Profit Sharing Class (the

American Pilot Profit Sharing Subclass):

All members of the Profit Sharing Class who, from January 1, 2016 through the date of judgment in this action are or were eligible to participate in the American Airlines, Inc. 401(k) Plan for Pilots and are or were subject to taxation in the United States.

15.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following Paid Leave Class:

Current and former employees of American Airlines, Inc. who took short term military leave from their employment with American Airlines, Inc. at any time from January 1, 2013 through the date of judgment in this action and during that leave were not paid the amount equal to what they would have earned had they continued to work their ordinary work schedules for American Airlines, Inc.

16.     Excluded from the Classes and Subclass are the following: (a) any members of

the Committee which was responsible for administering the Plan; (b) all former or current

employees who previously reached settlements with or judgments against American Airlines

Group, Inc. in their individual USERRA actions concerning inadequate profit sharing awards

that were based on earnings that did not take into account imputed income for periods of short-

term military leave and/or the failure to pay compensation to employees during their short term

military leave; and (c) any employees who are covered by the 2005 Agreement between US

Airways, Inc. and the Communication Workers of America representing Passenger Service

Employees, the Passenger Service Agreement between American Airlines, Inc. and CWA-IBT Association representing Passenger Service Employees effective December 1, 2015, the Agreement between US Airways, Inc. and the International Association of Machinists and Aerospace Workers representing Fleet Service Employees dated May 8, 2008, the Fleet Service Agreement between US Airways, Inc. and the Fleet Service Employees as represented by the International Association of Machinists and Electrical Workers dated July 18, 2014, or the Agreement between US Airways, Inc. and the International Association of Machinists and Electrical Workers representing Mechanical Employees..

**Impracticality of Joinder**

16.     The members of Classes and the Subclass are so numerous that joinder of all members is impracticable.

17.     Participants in the Plan include employees of AAI, Envoy, Piedmont, and PSA. AAI, a wholly-owned subsidiary of AAG, has over 100,000 employees. Envoy (formerly American Eagle Airlines), which is a wholly-owned subsidiary of AAG and claims to be the world's largest regional carrier that flies under the American Eagle brand, has approximately 14,000 employees. Piedmont, a wholly-owned subsidiary of AAG that flies under the American Eagle brand (formerly flying under the US Airways Express brand), has approximately 7,000 employees. PSA, which is a wholly-owned subsidiary of AAG that flies under the American Eagle brand, has approximately 3,900 employees.

18.     AAI and each of its regional carriers (*i.e.*, Envoy, Piedmont, and PSA) actively recruit and encourage members of the military to become employees. For example, on its website, American Airlines states that it is "committed to hiring, training and developing candidates with a strong desire to learn and grow, both personally and professionally, and to

supporting the diversity of thought and rich experience that military veterans bring to our workforce and embrace the opportunity to have them as part of the American Airlines family."[1] Piedmont dedicates an entire web page to its "military transition program," and informs servicemembers that "Piedmont values your service to our country. If you're seeking to make a transition to civilian flying, we'll make it easy with our Military Transition Program."[2] Based on the number of airline employees who serve in the National Guard and Reserve and the AAG Airlines' active recruitment of members of the military, thousands of current and former employees of the AAG Airlines are members of the Classes.

19.     The members of the Classes and the Subclass are geographically dispersed across the country. AAI currently has domestic and international "hubs" in the United States at the following locations: Philadelphia, Pennsylvania; Queens, New York; Brooklyn, New York; Los Angeles, California; Miami, Florida; Chicago, Illinois; Charlotte, North Carolina; and Dallas/Fort Worth, Texas. AAI pilots report for flying duty at pilot domicile bases located in all the hubs and also the focus cities of Boston, Massachusetts and St. Louis, Missouri. Envoy has hubs in Queens, New York; Miami, Florida; Chicago, Illinois; and Dallas/Fort Worth, Texas. Piedmont has hubs in Philadelphia, Pennsylvania, and Charlotte, North Carolina. PSA has a hub in Charlotte, North Carolina, and maintains crew bases in Dayton and Cincinnati, Ohio; Knoxville Tennessee; Washington, D.C.; Charlotte, North Carolina; Philadelphia, Pennsylvania; and Norfolk, Virginia. Based on the varied locations of the employees of the airlines whose

---

[1] *Military Community Recruiting*, American Airlines, https://jobs.aa.com/content/veterans/.

[2] *Careers*, Piedmont Airlines, http://piedmont-airlines.com/Careers/Career-Guides/Pilots; *see also Military Transition Program*, Piedmont Airlines, http://piedmont-airlines.com/military-transition-program.

employees are eligible to participate in the Plan, the members of the Classes are geographically dispersed across the country.

**Commonality**

20. The central question in this case, which will generate a common answer as to the Profit Sharing Class, is whether Defendant AAG's policy or practice of failing to credit Class Members with imputed earnings for their periods of short-term military leave in calculating profit sharing awards under the Plan violates USERRA § 4316. As to the American Pilot Profit Sharing Subclass, the central question in this case, which will generate a common answer, is whether Defendant AAG breached its contractual obligations under the Profit Sharing Plan by failing to credit members of the Subclass with earnings for periods of qualified military leave in accordance with the terms of the American Airlines, Inc. 401(k) Plan for Pilots. As to the Paid Leave Class, the central question in this case, which will generate a common answer, is whether Defendant AAI's policy or practice of failing to pay employees their regular compensation during periods of short-term military leave violates USERRA § 4316 and/or USERRA § 4318.

21. Plaintiff's claims raise subsidiary common questions, including the following: (a) whether, for the purposes of calculating profit sharing awards, the Plan had to consider imputed earnings for qualified military service because short-term military leave is comparable to jury duty leave or bereavement leave; (b) whether under the terms of the Profit Sharing Plan, eligible earnings included compensation imputed for qualified military leave, (c) whether, for the purposes of paying its employees' regular compensation during periods of qualified military service, short-term military leave is comparable to other forms of leave for which AAI pays its employees' compensation; and (d) whether Defendants' violations of USERRA were willful, such that they should be required to pay liquidated damages to Class Members.

22.     Because Defendant AAG adopted and applied a uniform policy or practice of not considering earnings that would have been paid during periods of short-term military leave in calculating profit sharing awards or otherwise crediting military leave, answers to these questions will produce common answers for all members of the Profit Sharing Class and the American Pilot Profit Sharing Subclass.  Because Defendant AAI adopted and applied a uniform policy or practice of not paying its employees during periods of short-term military leave on an equivalent basis to other forms of paid leave, answers to these questions will produce common answers for all members of the Paid Leave Class.

23.     As Defendants AAG and AAI acted in a uniform, systematic manner with respect to the Classes and the Subclass, all members of each of the Classes and the Subclass suffered the same type of injury based on a single policy or practice and resolving the claims of the Classes and the Subclass will be based on common legal and factual questions.  Because the calculation and determination of awards under the Plan were based on a uniform, written policy, the issues relating to the relief Profit Sharing Class and the Pilot Profit Sharing Subclass should receive are also common.  To the extent that the policy or practice for either Class or the Subclass is found to violate USERRA or to constitute a breach of contract, the determination of the amounts to be paid to members of the Classes will be formulaic and can be readily calculated.

**Typicality**

24.     Plaintiff's claims are typical of the other members of the Profit Sharing Class because the claims challenge a uniform policy or practice by which Defendant AAG failed to credit imputed income for periods of short-term military leave, including while crediting earnings for comparable forms of non-military leave for purposes of calculating profit sharing awards under the Plan. Plaintiff's claims are typical of the other members of the American Pilot

Profit Sharing Subclass because the claims challenge calculations of the profit sharing awards under the terms of the Plan. Plaintiff's claims are typical of the other members of the Paid Leave Class because the claims challenge a uniform policy or practice by which Defendant AAI failed to pay its employees during periods of short-term military leave on an equivalent basis to other, comparable forms of paid leave.

**Adequacy**

25.     Plaintiff will fairly and adequately protect the interests of other members of the Classes and the Subclass.

26.     Plaintiff does not have any conflict with any other member of the Classes or the Subclass.

27.     Defendant has no unique defenses against the Plaintiff that would interfere with Plaintiff's representation of the Classes or the Subclass.

28.     Plaintiff is represented by counsel with significant experience in prosecuting class action litigation, including class action litigation involving rights and benefits of servicemembers under USERRA.

**Rule 23(b)(1)**

29.     This action can be maintained as a class action under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure.  The central question for the Profit Sharing Class is whether the uniform policy or practice by which Defendant AAG failed to include imputed income for periods of short-term military leave, including when AAG credited earnings for comparable forms of non-military leave for purposes of calculating profit sharing awards under the Plan, violated USERRA.  The central question for the American Pilot Profit Sharing Subclass is whether this uniform policy or practice violated AAG's obligations under the terms of the Profit

Sharing Plan Document. The central question for the Paid Leave Class is whether the uniform policy or practice by which Defendant AAI failed to pay its employees during periods of short-term military leave on an equivalent basis to other, comparable forms of paid leave, violated USERRA. As a result, prosecution of separate claims by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct.

30. This action can be maintained as a class action under Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure. As a practical matter, resolution of whether AAG was required under USERRA or the terms of the Profit Sharing Plan Document to credit imputed earnings associated with short-term military leave under the Plan would be dispositive of that matter for other participants in the Plan even if they were not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Profit Sharing Class or the Subclass. Similarly, resolution of whether AAI was required under USERRA to pay its employees during periods of short-term military leave on an equivalent basis to other forms of comparable paid leave would be dispositive of that matter for other employees even if they were not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Paid Leave Class.

**Rule 23(b)(2)**

31. This action can also be maintained as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. Defendants AAG and AAI have acted and/or failed to act on grounds generally applicable to the respective Classes, making declaratory and injunctive relief appropriate with respect to the members of Classes as a whole.

32.    Defendant AAG maintained a uniform policy or practice as to all members of the Profit Sharing Class and the American Pilot Profit Sharing Subclass.  Defendant AAG is alleged to have violated USERRA and the terms of the Profit Sharing Plan Document by refusing to credit imputed earnings associated with short-term military leave when calculating profit sharing awards for all Plan participants who took short-term military leave.  As such, Defendant AAG has acted or refused to act on grounds that apply generally to the Class and the Subclass.  As a result, final declaratory and injunctive relief is appropriate with respect to the Class as a whole.

33.    Defendant AAI maintained a uniform policy or practice as to all members of the Paid Leave Class.  Defendant AAI is alleged to have violated USERRA by refusing to pay its employees during periods of short-term military leave on an equivalent basis to other forms of paid leave.  As such, Defendant AAI has acted or refused to act on grounds that apply generally to the Class.  As a result, final declaratory and injunctive relief is appropriate with respect to the Class as a whole.

34.    The relief sought consists primarily of (a) a declaration establishing that Defendant AAG has violated USERRA by failing to include imputed income for periods of short-term military leave in calculating profit sharing awards under the Plan; (b) a declaration establishing that Defendant AAI has violated USERRA by failing to pay its employees during periods of short-term military leave on an equivalent basis to other forms of non-military leave; and (c) an order requiring Defendants to recalculate and pay profit sharing awards and regular compensation to Class Members consistent with the requirements of USERRA and the terms of the Profit Sharing Plan.  The monetary relief sought either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner.  Specifically, the amount owed the

Profit Sharing Class can be calculated by (a) comparing the profit-sharing award amount received by the Class with the amount that would have been provided had imputed income for periods of short-term military leave been included in calculating profit sharing awards and (b) paying the Class the difference between those amounts. Similarly, the amount owed the American Pilot Profit Sharing Subclass can be calculated by (a) comparing the profit-sharing award amount received by the Subclass with the amount that would have been provided had Eligible Earnings been correctly calculated under the terms of the Profit Sharing Plan (b) paying the Class the difference between those amounts. Similarly, the amount owed the Paid Leave Class can be calculated by (a) comparing the regular compensation paid by Defendant AAI to the Class with the amount of compensation actually received by the Class during periods of short-term military leave, and (b) paying the Class the difference between those amounts.

**Rule 23(b)(3)**

35. The claims can also be certified as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure because the questions of law and fact common to the members of the Classes predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

36. The common questions of law and fact concern whether Defendant AAG's policy regarding the failure to credit imputed earnings associated with short-term military leave under the Plan violated USERRA and breached the terms of the Profit Sharing Plan and whether Defendant AAI's policy or practice of failing to pay its employees during periods of qualified short-term military leave on an equivalent basis to other forms of non-military leave violated USERRA. As the members of the Profit Sharing Class and American Pilot Profit Sharing Subclass were all participants in the Plan who took short-term military leave, their payments

were affected by AAG's violations and common questions related to liability will necessarily predominate over any individual questions related to liability. As the members of the Paid Leave Class were all employees who took short-term military leave, their compensation was affected by AAI's violations and common questions related to liability will necessarily predominate over any individual questions related to liability. As the calculation of payments under the Plan is governed by a written plan document, and as employees' regular compensation is governed by the terms of their employment with AAI, and relief primarily consists of a declaration and order requiring AAG and AAI to calculate and recalculate benefits and compensation consistent with USERRA and the terms of the Plan, common questions as to remedies will likewise predominate over any individual issues.

37.    A class action is superior to other available methods for the fair and efficient resolution of this controversy. By resolving the common issues in a single class proceeding, the issues will be efficiently resolved in a single proceeding rather than multiple proceedings. Class certification is a superior method of proceeding because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' obligations under USERRA and the Plan and of the remedy that should be provided under USERRA.

38.    The following factors set forth in Rule 23(b)(3) also support certification:

a.    The members of the Classes have an interest in a unitary adjudication of the issues presented in this action and, for this reason, this case should be certified under Rule 23(b)(1). Additionally, many members of the Classes are unlikely to have sufficient damages to justify pursuing an individual federal court action or to obtain counsel to pursue an individual action, but

all members of both Classes would benefit from a class action that obtains

relief for all members of the Classes.

b.      No other litigation concerning this controversy has been filed by any other

members of either Class.

c.      This is an appropriate forum for these claims because, among other

reasons, jurisdiction and venue are proper, Philadelphia is hub for the

AAG Airlines, and a significant portion of the Classes work and/or reside

in this District.

d.      There are no difficulties in managing this case as a class action.

## FACTUAL ALLEGATIONS

**The Plan**

39.      AAG and/or the Board of Directors of AAG on behalf of AAG adopted and

implemented the American Airlines Group Inc. Global Profit Sharing Plan effective January 1,

2016.

40.      Section K of the Plan defines participant to include certain regular full-time and

part-time employees of AAG Airlines who are in the union or non-union groups in the Plan

(denominated as Work Groups) as the employees eligible to participate in the Plan.  The union

groups include pilots, flight attendants, mechanics, and passenger service employees of the AAG

Airlines.  The non-union groups include non-union-represented management and non-

management employees.

41.      Pursuant to Section B of the Plan, each participant is eligible to receive a profit

sharing award with respect to each Plan Year.

42. Section K of the Plan defines "Plan Year" to mean a designated fiscal year. Upon information and belief, the Plan Year is AAG's fiscal year, which is the calendar year.

43. Section H of the Plan provides that AAG has the authority to modify, amend, annul or terminate the Plan at any time for any reason.

**Calculation and Payment of Profit Sharing Awards Under the Plan**

44. Pursuant to Section C of the Plan, AAG is obligated to pay profit sharing awards equal to 5% of AAG's pre-tax earnings with respect to each Plan Year. According to Section C of the Plan, profit sharing awards paid pursuant to the Plan are paid from AAG's general assets.

45. Pursuant to Section C of the Plan, the amount of a participant's profit sharing award with respect to each Plan Year is calculated and determined by dividing 5% of AAG's pre-tax earnings by the aggregate amount of all participants' earnings and multiplying the resulting quotient by the participant's eligible earnings. In other words, each participant is allocated with respect to each Plan Year a *pro rata* amount of 5% of the AAG's pre-tax earnings based on his or her individual earnings compared to the aggregate earnings of all participants.

46. Section K of the Plan defines "Eligible Earnings" under the Plan in relevant part to mean "Compensation" as that term is defined for purposes of employer contributions in the qualified defined contribution plan that is intended to comply with Section 401(k) of the Code, that is sponsored by the Employee's Participating Employer, and in which such Employee is eligible to participate at the time the profit sharing award is paid." For Plaintiff Scanlan and the American Pilot Profit Sharing Subclass, that Plan was the American Airlines, Inc. 401(k) Plan for Pilots.

47. According to the Summary Plan Description of the American Airlines, Inc. 401(k) Plan for Pilots, the employer contributions are based on a pilot's "Eligible Compensation" as

defined in the 401(k) Plan. The 40l(k) Plan defines "Eligible Compensation" to include not only "all amounts reported as wage on the IRS W-2 after [the employee] become[s] an active Participant in the Plan" but explains that for "authorized military and non-military leaves of absence" a participant is entitled to "receive Pilot Company Contributions that are made to the Plan based on Eligible Compensation earned during [the participant's] leave of absence.

48.     The American Airlines, Inc. 401(k) Plan for Pilots also provides:

**3.5    Qualified Military Service.** Notwithstanding any other provision of the Plan to the contrary, contributions, benefits and service credit with respect to qualified military service shall be provided in accordance with Code section 414(u). For these purposes, during a period of qualified military service, an Eligible Employee will be considered to have received Compensation from the Employer at the same annual rate as the Eligible Employee's average rate of Compensation from the Employer during the 12 months immediately preceding the qualified military service (or, if shorter, the period of employment preceding the qualified military service).

49.     From the inception of the Profit Sharing Plan through the present, AAG has adopted a policy or practice whereby it credits leave and imputes income for calculating awards under the Plan for leave for jury duty and bereavement leave. During that same time (*i.e.*, from inception of the Plan through the present), AAG has adopted a policy or practice whereby it has refused to credit leave for military service when calculating awards under the Plan, and thus fails to include earnings or imputed earnings from military leave when calculating awards under the Plan—even for participants in the American Airlines, Inc. 401(k) Plan for Pilots, who pursuant to the terms of the Profit Sharing Plan and the 401(k) Plan are explicitly entitled to receive profit sharing credit during periods of qualified military service.

50.     Pursuant to AAG's policy and practice, with respect to calculating the profit sharing awards of participants who have taken long-term or short-term military leave from their employment at the AAG Airlines, Defendant AAG has not included in the participants' eligible earnings the amount that they would have earned from their employment had they not taken such

military leave.  Pursuant to the same policy or practice, for participants who have taken non-military forms of leave that are comparable to short-term military leave, such as jury duty leave or bereavement leave, from their employment at the AAG Airlines, Defendant AAG credited earnings for those non-military leaves.

51.     Pursuant to Section D of the Plan, each profit sharing award allocated to a participant under Section C of the Plan is paid in the form of a lump-sum cash payment by March 15 of the immediately following Plan Year or such other date as required by applicable law.  However, employees are allowed to designate the amount of their profit sharing awards under the Plan that they want to deposit into their retirement plans and thereby defer their profit sharing awards to the termination of their employment and/or have the awards paid as retirement income.

52.     Section J.7  of the Profit Sharing Plan Document provides in relevant part that the "Plan shall be construed in accordance with the laws of the State of Texas to the extent federal law does not supersede and preempt Texas law.

53.     AAG's Form 10-Ks for the fiscal years ended December 31, 2016, December 31, 2017, December 31, 2018, and December 31, 2019, respectively, stated that AAG was obligated to pay profit sharing awards under the Plan in the amounts of $316 million for 2016, $241 million for 2017. $175 million for 2018, and $213 million for 2019.

54.     AAG's Form 10-K for the fiscal year ended December 31, 2019, stated that profit sharing awards for 2019 under the Plan would be distributed to participants in the first quarter of 202018.

**Plaintiff's USERRA-Protected Military Leave & Awards Under the Plan**

55.     Throughout 2016 and 2017, Plaintiff Scanlan took various periods of leave that qualified as a service in the uniformed services within the meaning of USERRA, 38 U.S.C. § 4303(13).  Those periods of military leave ranged approximately between two days and fourteen days.  Plaintiff's qualified military service in 2016 totaled 128 days.  Plaintiff's qualified military service in 2017 totaled 132 days.

56.     Plaintiff performed military service in 2016 and 2017 on the dates listed below:

| **2016** (128 days) | **2017** (132 days) | |
|---|---|---|
| Feb 7-20, 2016 (14) | Jan 6, 2017 (1) | Jul 6-8, 2017 (3) |
| Mar 7-18, 2016 (12) | Jan 12, 2017 (1) | Jul 19-29, 2017 (11) |
| Mar 21-25, 2016 (5) | Feb 7-9, 2017 (3) | Aug 1-5, 2017 (5) |
| Apr 10-17, 2016 (8) | Feb 13-14, 2017 (2) | Aug 7-11, 2017 (5) |
| Apr 24-29, 2016 (6) | Feb 23-24, 2017 (2) | Aug 21-23, 2017 (3) |
| May 3-16, 2016 (14) | Feb 27, 2017 (1) | Aug 29-30, 2017 (2) |
| May 25-28, 2016 (4) | Mar 2-3, 2017 (2) | Sep 4-15, 2017 (12) |
| Jun 12-15, 2016 (4) | Mar 13-17, 2017 (5) | Sep 18-22, 2017 (5) |
| Jul 9-15, 2016 (7) | Mar 20-22, 2017 (3) | Sep 25, 2017 (1) |
| Jul 19-21, 2016 (3) | Mar 28-29, 2017 (2) | Oct 4-5, 2017 (2) |
| Jul 30 – Aug 4, 2016 (6) | Apr 7, 2017 (1) | Oct 10-13, 2017 (4) |
| Aug 15-27, 2016 (13) | Apr 15, 2017 (1) | Nov 7-9, 2017 (3) |
| Sep 4-15, 2016 (12) | Apr 17-21, 2017 (5) | Nov 13-17, 2017 (5) |
| Oct 3-7, 2016 (5) | May 9-12, 2017 (4) | Nov 19-21, 2017 (3) |
| Nov 14-18, 2016 (5) | May 16-19, 2017 (4) | Dec 4-9, 2017 (6) |
| Dec 5-9, 2016 (5) | May 21-26, 2017 (6) | Dec 12-13, 2017 (2) |
| Dec 19-23, 2016 (5) | Jun 3-16, 2017 (14) | |
| | Jun 26-28, 2017 (3) | |

57.     During the time that Plaintiff took military leave to engage in qualified military service in 2016, 2017, 2018 and 2019, Plaintiff was a participant in the Plan.

58.     In calculating profit sharing awards for the 2016, 2017 and  2018 Plan Years, Defendant AAG did not include, credit or impute the individual eligible earnings of participants who took long-term or short-term military leave.

59.     In the first quarter of 2017, 2018 and 2019, Defendant AAG was required under the Plan to pay and distribute and did pay and distribute profit sharing awards under the Plan for the 2016, 2017 and 2018 Plan Years, respectively and is expected to pay a profit sharing award in March 2020 for the 2019 Plan Year. As a result of Defendant AAG's failure to include in his eligible earnings an imputed income for his periods of military leave in 2016, 2017 and 2018, Plaintiff received profit sharing awards from AAG in substantially lower amounts than he would have had Defendant calculated his profit sharing awards based on eligible earnings that included imputed income for his periods of military leave or otherwise credited him for military leave.

**AAG Confirms its Policy and is Informed That its Policy and Practice Violates USERRA**

60.     After Plaintiff Scanlan failed to receive a profit sharing award under the Plan in 2016 that included, credited, or imputed earnings for periods of his qualified short-term military leave, he inquired with the representative of his union, the Allied Pilots Association, whether the failure to credit or include imputed earnings from military leave under the Plan was a mistake unique to him or whether this was AAG's policy. Specifically, Plaintiff Scanlan advised the Allied Pilots Association in early 2017 that AAG's failure to credit his military service under the Plan violated USERRA.

61.     In early February 2017, the Allied Pilots Association informed Mr. Scanlan that AAG's policy is that any time away from the company where there is not income generation will not be included in the calculation under the Profit Sharing Plan. The Allied Pilots Association also explained that AAG's policy regarding the Profit Sharing Plan was different than AAG's 401(k) plan, and that the Profit Sharing Plan was a benefit that was not negotiated between AAG and the Allied Pilots Association.

62.     In mid-February 2017, the Allied Pilots Association informed Mr. Scanlan that it had asked AAG to confirm whether or not military service qualifies for profit sharing and it was waiting on AAG to respond.  The Allied Pilots Association also informed Mr. Scanlan that AAG was consulting with its legal department before delivering its response.

63.     At the end of February 2017, the Allied Pilots Association had additional discussions with AAG and was informed by AAG that *only* the actual earnings listed on a pilot's W-2 would be considered as eligible earnings for the purposes of computing profit sharing awards under the Plan.  In the course of those discussions, AAG was advised that other major airlines compute their employees' profit sharing awards by including imputed earnings associated with periods of military leave.

64.     At the end of March 2017, the Allied Pilots Association informed Mr. Scanlan that AAG's final position was that it will not adjust profit sharing awards based upon imputed earnings associated with any military leave.  The Allied Pilots Association confirmed that AAG's Board of Directors (which has the power to interpret the Plan) had decided that imputed income for military leave of absence is not and will not be used in the calculation of profit sharing awards under the Plan.

65.     As a result of AAG's policy, each participant in the Plan who took military leave did not have his or her imputed earnings from military leave credited in the calculation of his or her profit sharing awards for the 2016 and 2017 Plan Years.  And each employee who takes military leave in the future will not have his or her imputed earnings from military leave credited for the purpose of calculating his or her profit sharing award in future Plan Years.

66.     As a result of its policy, Defendant AAG did not credit leave for military service or include imputed earnings in the individual eligible earnings for at least hundreds of participants who had taken military leave in 2016 or 2017.

67.     By at least early 2017, if not before, Defendant AAG knew that its policy and practice of calculating the profit sharing awards of participants in the Plan who took military leave violated USERRA, but failed to bring its policy or practice into compliance with federal law.  As such, Defendant's violations of USERRA were willful.

68.     Based on references on its web sites, Defendant AAG and/or the AAG Airlines are parties to contracts with the United States government, which prohibits Defendant AAG and the AAG Airlines from discriminating against veterans and military service members.

69.     Defendant AAG and/or the AAG Airlines maintained workplace posters that set out employer responsibilities under USERRA as required by 38 U.S.C. § 4334 similar to those found on American Airlines' web site.

**Defendant AAI's Failure to Pay Its Employees During Short-Term Military Leave**

70.     When Defendant AAI's employees take short-term leave from their employment because of jury duty, AAI pays the employee on leave an amount that is equivalent to the difference between the total compensation that the employee normally receives from AAI and the amount, if any, that the employee receives from the government for his or her jury duty service.  Similarly, Defendant AAI's Collective Bargaining Agreement ("CBA") with the Allied Pilots Association requires AAI to provide employees with up to three days of paid leave in the event of the death of an immediate family member ("bereavement leave").

71.     Jury duty and bereavement leave are comparable to short-term military leave in terms of the duration of the leave.  Like jury duty and bereavement leave, short-term military

leave occurs on a short-term basis. Pursuant to the Allied Pilots Association's CBA with AAI, bereavement leave that triggers AAI's obligation to continue to pay employees' compensation is temporary and part-time in duration, much like military leave. Each of these types of leave commonly lasts several days.

72.     Jury duty and bereavement leave are also comparable to short-term military leave in terms of their involuntary nature. For both types of leave, the employee's absence from work is involuntary, due to legal requirement (in the case of jury duty) or death (in the case of bereavement leave).

73.     Despite the similarity of short-term military leave to other forms of leave during which Defendant AAI pays its employees' regular compensation or a differential between their AAI pay and pay from an alternative source, Defendant AAI refused to pay the regular compensation of military service members who take short-term military leave or the difference between their regular AAI pay and their military pay during such short-term military leave.

## COUNT I

## VIOLATION OF USERRA, 38 U.S.C. § 4316(b)(1), AGAINST DEFENDANT AAG
### (On Behalf of the Profit Sharing Class)

74.     Plaintiff hereby repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

75.     USERRA, 38 U.S.C. § 4316(b)(1), provides that "a person who is absent from a position of employment by reason of service in the uniformed services shall be (A) deemed to be on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service."  The rights and benefits that servicemembers are entitled to receive under USERRA § 4316(b)(1) include rights under Defendant AAG's profit sharing plan.

76.     The U.S. Department of Labor regulation that implement and interpret USERRA § 4316(b)(1), 20 C.F.R. § 1002.150(b), provides that "[i]f the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services."

77.     Pursuant to its policy or practice, Defendant AAG credited participants who had taken jury duty leave or bereavement leave from their employment at the AAG Airlines with earnings for those periods of leave each year since the Plan's inception in 2016 for the purpose of calculating their profit sharing awards in the Plan.

78.     For the purpose of calculating the profit-sharing awards of participants in the Plan who had taken short-term military leave from their employment at the AAG Airlines for each Plan Year, Defendant AAG did not include in the participants' eligible earnings any imputed income that they would have earned from their employment had they not taken short-term military leave.

79.     The types of non-military leave for which AAG provides credit under the Plan – jury duty leave and bereavement leave – are comparable to short-term military leave in terms of the duration, purpose, and/or the ability of the employee to determine whether to take the leave. The typical duration of each of these types of leave is comparable to short-term military leave. Jury duty, bereavement leave, and short-term military leave commonly last only several days and usually not more than a few weeks. Furthermore, jury duty is compulsory and taken to perform a public service, similar to how servicemembers are often required to take military leave to perform a public service in the Armed Forces.

80.     By adopting and applying a policy or practice of not including imputed earnings for Class Members' periods of short-term military leave to calculate their profit sharing awards under the Plan, Defendant AAG denied Class members the same rights and benefits provided to employees on comparable forms of non-military leave, including jury duty leave and bereavement leave, and failed to provide employees who took short-term military leave the most favorable treatment accorded to employees on comparable forms of non-military leave. By doing so, AAG violated and continues to violate USERRA § 4316(b)(1).

81.     Due to Defendants' failure to comply with USERRA § 4316(b)(1), Plaintiff and other members of the Class received lower profit sharing awards than they would have received had Defendants complied with USERRA and the Department of Labor's regulations.

82.     Upon information and belief, Defendant's violation of USERRA § 4316(b)(1) was willful.

<h2 style="text-align:center">COUNT II</h2>

<p style="text-align:center"><strong>BREACH OF CONTRACT & DECLARATORY JUDGMENT<br>AGAINST DEFENDANT AAG<br>(On Behalf of the American Pilot Profit Sharing Subclass)</strong></p>

83.     Plaintiff hereby repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

84.     The Profit Sharing Plan Document provides that a profit sharing award for a Participant with respect to any Plan Year is calculated as follows:

> An amount equal to five percent (5%) of the dollar amount of AAG's Pre-Tax Earnings with respect to the applicable Plan Year will be divided by the amount of the Total Population's Eligible Earnings, and the resulting quotient is the "Payout Percentage." The amount of the profit sharing award for each Participant is the product of the Payout Percentage multiplied by such Participant's Individual Eligible Earnings.

85.     Under Section K of the terms of the Profit Sharing Plan Document, "Eligible Earnings" means, and has been defined since 2016 in respect of Employees subject to taxation in the United States as follows (emphasis added):

> "Compensation" as that term is *defined for purposes of employer contributions, in the qualified defined contribution plan* that is intended to comply with Section 401(k) of the Code that is sponsored by the Employee's Participating Employer and in which such employee is eligible to participate at the time the profit sharing award is paid….

86.     For Plaintiff and the members of the American Pilot Profit Sharing Subclass, the qualified defined contribution plan for purposes of the Profit Sharing Plan's definition of Eligible Earnings is the American Airlines, Inc. 401(k) Plan for Pilots.

87.     Section 3.5 of the American Airlines, Inc. 401(k) Plan for Pilots specifically provides with respect to term compensation for employer contributions as follows (emphasis added):

> Notwithstanding any other provision of the Plan to the contrary, contributions, benefits and service credit with respect to qualified military service shall be provided in accordance with Code section 414(u). For these purposes, during a period of qualified military service, an *Eligible Employee will be considered to have received Compensation from the Employer at the same annual rate as the Eligible Employee's average rate of Compensation from the Employer during the 12 months immediately preceding the qualified military service (or, if shorter, the period of employment preceding the qualified military service).*

88.     In determining and calculating awards under the Profit Sharing Plan AAG has not included in the Participants' Eligible Earnings for purposes of the Profit Sharing Plan any credit or imputed income reflecting the definition of Compensation set forth in Section 3.5 of the American 401(k) Plan for Pilots or considered the Participant who took qualified military service during the Plan Year of the Profit Sharing Plan to have received Compensation from the Employer at the same annual rate as the Eligible Employee's average rate of Compensation from the Employer during the last 12 months for purposes of calculating awards under the Profit Sharing Plan.

89.     As AAG interprets the term Eligible Earnings under the Profit Sharing Plan to not include or apply the term Compensation expressed in Section 3.5 of the American Airlines, Inc. 401(k) Plan for Pilots, AAG will continue to calculate awards under the Profit Sharing Plan that do not reflect Compensation set forth in Section 3.5 of the American 401(k) Plan for Pilots.

90.     Plaintiff and the other members of the American Pilot Profit Sharing Subclass members' work for AAG constituted consideration for the promises contained in the Profit Sharing Plan Document.

91. The American Profit Sharing Plan Document constitutes an enforceable contract between AAG and each of the members of the Pilot Profit Sharing Subclass and/or an implied contract with respect to the terms of their compensation.

92. By continuing to work for AAG, Plaintiff and the other members of the Pilot Profit Sharing Subclass performed their obligations under the contract and satisfied the condition of AAG to calculate awards consistent with the terms of the Profit Sharing Plan.

93. AAG breached its obligations under the Profit Sharing Plan Document by failing to credit periods of qualifying military leave under the Profit Sharing Plan as Compensation within the meaning set forth in Section 3.5 of the American 401(k) Plan for Pilots.

94. Due to AAG's failure to comply with the terms of the Profit Sharing Plan Document and its interpretation of the Profit Sharing Plan, Plaintiff and other members of the American Pilot Profit Sharing Subclass have received and will continue to receive lower profit sharing awards than they would have received had AAG credited periods of qualifying military leave under the Profit Sharing Plan as Compensation within the meaning set forth in Section 3.5 of the American 401(k) Plan for Pilots.

## COUNT III

**VIOLATION OF USERRA, 38 U.S.C. § 4316(b)(1), AGAINST AAI**
**(On Behalf of the Paid Leave Class)**

94. Plaintiff hereby repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

95. USERRA, 38 U.S.C. § 4316(b)(1), provides that "a person who is absent from a position of employment by reason of service in the uniformed services shall be (A) deemed to be on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the

person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service."

96.　　The U.S. Department of Labor regulation that implements and interprets USERRA § 4316(b)(1), 20 C.F.R. § 1002.150(b), provides that "[i]f the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services."

97.　　AAI paid its employees an amount equal to the difference between their regular compensation while working at AAI and the amount of compensation, if any, that they received from third parties for various forms of comparable non-military leave, including jury duty and bereavement leave.  However, pursuant to its policy or practice of failing to pay employees when they take short-term military leave, AAI refused to make equivalent payments to Plaintiff and Paid Leave Class Members during their short-term military leave periods.

98.　　The types of leave for which AAI paid employees their regular compensation – including jury duty leave and bereavement leave – are comparable to short-term military leave in terms of the duration, purpose, and/or the ability of the employee to determine whether to take the leave.

99.　　By adopting and applying a policy or practice of not paying employees when they take short-term military leave, AAI denied Plaintiff and the Paid Leave Class the same rights and benefits, which include compensation, provided to employees who take comparable forms of non-military leave, including jury duty leave, and thus failed to provide the most favorable

treatment accorded to employees on comparable forms of non-military leave. By doing so, AAI violated and continues to violate USERRA § 4316(b)(1).

100.     Due to AAI's failure to comply with USERRA § 4316(b)(1), Plaintiff and other members of the Paid Leave Class received lower compensation than they would have received had Defendant complied with USERRA and the Department of Labor's regulations.

101.     Upon information and belief, Defendant's violation of USERRA § 4316(b)(1) was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and respectfully requests that this Court award the following relief:

A.      Declare that Defendant AAG's policy or practice by which AAG failed to include imputed income for or credit toward participants' periods of military leave to calculate their profit sharing awards under the Plan violated the rights of Plaintiff and the Class under USERRA § 4316 and USERRA § 4318;

B.      Declare that Defendant AAI's policy or practice by which AAI failed to pay servicemember-employees when they took short-term military leave, while paying employees who took other, comparable forms of non-military leave, violated the rights of Plaintiff and the Paid Leave Class under USERRA § 4316;

C.      Declare Defendants' violations of USERRA were willful under 38 U.S.C. § 4323(d)(1)(C).

D.      Declare that the eligible earnings under the Profit Sharing Plan for Plaintiff and the Profit Sharing Class for their profit sharing awards must be based on amounts that include imputed income for their periods of military leave;

E.  Declare that the term Eligible Earnings under the Profit Sharing Plan with respect to the American Pilot Profit Sharing Subclass includes the definition of Compensation set forth in Section 3.5 of the American 401(k) Plan for Pilots;

F.  Require Defendant AAG to recalculate and pay profit sharing awards to the Pilot Paid Leave Subclass consistent with the Court's declaration;

G.  Declare that Defendant AAI must pay employees who take short-term military leave on the same basis as employees who take leave for jury duty, bereavement leave, and other forms of comparable short-term, non-military leave, namely an amount equal to the difference between their regular compensation while working at AAI and the amount of compensation received from the government for their military service during periods of short-term military leave;

H.  Require Defendant AAG to recalculate the profit sharing awards that Plaintiff and the Class and the Subclass are entitled to receive under the Plan in accordance with the Court's declarations;

I.  Require Defendant AAG to calculate and pay profit sharing awards that participants in the Plan are entitled to receive in the future to include imputed income for or credit for their periods of military leave;

J.  Require Defendant AAI to recalculate and pay the compensation that Plaintiff and the Paid Leave Class are entitled to receive in accordance with the Court's declaration;

K.  Order Defendants AAG and AAI to pay all members of the Classes liquidated damages in an amount to be determined at trial pursuant to 38 U.S.C. § 4323(d)(1)(C);

L.  Award pre-judgment and post-judgment interest on any monetary relief awarded or required by order of this Court;

M.    Require Defendants AAG and AAI to pay attorneys' fees, expert witness fees, litigation expenses and costs pursuant to 38 U.S.C. § 4323(h) and/or order the payment of reasonable fees and expenses in this action to Plaintiff's Counsel on the basis of the common benefit and/or common fund doctrine out of any money or benefit recovered for the Class in this Action; and

N.    Grant such other and further relief as the Court deems proper, just, and/or equitable.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38 or any similar rule or law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

Dated: February 27, 2020                    Respectfully submitted,

<div style="margin-left: 50%;">

_____

R. Joseph Barton (admitted *pro hac vice*)
Colin M. Downes (admitted *pro hac vice*)
BLOCK & LEVITON LLP
1735 20th Street NW
Washington D.C. 20009
Telephone: (202) 734-7046
Fax:    (617) 507-6020
Email: jbarton@blockesq.com
Email: colin@blockesq.com

Peter Romer-Friedman (admitted *pro hac vice*)
GUPTA WESSLER PLLC
1900 L St., NW, Ste. 312
Washington, D.C. 20036
Telephone: (202) 888-1741
Email: peter@guptawessler.com

Michael J. Scimone (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone (212) 245-1000
Email: mscimone@outtengolden.com

Hannah Cole-Chu (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW, Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Email: hcolechu@outtengolden.com

Matthew Z. Crotty (admitted *pro hac vice*)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave. Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email: matt@crottyandson.com

Thomas G. Jarrard (admitted *pro hac vice*)
LAW OFFICE OF

</div>

THOMAS G. JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Fax: (509) 326-2932
Email: Tjarrard@att.net

Adam Garner
THE GARNER FIRM LTD.
1515 Market St. Suite 1200
Philadelphia PA 19102
Telephone: (215) 645-5955
Facsimile: (215) 645-5960
Email: adam@garnerltd.com

*Attorneys for Plaintiff*