```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN                  :       CIVIL ACTION
                                  :
          v.                      :
                                  :
AMERICAN AIRLINES GROUP, INC.,    :
et al.                            :       NO. 18-4040
```

MEMORANDUM

Bartle, J.                                              May 5, 2020

Plaintiff, an American Airlines pilot and a Major General in the United States Air Force Reserve, brings this purported class action against his employer American Airlines, Inc. ("AA") and its parent American Airlines Group, Inc. ("AAG"). Defendant AAG now seeks to dismiss Count II of the Second Amended Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that this court lacks subject matter jurisdiction over that count.[1]

Count II alleges breach of contract by AAG under Texas law. Specifically, plaintiff asserts that AAG established a profit sharing plan in which plaintiff and other AA pilots participate. According to Count II, they are not receiving what is due under the plan because AAG excludes from eligible earnings

---

1. AA also moves to dismiss Count II. However, only AAG has been sued in Count II, and thus AA is not a proper party to this motion.

the income to which the pilots are entitled while they are on short term military leave.[2]

The profit sharing plan established by AAG sets aside 5% of its pre-tax earnings each year for pro rata distribution to qualifying employees of AA and other affiliated airlines based on each participant's "individual eligible earnings" for that year. Under the Plan AAG has the authority "to modify, amend, annul, or terminate this Plan at any time and for any reason." See § H. The Plan is administered by the Compensation Committee of AAG's Board of Directors.  See § F2.

It is undisputed that the Plan is not a benefit negotiated by the union representing the pilots.  Further, Section H of the Plan declares, "In no event shall the terms of the Plan be deemed incorporated into any collective bargaining, works council, or similar agreement and nothing herein shall be deemed to amend, modify, or otherwise alter any collective bargaining, works council or similar agreement."

On October 20, 2016, Beth Holden, Managing Director of Labor Relations of AA, and Dan Carey, President of the Allied Pilots Association, the pilots' union, signed a letter which

---

2. Count I alleges a violation by AAG of the Uniformed Services Employment and Reemployment Act, 38 U.S.C. §§ 4301, et seq., while Count III alleges a similar violation.  Previously, this court denied the defendants' motion to dismiss these counts for failure to state a claim.  Scanlan v. Am. Airlines Grp., Inc., 384 F. Supp. 3d 520 (E.D. Pa. 2019).

"confirm[s] our understanding regarding profit sharing for pilots employed by American Airlines." It continues:

> American Airlines has established a profit sharing arrangement, the American Airlines Group, Inc. Global Profit Sharing Plan (the 'Profit Sharing Plan'), that will allow eligible employees, including employees represented by the Allied Pilots Association (APA), the opportunity to share in the financial success of American.
>
> The effective date of the Profit Sharing Plan, as to APA-represented employees covered by this letter, will be the date on which APA has approved and you have signed this letter on behalf of APA. The terms and conditions set forth in the Profit Sharing Plan shall apply and shall govern the participation of employees represented by APA.
>
> This Letter of Agreement shall supersede all prior LOAs establishing a profit sharing program for APA-represented employees and shall remain in effect for the duration of the Joint Collective Bargaining Agreement dated January 30, 2015.

The plaintiff maintains that he and the purported class have been short changed because AAG has been improperly interpreting "eligible earnings" under Section K of the profit sharing plan. Section K defines "eligible earnings" to mean:

> In respect of Employees subject to taxation in the United States:
>
> > 'Compensation,' as that term is defined for purposes of employer contributions, in the qualified defined contribution plan is intended to comply with Section 401(k) of the Code that is sponsored by the Employee's Participating Employer and in which such Employee is eligible to

-3-

>     participate at the time the profit sharing
>     award is paid; provided, however, that the
>     annual limit on compensation under Code
>     Section 401(a)(17) shall not be applied for
>     purposes of this Plan. . . .

AAG agrees that relief depends on the interpretation of the § 401(k) plan, although it disputes the interpretation advanced by the plaintiff. It is undisputed that the 401(k) plan referenced in the profit sharing plan is the same plan maintained as part of a Collective Bargaining Agreement between AA and the pilots' union.

AAG argues that the dispute over the meaning of the § 401(k) plan is "a minor dispute" within the exclusive jurisdiction of a board of adjustment under the Railway Labor Act, 45 U.S.C. §§ 151, et seq. As noted above, it seeks dismissal of Count II for lack of subject matter jurisdiction. It appears that AAG is making a factual attack rather than a facial attack on this court's subject matter jurisdiction since AAG relies not only on allegations contained in the second amended complaint but also on evidence outside of the pleading. See Gotha v. United States, 115 F.3d 176, 178-79 (3d Cir. 1997). The plaintiff of course has the burden of proof to the extent there are disputes of fact related to jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009).

The Railway Labor Act, which was amended in 1936 to include the airline industry, differentiates in the way major disputes and minor disputes between management and labor are resolved. As the Supreme Court has explained in Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994):

> Major disputes relate to the formation of collective [bargaining] agreements or efforts to secure them. . . . [M]inor disputes grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. . . . Minor disputes involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation. . . . Thus, major disputes seek to create contractual rights, minor disputes to enforce them. (citations and internal quotation marks omitted).

Pursuant to the Railway Labor Act, minor disputes, that is disputes which involve "controversies over the meaning of an existing collective bargaining agreement," must be submitted to and resolved by an adjustment board. Id. at 253, 256; 45 U.S.C. §§ 181, 184; See Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co., 373 U.S. 33, 28-39 (1963). The parties have advised the court that AA and the pilots have in place such a board to adjust minor disputes.

Disputes, however, between an air carrier and its employees which are independent of a collective bargaining agreement are not subject to the dispute resolution mechanism of the Railway Labor Act. Hawaiian Airlines, supra at 257. For

example, in Hawaiian Airlines the Supreme Court held that a state lawsuit by an aircraft mechanic for retaliatory discharge in violation of Hawaii's Whistleblower Protection Act was not preempted by the Railway Labor Act.

In support of its position that Count II involves a minor dispute subject to the Railway Labor Act's non-judicial process, AAG argues that the profit sharing plan was maintained and transformed into a collective bargaining agreement when AA and the pilots union signed the October 20, 2016 letter confirming that the pilots would participate in the profit sharing plan. Contrary to the position of AAG, the letter does not demonstrate that AA and the union bargained for or negotiated for the pilots' participation. The undisputed testimony of Todd Jewett, AA's Managing Director of Labor Relations-Flight, verifies that no bargaining or negotiation took place with respect to the establishment of the profit sharing plan. The purpose of the plan is to reward eligible employees of AA and other airlines "for their efforts in helping achieve the strategic, financial and operating objectives of [AAG] . . . ." AAG simply allowed the pilots' participation in the plan it unilaterally established and can unilaterally terminate. AAG did so as a matter of grace and not of right but only after the union gave its approval for AA pilots to take part.

Regardless of the October 20, 2016 letter, AAG maintains that the profit sharing plan specifically incorporates by reference the definition of "eligible earnings" from the 401(k) plan which is part of a collective bargaining agreement. AAG contends that the court must determine what "eligible earnings" means in the profit sharing plan and the only way to do so is to interpret the language of the 401(k) plan, that is, to interpret a collective bargaining agreement. If there is a dispute over the interpretation of a collective bargaining agreement in the airline industry, it is a minor dispute under the Railway Labor Act and such interpretation is within the exclusive jurisdiction of the board of adjustment.

The profit sharing plan, as noted above, is not a collective bargaining agreement. It was established and written by AAG alone without input from the union and can be amended, modified, annulled, or terminated unilaterally by AAG without any input from the union. The court has before it the interpretation of a provision of the profit sharing plan which happens to incorporate by reference certain language from a 401(k) plan to which AAG is not a party. The reference to the 401(k) plan was AAG's own doing and was not required by any labor negotiation. Indeed, AAG was free to use whatever definition of eligible earnings that it wanted. It is the profit sharing plan defining eligible earnings for its own purpose which is the subject of

Count II and not the 401(k) plan in its capacity or character as part of any collective bargaining agreement. It is true that the 401(k) plan was negotiated as part of a collective bargaining agreement with AA, but it was not negotiated between AA and its employees or their union as part of the profit sharing plan. This is a significant distinction. Thus it is immaterial whether the parties agree or disagree as to the meaning of the words or provisions of the 401(k) plan as used in the profit sharing plan since the definition of eligible earnings for present purposes is independent of any collectively bargained agreement.

The profit sharing plan could just as easily have copied the exact words of the 401(k) plan to define "eligible earnings" without any mention of the 401(k) plan itself. Under that scenario, AAG concedes it would not have a meritorious argument that a minor dispute under the Railway Labor Act is at issue. The use of the shorter form of incorporation by reference rather than writing out at length the language of the 401(k) plan without specifically identifying the language's source does not in our view convert the profit sharing plan or any part of it into a collective bargaining agreement. Looking at the realities and putting substance over form, neither the profit sharing plan nor any of its provisions metamorphosed into a collectively bargained agreement under the Railway Labor Act.

Finally, there is another reason why AAG's motion to dismiss Count II fails. The Railway Labor Act concerns disputes "between an employee or groups of employees and a carrier or carriers by air." 45 U.S.C. § 184; In re Continental Airlines, Inc., 484 F.3d 173, 183 (3d Cir. 2007). The plaintiff is an employee of AA. The claim in Count II is not against AA, an air carrier. The only defendant sued in Count II is AAG, the parent of AA and the only party which established and controls the profit sharing plan. AAG is not an air carrier. In sum, we do not have here a dispute between an employee and air carrier growing out of a grievance, that is, arising out of the interpretation or application of their collective bargaining agreement. See § 184; Hawaiian Airlines, supra at 254. Therefore, the minor dispute provision of the Railway Labor Act is not applicable. Id.

Plaintiff is correct that Count II does not concern an interpretation of and is independent of any Collective Bargaining Agreement. Thus plaintiff's claim is not a minor dispute subject to the exclusive jurisdiction of a board of adjustment under the Railway Labor Act. The motion of defendant AAG to dismiss Count II of the Second Amended Complaint will be denied.