**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JAMES P. SCANLAN, on behalf of himself
and all others similarly situated

                            Plaintiff

-vs.-

AMERICAN AIRLINES GROUP, INC. and
AMERICAN AIRLINES, INC.

                            Defendants

**Case No. 18-4040**

**PLAINTIFF'S REPLY**
**MEMORANDUM IN SUPPORT OF**
**MOTION FOR CLASS**
**CERTIFICATION**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

   I.   Defendants Should Be Precluded From Making Arguments and Purported Facts That They Failed to In Response to Discovery ..........................................................................................3

   II.   The Classes Meet the Requirements of Rule 23(a). .................................................4

     A.   Defendants Concede Certain Prerequisites Are Met.......................................................4

     B.   There are Common Questions of Law and Fact................................................................4

     C.   Plaintiff's Claims and Defendants' Defenses Are Typical of the Classes. .......................7

        1.   Plaintiff's Claims are Typical of Both Pilots and Non-Pilots.......................................7

        2.   Defendants' Newly Concocted Equitable Estoppel Defense Does Not Make Plaintiffs' Claims Atypical (or Make Plaintiff Inadequate). ...................................................11

     D.   Plaintiff and his Counsel will Fairly and Adequately Represent the Class ....................14

        1.   Plaintiff Has More Than Sufficient Knowledge About the Case.................................14

        2.   There are no Intra-Class Conflicts .............................................................................16

        3.   There is No Evidence of Inter-Class Conflicts. .........................................................19

   III.   The Claims Meet the Requirements of Rule 23(b). .........................................22

     A.   The Claims Meet the Requirements of Rule 23(b)(1)....................................................22

        1.   The Requirements of Rule 23(b)(1)(B) Are Met *Precisely Because* An Adjudication of Plaintiff's Rights Will Have A Practical Impact Effect of Concluding or Impairing the Rights of Other Employees.................................................................................................22

        2.   The Circumstances for Rule 23(b)(1)(A) Also Apply Because of the Need for a Unitary Adjudication about the Plan and Leave Policies .......................................................24

     B.   The Claims Meet the Requirements of Rule 23(b)(2)....................................................24

     C.   The Claims Also Meet the Requirements of Rule 23(b)(3) ...........................................26

        1.   Common Issues Predominate Over Individual Ones....................................................26

        2.   Defendants Do Not Contest Superiority .....................................................................29

IV.   Alternatively, the Court can Modify the Class Definitions or Grant Leave for Plaintiff's Counsel to Seek Additional Representatives for Conflicted Subclasses ...................................29

CONCLUSION ........................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. Holiday Universal,*
249 F.R.D. 166 (E.D. Pa. 2008) ............................................................................11, 14, 16, 27

*Amos v. PPG Indus., Inc.,*
2:05-CV-70, 2018 WL 5259579 (S.D. Ohio Jan. 5, 2018) .......................................................11

*Beck v. Maximus, Inc.,*
477 F.3d 291 (3d Cir. 2006) ..............................................................................................11, 12

*Bradburn Parent/Teacher Store, Inc. v. 3M (Minnesota Mining and Mfg. Co.),*
CIV.A. 02-7676, 2004 WL 414047 (E.D. Pa. Mar. 1, 2004) .............................................17, 20

*Case v. Judd,*
No. 8:19-CV-607, 2020 WL 440069 (M.D. Fla. Jan. 28, 2020) ...............................................10

*Chedwick v. UPMC,*
263 F.R.D. 269 (W.D. Pa. 2009) .............................................................................................29

*Chesemore v. All. Holdings, Inc.,*
276 F.R.D. 506 (W.D. Wis. 2011) ...........................................................................................12

*Cottillion v. United Refining Co.,*
CIV.A. 09-140E, 2013 WL 5936368 (W.D. Pa. Nov. 5, 2013), *aff'd,* 781 F.3d 47 (3d Cir.
2015) ......................................................................................................................................11

*Dewey v. Volkswagen Aktiengesellschaft,*
681 F.3d 170 (3d Cir. 2012) ..............................................................................................22, 29

*Dotson v. Portfolio Recovery Assocs., LLC,*
No. CIV.A. 08-3744, 2009 WL 1559813 (E.D. Pa. June 3, 2009) ...........................................15

*Ferreras v. Am. Airlines, Inc.,*
946 F.3d 178 (3d Cir. 2019) ................................................................................................6, 27

*Feuer v. Cornerstone Hotels Corp.,*
No. 14 Civ. 5388, 2017 WL 3841841 (E.D.N.Y. Aug. 4, 2017), *report and recommendation
adopted,* 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017) .............................................................4

*Garrett v. Cir. City Stores, Inc.,*
449 F.3d 672 (5th Cir. 2006) ...................................................................................................13

*Hammer v. Vital Pharm., Inc.,*
CV-114124, 2015 WL 12844442 (D.N.J. Mar. 31, 2015) ........................................................14

*Hoefert v. Am. Airlines, Inc.*,
 4:18-CV-00466, 2020 WL 109653 (N.D. Tex. Jan. 9, 2020) ............................................28

*Hohider v. United Parcel Serv., Inc.*,
 574 F. 3d 169 (3d Cir. 2009) .................................................................................................6

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) .................................................................................................18

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*,
 140 F. Supp. 3d 339, 347 (D. Del. 2015), *aff'd in part, vacated in part on other grounds*, 679
 F. App'x 135 (3d Cir. 2017) ................................................................................................10

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
 795 F.3d 380 (3d Cir. 2015) ....................................................................................5, 17, 22

*In re FleetBoston Fin. Corp. Sec. Litig.*,
 253 F.R.D. 315 (D.N.J. 2008) .............................................................................................29

*In re Flonase Antitrust Litig.*,
 284 F.R.D. 207 (E.D. Pa. 2012) ..........................................................................................18

*In re Ins. Brokerage Antitrust Litig.*,
 579 F.3d 241 (3d Cir. 2009) ..................................................................................................4

*In re K-Dur Antitrust Litig.*,
 686 F.3d 197, 223 (3d Cir. 2012), *cert. granted, judgment vacated on other grounds sub
 nom. Merck & Co. v. Louisiana Wholesale Drug Co.*, 570 U.S. 913 (2013), *and reinstatement
 granted as to class certification,* 2013 WL 5180857 (3d Cir. Sept. 9, 2013)...............17, 18, 20

*In re Linerboard Antitrust Litig.*,
 203 F.R.D. 197 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002)...................................10, 15

*In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*,
 CIV.A. 05-1151, 2013 WL 396117 (D.N.J. Jan. 30, 2013) .....................................................14

*In re Mushroom Direct Purchaser Antitrust Litig.*,
 319 F.R.D. 158 (E.D. Pa. 2016) ........................................................................................9, 10

*In re Nat'l Football League Players Concussion Injury Litig.*,
 821 F.3d 410 (3d Cir. 2016) ...............................................................................................8, 14

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
 235 F.R.D. 127 (D. Me. 2006), *vacated on other grounds,* 522 F.3d 6 (1st Cir. 2008) ............25

*In re New Motor Vehicles Canadian Export,*
 MDL 1532, 2006 WL 623591 (D. Me. Mar. 10, 2006) ............................................................25

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016)..................................................................................22

*In re Processed Egg Prods. Antitrust Litig.*,
  312 F.R.D. 171 (E.D. Pa. 2015)...........................................................................15

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009).................................................................................11

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004).................................................................................17

*Jackson v. Equifax Info. Servs. LLC*,
  No. 13 Civ. 02382, 2014 WL 12862681 (N.D. Ga. Sept. 26, 2014) ...........................4

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
  571 F.3d 672 (7th Cir. 2009) ..........................................................................18, 29

*LePage's, Inc. v. 3M*,
  277 F.3d 365 (3d Cir. 2002).................................................................................18

*Lewis v. Curtis*,
  671 F.2d 779 (3d Cir. 1982), *aff'd*, 305 F.3d 145 (3d Cir. 2002) .......................14, 15

*Maez v. Springs Automotive Grp., LLC*,
  268 F.R.D. 391 (D. Colo. 2010) ...........................................................................12

*Mid-W. Paper Prods. Co. v. Cont'l Grp., Inc.*,
  596 F.2d 573 (3d Cir. 1979).................................................................................25

*Moore v. Comcast Corp.*,
  268 F.R.D. 530 (E.D. Pa. 2010)..........................................................................8, 9

*New Directions Treatment Servs. v. City of Reading*,
  490 F.3d 293 (3d Cir. 2007).....................................................................14, 20, 25

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999).............................................................................................23

*Paleteria La Michoacana, Inc. v. Productos Lacetos Tocumbo S.A. De C.V.*,
  79 F. Supp. 3d 60 (D.D.C. 2015) ..........................................................................12

*Pro v. Hertz Equip. Rental Corp.*,
  CIV A 06-CV-3830 DMC, 2008 WL 5218267 (D.N.J. Dec. 11, 2008)...................11

*Rexam v. United Steel Workers of Am.*,
  No. 03-2998, 2005 WL 1260914 (D. Minn. May 25, 2005)................................7, 29

*Richardson v. Hamilton Int'l Corp.*,
   62 F.R.D. 413 (E.D. Pa. 1974) ................................................................29

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir.1993) ...................................................................29

*Scanlan v. Am. Airlines Grp., Inc.*,
   384 F. Supp. 3d 520 (E.D. Pa. 2019) .....................................................20

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)..................................................................27

*Surowitz v. Hilton Hotels Corp.*,
   383 U.S. 363 (1966) ..............................................................................15

*Torres v. American Airlines*,
   No. 4:18-cv-00983 (N.D. Tex. May 22, 2020) .........................18, 25, 26

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ..........................................................................27

*U.S. v. Asmar*,
   827 F.2d 907 (3d Cir. 1987)..................................................................12

*United States v. Grayson*,
   166 F.2d 863 (2d Cir. 1948)....................................................................2

*Untimax Cement Mfg., Corp. v. CTS Cement Mfg. Corp.*,
   No. SA-CV-02578, 2011 WL 13152067 (C.D. Cal. Jan. 10, 2011) ..........4

*Valido-Shade v. Wyeth LLC*,
   No. CIV.A. 12-20003, 2014 WL 4794967 (E.D. Pa. Sept. 26, 2014) ........2

*Valley Drug Co. v. Geneva Pharms., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) .............................................................18

*Victory v. Berks County*,
   CV-18-5170, 2019 WL 2950171 (E.D. Pa. July 8, 2019) ......................20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...........................................................................5, 24

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ..............................................................25

*Wechsler v. Hunt Health Sys., Ltd.*,
   No. 94 Civ. 8294, 1999 WL 672902 (S.D.N.Y. Aug. 27, 1999) ..............4

*Williams v. Jani-King of Phila. Inc.,*
    837 F.3d 314 (3d Cir. 2016)..................................................................................27

*Wysocki v. IBM,*
    607 F.3d 1102 (6th Cir. 2010) ...........................................................................13

*Yeager's Fuel v. Pa. Power & Light Co.,*
    162 F.R.D. 471(E.D. Pa.1995)............................................................................18

*Yingling v. eBay, Inc.,*
    No. 09 Civ. 01733, 2010 WL 373868 (N.D. Cal. Jan. 29, 2010) ...............................4

**Statutes**

38 U.S.C. § 4302(b).........................................................................................13

**Other Authorities**

2 Newberg on Class Actions § 4:28 (5th ed.)...............................................................25

20 C.F.R. § 1002.150(b).........................................................................8, 10, 28

1966 Advisory Committee Notes on Rule 23(b)(1)(A)...........................................23, 24

Fed. R. Civ. P. Rule 23(d)(1)(B), (B)(iii), 23(e)(1), & 23(e)(2)...................................24

Louisell & Hazard, *Pleading and Procedure; State and Federal* 719 (1962) .........................24

## INDEX OF EXHIBITS

Declaration of Colin M. Downes ("Downes Decl.") with the following attachments:

**Exhibit 1**: Email of R. Joseph Barton to Tristan Morales dated June 3, 2020.

**Exhibit 2**: Excerpts of the Transcript of the Deposition of Todd A. Jewett taken February 15, 2019, at the offices of Kelly Hart & Hallman, 201 Main St., Ste. 2500, Fort Worth, Texas.

**Exhibit 3**: Excerpts of the Transcript of the Deposition of James P. Scanlan, taken March 10, 2020, at the offices of The Garner Firm, Ltd., 1515 Market St., Philadelphia, Pennsylvania.

**Exhibit 4**: Excerpts of the Transcript of the Rule 30(b)(6) Deposition of American Airlines, Inc. by its designee Todd F. Jewett taken February 13, 2020 at the offices of Kelly Hart & Hallman, 201 Main St., Ste. 2500, Fort Worth, Texas ("AA Dep. (Jewett)")

**Exhibit 5**: Excerpts of the Transcript of the Rule 30(b)(6) Deposition of American Airlines Group, Inc. by its designee Todd F. Jewett taken February 13, 2020 at the offices of Kelly Hart & Hallman, 201 Main St., Ste. 2500, Fort Worth, Texas ("AAG Dep. (Jewett)")

**Exhibit 6**: Excerpt of American Airlines Group, Inc. Form 10-Q filed April 30, 2020, and retrieved at https://americanairlines.gcs-web.com/static-files/aa139a6e-987e-405c-912c-655b3662a641.

**Exhibit 7**: Excerpt of Transcript of Oral Argument on Motion to Dismiss before the Honorable Harvey Bartle III, dated June 4, 2019.

Declaration of Christopher Alter ("Alter Decl.")

## INTRODUCTION

The claims in this case challenge the uniform employment practices at American Airlines Group ("AAG") and American Airlines, Inc. that fail to provide pay or profit sharing credit when employees take military leave, despite providing paid leave and profit sharing credit for other comparable leave. Defendants' opposition does not appear to challenge certification of Count II (a contract-based claim regarding the Profit Sharing Plan) on behalf of a class of American Pilots. For all members of the Profit Sharing Class and the Paid Leave Classes before 2020, short term military leave was unpaid and was not credited for the Profit Sharing Plan. Yet, across the AAG affiliates and various work groups, employees were provided with 3 days of paid bereavement leave and unlimited paid leave for jury duty and those leaves were credited for profit sharing. As all members of all three classes were subject to this practice, the members of the classes have claims based upon identical legal theories, and the class members would all need to establish the same facts and legal conclusions to prevail at trial.

Defendants' primary argument is based on newly concocted speculative conflicts and irrelevant distinctions between employees. Defendants argue that crediting employees with profit sharing for short term military leave might, *in the future,* disadvantage employees who take less military leave. But the Third Circuit has held that class certification is proper where all class members share a financial interest in establishing liability and damages notwithstanding such contingent, hypothetical conflicts. Defendants identify differences in scheduling leave and the CBAs that apply to class members, but they fail to identify any difference relevant to resolving the key, class-wide questions of whether short term unpaid military leave is comparable to the paid leaves under USERRA. When Defendants distractions are put aside, this case remains a challenge to a uniform, classwide employment practices that meets the requirements of Rule 23.

1

## RESPONSE TO DEFENDANTS' "FACTUAL BACKGROUND"

Defendants' "Factual Background" does not contest the facts set forth in Plaintiff's opening brief and is remarkably light on facts. *Compare* Opp. at 3-6 *with* Pl. Mem. at 2-4. That section addresses only two subjects: first, after the filing of Plaintiff's Motion for Class Certification, American Airlines entered into new collective bargaining agreements with unions representing certain work groups to provide up to 14 days (80 hours) of paid military leave;[1] second, Plaintiff's definition of short-term military leave—leave of 16 days or fewer in length.

Defendants' counsel informed Plaintiff's counsel on May 27, 2020, that American had entered into "five new collective bargaining agreements" that "became effective after Plaintiff filed his class certification motion." Downes Decl. Ex. 1 at 2. Each of the new CBAs provides covered employees with up to 80 hours (i.e. 14 days) of paid military leave per year going forward, but do not compensate covered employees for prior leave. *Id.*.[2] As evidenced by Defendants' counsel's email, these new CBAs were a misguided attempt to exclude workgroups other than pilots and flight attendants from the Class definitions. *Id.* While Plaintiff's class definition excluded three other workgroups that had *historically* received paid military leave, Defendants misunderstand the reason for the exclusion. Opp. at 4; Pl's Mem. at 2 n. 1.

---

[1] Defendants rely exclusively on AAG's Form 10-K for work groups and number of employees subject to different CBAs. Opp. at 3 n. 1, 5 n. 3. These statements by counsel are not admissible evidence. *Valido-Shade v. Wyeth LLC*, No. CIV.A. 12-20003, 2014 WL 4794967, at *2 (E.D. Pa. Sept. 26, 2014) (Bartle, J.). While Plaintiff's use of AAG's statements in the 10-K is admissible as the admission of a party opponent under Fed. R. Evid. 801(d)(2), no such exception applies for Defendants to rely on the statements in the 10-K for the truth of the matter asserted. The public records exception (FRE 803(8)) does not apply because, as Judge Learned Hand explained, while SEC filings are "official" in the sense they are filed "in obedience to a regulation of the [SEC] … not all documents required to be filed by law are competent evidence of all that they record." *United States v. Grayson*, 166 F.2d 863, 868 (2d Cir. 1948).

[2] *See* ECF No. 98-6 at AA-SCANLAN-23303; ECF No. 98-7 at AA-SCANLAN-22783; ECF No. 98-8 at AA-SCANLAN-23085; ECF No. 98-9 at AA-SCANLAN-22931-22932; ECF No. 98-10 at AA-SCANLAN-23439

Employees in these workgroups that had *historically* received up to 14 days of military leave were unlikely to have had significant unpaid short-term leave and therefore had minimal claims for monetary relief. *Id*. Unlike the groups who have *historically* been paid for military leave, there is no reason to exclude these other groups from the Classes (as they have claims for monetary relief) and may have claims for injunctive.

Defendants assert that definition of "short-term military leave" as "a military leave of 16 days or less" is a "fictional framework of [Plaintiff's] creation." Opp. at 4 n. 2. But their own representative testified that the 16 day period marks the point at which at least pilots (if not other employees) are "removed from active payroll." Jewett Dep. 92:24-93:10. And this is consistent with Scanlan's own understanding based on his 20 years of experience. Scanlan Dep. at 12:21-13:11 ("Q: When you say 'short-term military leave' what are you referring to? A; American Airlines designates anything of 16 days or less"). Thus, this distinction is a creature of American's own payroll and employment practices.

## ARGUMENT

### I.     Defendants Should Be Precluded From Making Arguments and Purported Facts That They Failed to In Response to Discovery

Half of Defendants' brief opposes class certification based on "class conflicts," Plaintiff Scanlan's allegedly inadequate knowledge, and a purported defense unique to pilots. Opp. at 1-2, 6-13, 14-15, 20-22. Although Plaintiff issued an interrogatory on August 22, 2019 seeking the basis for opposition to class certification and Defendants amended its responses to that set of interrogatories three times (as recently as February 19, 2020), Defendants never disclosed these arguments. Downes Decl. ¶ 2 & Dkt. No. 89-2 at No. 5. Contention interrogatories on class

certification issues are proper,[3] and when a party fails to disclose a theory in response to a contention interrogatory, "courts estop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses." *Wechsler v. Hunt Health Sys., Ltd.*, No. 94 Civ. 8294, 1999 WL 672902, at *1-4 (S.D.N.Y. Aug. 27, 1999) (estopping party from asserting theory why contract was not breached where not disclosed in response to a contention interrogatory); *Feuer v. Cornerstone Hotels Corp.*, No. 14 Civ. 5388, 2017 WL 3841841, at *9 (E.D.N.Y. Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017) (barring employer from arguing law did not apply when not in an interrogatory response); *Untimax Cement Mfg., Corp. v. CTS Cement Mfg. Corp.*, No. SA-CV-02578, 2011 WL 13152067, at *8 (C.D. Cal. Jan. 10, 2011) (finding defense waived when not disclosed in pleading or response to contention interrogatories). Arguments about the appropriateness of certification can be waived. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 260 (3d Cir. 2009) (finding that objector waived arguments about the "certification of the settlement class"). Had Defendants disclosed these arguments, Plaintiff would have sought discovery on these issues and made additional arguments about why documents and data was relevant in the motion to compel that this Court denied. *See* ECF No. 73. And Defendants now make arguments for which Plaintiffs do not have data to rebut. *Infra* II.D., III.B. & n.10.

## II.     The Classes Meet the Requirements of Rule 23(a).

### A.      Defendants Concede Certain Prerequisites Are Met.

Defendants do not contest that the members of all three Classes are ascertainable or that. the members of all three Classes are so numerous that joinder is impracticable. Pl's Mem. at 5-6.

---

[3] *Yingling v. eBay, Inc.*, No. 09 Civ. 01733, 2010 WL 373868, at *3 (N.D. Cal. Jan. 29, 2010) (finding "contention interrogatory is proper" about grounds for opposing certification); *Jackson v. Equifax Info. Servs. LLC*, No. 13 Civ. 02382, 2014 WL 12862681, at *4 (N.D. Ga. Sept. 26, 2014) (same).

Defendants do not contest the adequacy of Plaintiff's counsel. *Id.* at 14-15. As to Count II, Defendants concede that there are common issues under Rule 23(a)(2) and Plaintiff's claims under Count II are typical of the American Pilot Class. *See* Opp. at 15-22, 24.

### B.    There are Common Questions of Law and Fact

Defendants concede that "the proof required to resolve the American *pilots'* claims will be common" (i.e. for American Pilot Class and Count II), but claim there is no common issue of law or fact for the Paid Leave Class or Profit Sharing Classes because of the "other employee groups." Opp. at 24. Defendants argue there are no common questions because there is no single company-wide policies "governing military, jury duty, or bereavement leave." *Id.* at 23.

Defendants argue that the mere existence of multiple CBAs means that Counts I and III suffer from the same deficiency as in *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 355 (2011), where the company essentially had "a policy *against having* uniform employment practices." Opp. at 23. This ignores that the Supreme Court recognized that a "uniform employment practice" would satisfy Rule 23(a)(2), the only policy identified in *Wal-Mart* was one allowing discretion by local supervisors, and plaintiffs failed to show "a common mode of exercising discretion that pervade[d] the entire company." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.,* 795 F.3d at 399 (distinguishing *Wal-Mart* and affirming certification). In a challenge to mortgage lending practices, involving loan documents that "differ[ed] markedly on matters including interest rates, the existence/amount of discount fees, the title services provided, the amounts charged and prepayment features," the Third Circuit found that commonality was satisfied. *Id.* at 398. While the specific documents differed in non-material ways, commonality was met because "the class was subjected to the same kind of illegal conduct by the same entities, and … class members were harmed in the same way, albeit to potentially different extents." *Id.* at 399. The same is true here.

While work groups composing the Profit Sharing Class and Paid Leave Class are governed by different CBAs and company policy documents, those CBAs and policies are *materially uniform* across the work groups with respect to the relevant terms under which military, bereavement, and jury duty leave are paid. Pl's Mem. at 7-8. Both a comparison of the relevant provisions in the CBAs and policy documents and the testimony of Todd Jewett, the Rule 30(b)(6) representative for both American and AAG support this conclusion. *See* ECF Nos. 82-10, 82-11. Short-term military leave is unpaid for all the members of the Classes. AA Dep. (Jewett) at 102-103; AAG Dep. (Jewett) at 25-26, 31. Bereavement leave is paid up to three days. AA Dep. (Jewett ) at 114. Jury duty is paid at least in the amount of the difference between regular wages and court pay. AA Dep. (Jewett ) at 103-104, 108; AAG Dep. (Jewett) at 25-26, 31. This substantial uniformity on the relevant provisions allow liability issues to be resolved on a common basis for the Profit Sharing Class and Paid Leave Class. Pl. Mem at 8-9. Defendants do not identify any relevant "work-group-specific inquiries" that the Court would "have to undertake" that would drive resolution of this case. Opp. at 23-24.

Defendants cite *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178 (3d Cir. 2019), but do not even address Plaintiff's explanation why that case was distinguishable – commonality was not met because there was no evidence that a policy that "may have existed for *one group of employees*" applied to other employee groups. *Id.* at 186. *Compare* Opp. at 23 *with* Pl. Mem. at 10. Defendants also fail to address the testimony of their own Rule 30(b)(6) representative *acknowledging* that the relevant practices span airlines and employee groups. *Id.* (citing AA Dep. (Jewett ) at 102-104, 108, 114; AAG Dep. (Jewett) at 25-26, 31). Nor does *Hohider v. United Parcel Serv., Inc.*, 574 F. 3d 169 (3d Cir. 2009) suggest that policies contained in multiple documents undermine commonality. Rather, commonality was not met *in Hohider* because an

element of the ADA claim – whether someone qualified as disabled -- was intrinsically

individualized. *Id.* at 186. Finally, in *Rexam v. United Steel Workers of Am.*, No. 03-2998, 2005

WL 1260914 (D. Minn. May 25, 2005) an *employer* sought to certify a *defendant class of*

*retirees* seeking a declaration whether welfare benefits in 11 different CBAs had vested. *Id.* at

*2. Determining that issue required examining (1) the terms of each plan (i.e. "myriad 'insurance

durational clauses,' 'benefits coordination clauses' and 'extent and limit of coverage clauses'")

and also (2) "extrinsic evidence such as bargaining history, extrinsic documents and course of

dealing" as to each plan. *Id.* at *2, *5. As this required "eleven different determinations,"

commonality did not exist for a single class, but did exist for subclasses. *Id.* at *5, *6. The

*Rexam* court distinguished cases where "the issue stems from a common right shared by all class

members that happens to be articulated in separate contracts." *Id.* at *5. By contrast, here, the

claims do not require individualized analysis and this is a case of a "common right shared by all

class members that happens to be articulated in separate contracts." *Id.*

### C. Plaintiff's Claims and Defendants' Defenses Are Typical of the Classes.

#### 1. Plaintiff's Claims are Typical of Both Pilots and Non-Pilots.

Defendants argue that Plaintiff's claims are not typical of the claims of employees who

are not pilots. Opp. at 16-20. As Defendants do not claim that Plaintiff's claims are atypical of

other pilots, this argument does not apply to Count II or certifying of a class of pilots for any

claim. *See id.* Defendants' claim of atypicality is premised on pilots taking more military leave

and the scheduling of pilots' leave. *Id.* None of these facts are relevant to issues to determine

comparability or any issue underlying liability in the case. *See* Pl. Mem. at 7. As a result, these

arguments misunderstand both the typicality standard and the comparability analysis.

Defendants ignore that "cases challenging the same unlawful conduct which affects both

the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective

of the varying fact patterns underlying the individual claims." Pl. Mem. at 11 (quoting *Moore v. Comcast Corp.,* 268 F.R.D. 530, 535 (E.D. Pa. 2010) (Bartle, J.)). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Id.* (quoting *In re Nat'l Football League Players Concussion Injury Litig.,,* 821 F.3d 410 428 (3d Cir. 2016)). In *Moore*, this Court found typicality satisfied where a plaintiff had signed a release agreement covering part of the proposed class period because that might her losses sustained during the period subject to the release, this was still principally a damages calculation issue. *Moore*, 268 F.R.D. at 537. Both Count I and Count III implicate the key question of whether short-term military leave is comparable to either of jury duty leave or bereavement leave. Pl. Mem. at 12. The relevant considerations are duration of the leave" (the "most significant factor"), "the purpose of the leave and the ability of the employee to choose when to take the leave." 20 C.F.R. § 1002.150(b). None of the issues that Defendants identify are relevant to the claims, and therefore they do not impact typicality.

### a.   The Scheduling of Leaves Does Not Create Any Relevant Differences That Make Plaintiff's Claims Atypical

Defendants observe that pilots use "a preferential bidding system… that is designed to *schedule around* planned absences…" for jury duty, military leave, or bereavement leave. Opp. at 16 (emphasis in original). But Defendants do not explain how this scheduling system creates a *relevant* difference between pilots and other employees in the Classes or explain how it will impact the comparability analysis beyond baldly asserting that it "necessarily" will. Opp. at 17. A scheduling system does not address duration, purpose, or voluntariness of the leave. 20 C.F.R. § 1002.150(b) (identifying relevant factors in comparability analysis). American's bidding system may decrease the amount or frequency with which American pilots actually take short-

term military leave for which they were not paid or credited because for scheduled absences, a pilot "*does not take leave from American*" at all. Opp. at 17 (emphasis in original). This might affect the amount of the monetary remedy for pilots, but such issues, as in *Moore*, do not undermine typicality.

Defendants also argue that bereavement leave for pilots is unique because the pilots' CBA lacks express provision for bereavement leave, and such leave in the discretion of regional chief pilots. Opp. at 18-19. But this mischaracterizes the policy. Mr. Jewett testified that where a CBA is silent on a particular issue, a kind of leave, for example, "it falls under company policy"—that is, the policy manual that generally applies to non-unionized employees. Jewett Dep. at 52:25-53:12. Indeed, he was quite specific: one of the reasons the policy manual specifically provides for bereavement leave is "to cover... employees covered by Collective Bargaining Agreements that don't have such provisions." *Id.* at 52:2-52:20. And the policy manual provides for three days of paid leave for bereavement, the same as every other Class member receives. AA Dep. (Jewett) at 128:7-13. The portion of Mr. Jewett's testimony cited by Defendants, *see* Opp. at 18, Mr. Jewett described chief pilots exercising discretion not over bereavement leave but over "an EO, or emergency off" in circumstances where a pilot wished to attend a memorial service that their bereavement leave *would not* cover. Jewett Dep. at 92:4-20. Such emergency offs are governed by Section 11 of the CBA. But by the testimony of Mr. Jewett, a pilot's entitlement to bereavement leave is governed by the policy manual, under materially the same terms as other employees.

### b. The Amount of Military Leave Taken by Pilots Does Not Make Plaintiff's Claims Atypical

Defendants argue that Plaintiff's claim is atypical of non-pilots, because pilots take more military leave than non-pilots. Opp. at 19-20. But "[t]ypicality refers to the nature of the claims

of the representative, not the individual characteristics of the plaintiff." *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 187 (E.D. Pa. 2016). Courts in this Circuit repeatedly reject arguments that differences in the amount or frequency of claims makes a plaintiff atypical. *E.g. In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, 140 F. Supp. 3d 339, 347 (D. Del. 2015) (finding the claims of large purchasers in antitrust class "arise out of the same course of alleged conduct that, if true, would have similarly injured each of them"), *aff'd in part, vacated in part on other grounds*, 679 F. App'x 135 (3d Cir. 2017); *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207, 210 (E.D. Pa. 2001) (finding differences in size and timing of purchases did not defeat typicality), *aff'd*, 305 F.3d 145 (3d Cir. 2002). Defendants do not explain how the frequency of military leave affects any factor relevant to determining comparability of leaves. *See* Opp. at 19-20. The relevant factor is *duration of military leave compared to the comparable leave.* 20 C.F.R. § 1002.150(b). In the cases cited by Defendants, the issue concerned *the duration* (i.e. length) of leave, not the frequency. *See Hoefort*, 2020 WL 109653, *12; *Case v. Judd*, No. 8:19-CV-607, 2020 WL 440069, at *7 (M.D. Fla. Jan. 28, 2020). When the relevant factor, duration, is considered, there is virtually no difference in the average length of short-term military leave taken by American pilots versus flight attendants: during the paid leave class period the average duration of pilot short term military leave was 3.06 days, and the average length of such leave taken by flight attendants was 3.46 days. Alter Decl. ¶ 6-7. While pilots may take more military leave than non-pilots and potentially be entitled to more benefits, Plaintiff's claims are typical because the claims themselves are based on the same legal theory and arise from the same course of conduct as absent class members.

2.       **Defendants' Newly Concocted Equitable Estoppel Defense Does Not Make Plaintiffs' Claims Atypical (or Make Plaintiff Inadequate).**

Defendants argue that their recently asserted defense of equitable estoppel makes Scanlan atypical of class members other than American Airlines pilots. Def. Mem. at 20-21. Not only was this defense only asserted *after* Plaintiffs' motion for class certification was filed, but as this defense applies at most to Count I and III, this defense does not precludes certification of an American Pilot Class for any of the Counts. More importantly, Defendants have not established that this newly concocted defense precludes certification of any of the claims.

, as Defendants' own authority recognizes, merely asserting an affirmative defense does not defeat typicality (or adequacy). *Allen v. Holiday Universal,* 249 F.R.D. 166, 184 (E.D. Pa. 2008) (finding affirmative defense did not defeat typicality). To defeat class certification, the defense must be "*both* inapplicable to many members of the class *and* likely to become a major focus of the litigation[.]" Pl. Mem. at 12-13 (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009) (emphasis added)). The burden is on "defendant[s to] show some degree of likelihood [that] a unique defense will play a significant role *at trial*." *Id.* at 13 (quoting *Beck v. Maximus, Inc.*, 477 F.3d 291, 300 (3d Cir. 2006)) (emphasis added); *Pro v. Hertz Equip. Rental Corp.,* CIV A 06-CV-3830 DMC, 2008 WL 5218267, at *3 (D.N.J. Dec. 11, 2008) (finding defendant filed to meet its burden on this issue). As Defendants own case explains, a defense that applies to a significant portion of the class is not a unique defense. *Allen,* 249 F.R.D. at 184; *Amos v. PPG Indus., Inc.,* 2:05-CV-70, 2018 WL 5259579, at *9 (S.D. Ohio Jan. 5, 2018) (finding defense applicable to one-third of the class did not undermine typicality). Moreover, a defense that will be resolved on summary judgment, it is not an issue that will detract from trial. *Id.* (finding the defense was susceptible to summary judgment and "fall out of the litigation"); *Cottillion v. United Refining Co.,* CIV.A. 09-140E, 2013 WL 5936368, at *3

(W.D. Pa. Nov. 5, 2013) (reaching similar conclusion), *aff'd,* 781 F.3d 47 (3d Cir. 2015). Even when a defense must be resolved at trial, the defense undermines typicality only if it will "so overwhelm the trial of this case or so confuse the issues that the claims common to the class will be obscured or shortchanged." *Maez v. Springs Automotive Grp., LLC,* 268 F.R.D. 391, 396 (D. Colo. 2010) (relying on *Beck,* finding typicality despite "unique defense" that would be issue at trial); *see Chesemore v. All. Holdings, Inc.,* 276 F.R.D. 506, 513 (W.D. Wis. 2011) (finding defense that applied to some class members would be nothing "more than a side issue"). Here, this defense applies to all American pilots, which constitute the *majority* of the Paid Leave Class and the Profit Sharing Class. As the defense is based solely on collective bargaining that affects all pilots, this is an issue that will be likely resolved on summary judgment.

Second, Defendants ignore that a "unique defense" that "has no merit … will not preclude class certification." Pl. Mem. at 13 (quoting *Beck*, 457 F.3d at 300). American asserts that it "has a strong [equitable] estoppel defense," to the but does not even recite the elements of equitable estoppel in this *Circuit*. Def. Mem. at 21-22 (citing only *Paleteria La Michoacana, Inc. v. Productos Lacetos Tocumbo S.A. De C.V.*, 79 F. Supp. 3d 60, 81 (D.D.C. 2015)). The Third Circuit has held that "to succeed on a traditional estoppel defense the litigant must prove (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment." *U.S. v. Asmar,* 827 F.2d 907, 912 (3d Cir. 1987). To demonstrate reliance, "the party claiming estoppel must have relied on its adversary's conduct in 'such a manner as to change his position for the worse.'" *Id.* Even assuming that an equitable estoppel defense applies to a USERRA claim, Defendants nowhere identify *any misrepresentation* by the APA (the pilots union) nor how American changes its position for the worse in agreeing not to provide paid military leave. *See* Opp. at 22; Answer (ECF No. 52) at 41-43. In response to discovery regarding its affirmative

defenses Defendants did not identify *any* defense that would preclude class certification nor did they mention "equitable estoppel." ECF No 82-9, Ex. 7 at No. 5. But even if American somehow relied on APA's willingness to "trade away" contractually bargained "paid military leave" under the pre-2013 contract, the APA cannot bargained away statutory rights to paid leave required under USERRA.

Finally, Defendants' assertion of equitable estoppel defense to based on APA bargaining would be precluded by USERRA. USERRA § 4302(b), supersedes any agreement that "reduces, limits, or eliminates in any manner any right or benefit provided by this chapter." 38 U.S.C. § 4302(b); *Garrett v. Cir. City Stores, Inc.,* 449 F.3d 672, 680 (5th Cir. 2006) (explaining that Congress intended § 4302(b) "to prohibit the limiting of USERRA's substantive rights by union contracts and collective bargaining agreements"). As the Fifth Circuit explained, Section 4302(b) reaffirmed the long line of caselaw under USERRA's predecessors that "prevented intrusions into the substantive rights of veterans by the operation of laws, contracts, or plans to which the employee was not or could not be a party." *Id.* at n.10 (citing numerous cases). Defendants cite no authority where a court applied equitable estoppel to bar a USERRA claim.[4] Instead, Defendants suggest that *Wysocki v. IBM*, 607 F.3d 1102 (6th Cir. 2010) supports the proposition that "*equitable estoppel"* may be a valid defense to a USERRA claim; however, the *Wysoki* court addressed whether an individual employee agreement could release USERRA claims, which were specifically included in a signed release, in exchange for a monetary

---

[4] Defendants assert that USERRA's legislative history "confirms that Congress intended equitable defenses to remain available." Opp. at 22 n.10. However, the citation to the Senate report is erroneous, and the House report only addresses how USERRA provisions preempt or limit the application of the doctrines of waiver and laches. The other cases cited in Defendants' footnote address the doctrine of latches defense. *Id.* But Defendants' Interrogatory response avers that they have no "facts supporting the affirmative defense that the claims are barred in whole or in part by the doctrine of laches." ECF No. 82-9, Ex. 7 at No. 3.

payment that "were more beneficial then the rights that he waived." *Id.* at 1107.

### D.   Plaintiff and his Counsel will Fairly and Adequately Represent the Class

Defendants assert that Plaintiff bears the burden to prove his adequacy and lack of

conflict. Opp. at 8. But as Defendants' own case recognizes, the longstanding rule in this Circuit

is that "[t]he burden is on the defendant to prove that the representative plaintiffs will not

adequately represent the class." *Allen*, 249 F.R.D. at 181 (citing *Lewis v. Curtis,* 671 F.2d 779,

788-89 (3d Cir. 1982) ("The burden is on the defendant to demonstrate that the representation

will be inadequate."); *see Hammer v. Vital Pharm., Inc.,* CV-114124, 2015 WL 12844442, at *6

(D.N.J. Mar. 31, 2015) (finding defendants did not meet their burden to that plaintiff was

inadequate); *In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, CIV.A. 05-1151, 2013

WL 396117, at *9 (D.N.J. Jan. 30, 2013) (finding defendants failed to carry their burden to show

a conflict). Defendants criticize Plaintiff for not sufficiently addressing conflicts in his opening

brief. *Id.* at 8. But they ignore that their Interrogatory Response did not suggest that they would

contest Rule 23(a)(4) let alone mention any conflict. ECF No. 82-9 at No. 5. Regardless of the

burden, Plaintiff meets the requirements of Rule 23(a)(4). Pl. Mem. at 13.

### 1.   Plaintiff Has More Than Sufficient Knowledge About the Case

Defendants contend that Scanlan cannot be an adequate class representative for work

groups other than American pilots because he has never worked for those groups or airlines and

does not have any personal knowledge about their leave policies or practices. Opp. at 15-16. Yet,

this ignores that "[a] class representative needs only to possess "a minimal degree of knowledge

necessary to meet the adequacy standard." Pl. Mem. at 13 (quoting *New Directions Treatment*

*Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)); *see In re Nat'l Football League*

*Players Concussion Injury Litig.*, 821 F.3d at 430 (explaining a class representative needs only

"a minimal degree of knowledge" of knowledge about the litigation).

14

Defendants erroneously assert that a plaintiff needs to have actual knowledge about the underlying facts. Opp. at 15. But "[t]he adequacy-of-representation test is not concerned whether plaintiff personally derived the information pleaded in the complaint." *In re Linerboard Antitrust Litig.,* 203 F.R.D. 197, 213 (E.D. Pa. 2001) (quoting *Lewis v. Curtis,* 671 F.2d 779, 789 (3d Cir.1982) (finding plaintiff who "displayed a complete ignorance of facts concerning the transaction that he was challenging" was adequate representative), *aff'd,* 305 F.3d 145 (3d Cir. 2002) (affirming certification). Rather, a plaintiff only needs "a basic understanding of the allegations made in the case, and what law is alleged to have been violated, and that he would be willing to contest an action by his attorneys with which he did not agree." *Id.; In re Processed Egg Prods. Antitrust Litig.,* 312 F.R.D. 171, 181 (E.D. Pa. 2015) (finding that plaintiff who reviewed the complaint, understood the general nature of the allegations, and participated in the litigation by reviewing pleadings and discovery, searching his own files, providing information about the case, meeting with counsel, and sitting for depositions had "sufficient knowledge").

In the only case cited by Defendants on adequate knowledge, the plaintiff suffered from "cognitive impairments," including memory loss and an inability to recall names and faces. *Dotson v. Portfolio Recovery Assocs.*, LLC, No. CIV.A. 08-3744, 2009 WL 1559813, at *4 (E.D. Pa. June 3, 2009). His "deposition testimony indicated a "lack of involvement or understanding of the claims asserted on his behalf by his attorney." *Id*. at 5. Even one of Defendants' own case cited elsewhere recognized that "the Supreme Court has held that a class representative's lack of knowledge about his case does not make him an inadequate representative." *Allen*, 249 F.R.D. at 185 (citing *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 366 (1966) (finding plaintiff adequate although "she did not understand the complaint, could not explain statements contained in it, and knew little about either the lawsuit or the alleged misconduct on the part of the defendant)). The

*Allen* plaintiff was adequate although he "has no real knowledge of the case," had not read any pleadings, did not know the status of the case and never been to court. *Allen,* 249 F.R.D. at 184.

Mr. Scanlan has been closely involved in this litigation, including by reviewing and approving the Complaints, attending the hearing on Defendants' motion to dismiss, producing documents, responding to interrogatories, and assisting with the investigation of the claims and the inquiries of his counsel. Scanlan Decl. (ECF No. 82-19) ¶¶ 7-12. He sat for approximately five hours of deposition, and his testimony indicates he understands the gravamen of the claims:

> Q: What is your legal theory in the present lawsuit regarding what American is obligated to pay for periods of military service?
> ***
> THE WITNESS: Okay. My understanding is military leave should be afforded the most favorable treatment under the law. So if there are provisions in another leave policy for that same employee group, that military leave should be afforded those same provisions.
>
> Q. Does your present lawsuit seek to have American modify its policy with respect to military leave and whether it's paid or unpaid?
> A. Yes.
> Q. And what is the proposed modification that you propose that American Airlines adopt?
> A. That American would adopt a policy that's at least as favorable as its current policies for other types of leave.

Scanlan Dep. 171:15-172:15. Mr. Scanlan's testimony exhibits a clear and sophisticated understanding of the claims in this case. *Id.,see also id.* at 173:3-177:12, 198:16-199:11. Thus, Plaintiff has more than demonstrated his ability to serve as a class representative.

### 2.     There are no Intra-Class Conflicts

Defendants argue that the Profit Sharing Class and Paid Leave Class suffer from intra-class conflicts because increasing the Eligible Earnings of class members who took military leave may decrease the *future* profit sharing awards (if any are ever again awarded) if those class members remain at a American and retire from the military or take only minimal military leave. Opp. at 9-10. Despite the current decline in airline traffic and revenues, the announcement of

likely layoffs or furloughs, and unlikelihood that AAG will make a profit anytime soon,

Defendants speculate about the prospect of future profit sharing awards and general statement of

the longevity of its employees. *Id.* at 9. But Defendants do not suggest the existence of any

conflicts as to retrospective monetary relief compensating the Classes for benefits already

accrued and owed to them by Defendants. *See id.* ("[T]he putative [Profit Sharing] class member

will be made better off in 2016 because her eligible earnings for that year will increase").[5] Thus,

Plaintiff and the members of all three classes share a common interest in recovering the benefits

wrongfully withheld from them.

In the Third Circuit, when all the class members share "the same financial incentive for

purposes of the litigation—*i.e.* proving that they were [injured] and recovering damages based on

that [injury]," there is no conflict. *In re K-Dur Antitrust Litig.*, 686 F.3d 197, 223 (3d Cir. 2012),

*cert. granted, judgment vacated on other grounds sub nom. Merck & Co. v. Louisiana Wholesale

Drug Co.*, 570 U.S. 913 (2013), *and reinstatement granted as to class certification,* 2013 WL

5180857 (3d Cir. Sept. 9, 2013); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d

Cir. 2004) (holding no conflict where one group's recovery did not prejudice another's or reduce

the size of aggregate recovery). When the class is pursuing damages under the same statutes and

same theories of liability, and differences among them do not pit one groups interest against one

another in the litigation, there is no conflict. *In re Cmty. Bank.,* 795 F.3d at 394. By contrast, in

the cases cited by Defendants, the plaintiff had a financial interest to choose a particular strategy

that would maximum his own financial recovery, but minimize the financial recovery of certain

other class members *in the litigation. Bradburn Parent/Teacher Store, Inc. v. 3M (Minnesota*

---

[5] As 2016 is only an example, even that hypothetical class member would benefit from the
litigation. The relief sought by the Complaint only seeks additional payments from Defendants,
not a re-allocation of prior awards.

*Mining and Mfg. Co.),* CIV.A. 02-7676, 2004 WL 414047, at *3-*4 (E.D. Pa. Mar. 1, 2004)

(citing *Yeager's Fuel v. Pennsylvania Power & Light Co.,* 162 F.R.D. 471, 478 (E.D. Pa.1995)

and discussing *LePage's, Inc. v. 3M*, 277 F.3d 365 (3d Cir. 2002)). As Plaintiff's interest is to

maximum the value of all claims, there is no conflict in the amount of recovery.

The primary case cited by Defendants in support of its intra-class conflict theory, is an

out-of-circuit, unpublished decision in *Torres v. American Airlines*, No. 4:18-cv-00983 (N.D.

Tex. May 22, 2020). Opp. at 7-8. *Torres* relied on a theory, espoused by the Eleventh Circuit,

*Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) that a conflict

exists if "some members of the class … would benefit from" the challenged illegal conduct.

*Torres*, slip op. at 22, 23. But the Third Circuit rejected *Valley Drug's* holding that Rule 23

requires a movant "to show that no class member benefitted from the challenged conduct." *In re*

*K-Dur,* 686 F.3d at 223 (rejecting *Valley Drug Co.*, 350 F.3d at 1190). Defendants here do not

contest that all class members share "the same financial incentive for purposes of the litigation—

*i.e.* proving that they were [injured] and recovering damages based on that [injury]." *Id.*

As to the prospective relief, the supposed conflict is speculative and hypothetical.

"Adequacy will not be denied simply 'because of a potential conflict of interest that may not

become actual.'" *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 218 (E.D. Pa. 2012) (quoting

*Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009)). The Third Circuit has

rejected similar arguments in securities suits arising where class members may have different

potential or future interests. *In re Cendant Corp. Litig.*, 264 F.3d 201, 244 n. 25 (3d Cir. 2001)

(rejecting argument that future interest in stock created conflict to represent class members with

no future interest). Here, a Class Member will only be made worse off by this suit and any

prospective relief if: (1) she took a very small amount of unpaid short term military leave during

18

the class period; (2) she takes no or almost no military leave in the future; (3) she remains employed at American; (4) AAG makes profit sharing awards in the future during her employment;[6] (5) her awards are lower than they would be but for the injunction; and (6) the sum of the profit sharing amounts foregone because of the increased earnings of servicemembers in the aggregate is greater the amount of retrospective monetary relief she receives from the suit, including any award of liquidated damages. As in *Cendant* and *Kohen,* this is a hypothetical conflict that may never manifest.

Defendants attempt to transform this hypothetical concern by relying on a declaration by Todd Jewett. Opp. at 9. Mr. Jewett declares that there are an unspecified number of current American pilots who have been in the Profit Sharing Plan since 2016, took only one to two days total of military leave in 2016, and who have not taken any subsequent military leave. Jewett Declaration (Dkt. No. 98-18) ¶ 7. Even these employees will benefit from a monetary recovery in this litigation. The lack of potential future injury by Defendants' conduct is not enough to make the conflict real rather than hypothetical. The conflict will never materialize as to these individuals if: (1) they quit or retire before another profit sharing award is issued, or (2) they return to military service or take military leave (or cannot schedule around they leave), or (3) they receive post-judgment profit sharing awards, but the aggregate effect of increased servicemember earnings across the AAG enterprise has an effect on their awards smaller than their damages. Such contingent conflicts do not bar class certification.

### 3.    There is No Evidence of Inter-Class Conflicts.

Defendants assert that there are "intractable conflicts *between* the three classes." Opp. at

---

[6] Highlighting the unpredictability of awards, AAG's most recent Form 10-Q disclosed negative earnings per share of ($5.26) for the three months ending March 31, 2020. Ex. 6 at at 4. As a result of COVID-19, AAG "presently expect[s] the deterioration to increase in the second quarter of 2020 and our results of operations for the remainder of 2020 to be severely impacted." *Id.* at 9.

11. Defendants' surmise that Plaintiff Scanlan has and will act on a financial incentive to lose on Count I (the Profit Sharing Claim) and to prevail on Count II (the American Pilots Claim) and Count III (the Paid Leave Claim) because such a result would give him full relief on his individual claims but provide no relief to members of the Profit Sharing Class employed at AAG Regional Affiliates. *Id.* But Defendants' flawed logic and inapposite cases do not substitute for evidence that Mr. Scanlan has or would act contrary to the interests of the Classes.

First, Defendants argue that Plaintiff cannot adequately represent the members of the Profit Sharing Class who are not members of the Paid Leave Class because Scanlan has an additional claim for monetary relief. Opp. at 11-12. But the Third Circuit and courts in this Circuit have rejected similar arguments about a conflict because a plaintiff who has an additional claim for monetary relief. *New Directions,* 490 F.3d at 313 & n.14 (rejecting argument that plaintiff's claim for damages resulted in conflict with injunctive relief class). There is no conflict when the plaintiff's claim for damages "would similarly support a claim" for class-wide relief. *Victory v. Berks County,* CV-18-5170, 2019 WL 2950171, at *29 (E.D. Pa. July 8, 2019) (discussing cases reaching similar conclusions). This contrasts with Defendants' sole case where pursuing a legal theory on one claim will undermine the legal theory of the other. *Bradburn,* 2004 WL 414047, at *4.[7] This Court previously found that the "analysis with respect to count III likewise applies with respect to count I." *Scanlan v. Am. Airlines Grp., Inc.,* 384 F. Supp. 3d 520, 528 (E.D. Pa. 2019). Contrary to Defendants' assertion, the Court did *not* find that Count I was "derivative of Count III." Opp. at 11-12. While Plaintiff's victory on Count III would necessitate a victory on Count I, a victory on Count I is possible without Count III. Ex. 7 at 36:14-38:19.

---

[7] The holding of this case was also abrogated by the Third Circuit's subsequent decision holding with respect to conflicts on class certification. *Compare id. with K-Dur*, 686 F.3d at 223.

Evidencing that point, the initial Complaint *only* alleged claims involving the Profit Sharing

Plan. Dkt. No. 1 ¶¶ 64-84. Even if Plaintiff succeeded on Count III and abandoned Count I, a

Plaintiff victory on Count III would *still* allow future claims by Regional Airline employees for

Paid Leave and increased Profit Sharing awards.[8] Finally, there is no evidence that Plaintiff has

taken or would take any effort to undermine Count I in favor of Count III.

Defendants' second argument about the conflict between Count I and Count II is even

more speculative and less logical. Opp. at 11. Defendants argue that "Plaintiff has a financial

incentive to prevail on Count II and *lose* on Count I" and would choose to *lose* Count I

intentionally. *Id.* This assumes that Plaintiff is assured of victory on Count II, but they also fail to

explain the circumstance of how that would occur. *See id.* But more importantly, Mr. Scanlan's

strongest financial incentive is to succeed on the Paid Leave Claim (Count III) – as that provides

him *with wages for his military leave*, which will be greater than an incremental amount of profit

sharing – and their own acknowledgement that a victory on Count III necessitates a victory on

Count I. *See* Def. Mem. at 11-12. Thus, it would make no sense for Mr. Scanlan to ignore his

duties to the Classes and jeopardize Count I in favor of Count II unless he also acted against his

own financial interest to "throw" Count III.

Defendants' remaining cases involve settlements where plaintiff negotiated settlements

on behalf of a class disproportionately favoring a group (in which plaintiff was a part), and

simultaneously disadvantaging the remedy for another portion of the class. Opp. at 11.

Defendants' own cases emphasize that the conflicts arose from the *structure of the settlements*

*disproportionately favoring one group*, not because class members or different classes were

---

[8] The reason that the employees of the Regional Airlines are not included in the Paid Leave Class is that Count III is brought against American on behalf of American Airlines employees and Plaintiff would not have standing to bring similar claims on behalf of the employees at the Regional Airlines against the individual Regional Airlines.

entitled to different relief. *Dewey v. Volkswagen Aktiengesellschaft* 681 F.3d 170, 187 (3d Cir.

2012); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 236

(2d Cir. 2016) (distinguishing cases where "multi-class settlements" were "entered into *after*

class certification from the settlement-only classes providing disproportionate relief among

separate (b)(2) and (b)(3) classes). Defendants' final case, which found that there was *no*

*conflict, expressly distinguished arguments that arise in the context of settlement. In re Cmty.*

*Bank*, 795 F.3d at 394 (affirming certification). Thus, these cases illustrate that Defendants'

postulations about potential conflicts do not create disqualifying conflicts for Mr. Scanlan.

## III.    The Claims Meet the Requirements of Rule 23(b).

Defendants, of course, do not dispute that only one prong of Rule 23(b) needs to be

satisfied. *See* Pl. Mem. at 15. Nor do Defendants dispute that if the claims can be certified under

Rule 23(b)(1) or (b)(2), the Court need not address Rule 23(b)(3). *Id.* at 21. Yet, Defendants

barley mention, let alone address the requirements or Rule 23(b)(1) or (b)(2). *See* Def. Mem. at

7. Defendants only expend a little more to address Rule 23(b)(3). *Id.* at 23-24.

### A.    The Claims Meet the Requirements of Rule 23(b)(1)

Defendants do not contest any of the elements of either prong of Rule 23(b)(1). *See* Pl.

Mem. at 15-18. Instead, Defendants merely assert that the potential impact on how benefits

might be paid by the Profit Sharing Plan in the future – if AAG has profits again – create a

conflict because the "total amount available for profit sharing is fixed pursuant to a formula."

Opp. at 7-8. But this is *precisely* the kind of dispute for which Rule 23(b)(1) is designed.

#### 1.    The Requirements of Rule 23(b)(1)(B) Are Met *Precisely Because* An Adjudication of Plaintiff's Rights Will Have A Practical Impact Effect of Concluding or Impairing the Rights of Other Employees

Defendants argue that a determination that military leave should have and must be paid or

credited under the Profit Sharing Plan may impact the relative rights of others under the Plan.

Opp. at 7-8. Defendants ignore that this would be true *even if this were a single plaintiff suit*, and that is precisely why these claims are suitable for certification under Rule 23(b)(1)(B) – because Rule 23(b)(1)(B) applies to claims where litigating an individual claim would have the practical effect of "concluding *or impairing* the interests of persons who are not parties." Pl. Mem. at 17 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999) (emphasis added)). The Committee Notes explain that Rule 23(b)(1) is designed to apply to "various situations [where] an adjudication as to one or more members of the class will necessarily or probably have *an adverse practical effect on the interests of other members* who should therefore be represented in the lawsuit." 1966 Advisory Committee Notes to Rule 23(b)(1)(B) (emphasis added).

One paradigmatic example are claims involving adjudication of the rights of all participants in a fund in which the participants had common rights. *Ortiz,* 527 U.S. at n.14. "[T]he adjudication would determine the operating rules governing the fund for all participants." *Id.* Defendants repeatedly emphasize that the annual award under the Profit Sharing Plan consists of a "fixed" pool. Opp. at 1, 2, 8. Defendants' description of the Profit Sharing Plan conforms with the type of fund for which "mandatory class treatment through representative actions on a limited fund theory was justified" historically and therefore under Rule 23(b)(1): a "fund" with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, by an equitable, pro rata distribution. *Compare id. with Ortiz*, 527 U.S. at 841 & n.14. Precisely because an order even requiring Defendants to pay Scanlan only for his military leave would affect the rights of other employees, particularly on a fixed fund that is the Profit Sharing Plan, justifies certification under Rule 23(b)(1).

Defendants suggest that mandatory class certification is problematic because class members cannot opt out. Opp. at 7. But class members have rights to intervene, to receive notice,

to object to any settlement and to have any settlement adjudicated by the Court. *See* Fed. R. Civ. P. Rule 23(d)(1)(B) & (B)(iii), 23(e)(1), 23(e)(2). In the absence of class certification, these employees' rights would be impacted, but they would have no ability to protect their rights. Rule 23(b)(1) is designed precisely to address such situations.

### 2.    The Circumstances for Rule 23(b)(1)(A) Also Apply Because of the Need for a Unitary Adjudication about the Plan and Leave Policies

Defendants argue that some employees might benefit in the future from a change advocated by Plaintiff while others would prefer the status quo. Opp. at 9. This argument reinforces the appropriateness of certification under Rule 23(b)(1)(A). *See* Pl. Mem. at 16. The Advisory Committee Notes expressly contemplate such a circumstance under Rule 23(b)(1)(A):

> The felt necessity for a class action is greatest when the courts are called upon to order or sanction the alteration of the status quo in circumstances such that a large number of persons are in a position to call on a single person *to alter the status quo, or to complain if it is altered, and the possibility exists that [the] actor might be called upon to act in inconsistent ways*.

1966 Advisory Committee Notes on Rule 23(b)(1)(A) (quoting Louisell & Hazard, *Pleading and Procedure; State and Federal* 719 (1962)). As the examples in the Committee Notes about bond, riparian or landowner rights illustrate, the conflicting adjudications arise because one owner seeks and obtains a different determination on the same property interest than another. *See id.* Thus, a determination about the change in the methodology by which AAG calculates its profit sharing awards is just such a circumstance making Rule 23(b)(1)(A) certification appropriate.

### B.    The Claims Meet the Requirements of Rule 23(b)(2)

Defendants do not dispute that the elements of Rule 23(b)(2) are met – namely that AAG and American have "acted or refused to act on grounds that apply generally to the class" and "that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Compare* Pl. Mem. at 18-21 *with* Opp. at 7. Defendants barely mention Rule

23(b)(2) and do not contest that the relief here readily satisfies the standard set forth in *Wal-Mart Stores, Inc. v. Dukes* for claims certified under Rule 23(b)(2). *See* Pl. Mem. at 19-21.

Defendants rely on an unpublished out-of-Circuit decision, *Torres v. American Airlines*, No. 4:18-cv-00983 (N.D. Tex. May 22, 2020) that briefly addressed Rule 23(b)(2). Opp. at 7. But the *Torres* court concluded that Rule 23(b)(2) certification was inappropriate because some members of the class "would have to be spared from any injunction or declaration just to avoid being harmed." *Torres*, slip op. at 25. In *Torres*, unlike here, the injunctive or declaratory relief would have had an impact on *existing* benefits because it would have changed the mortality assumptions and the injunction or declaration would harm their *existing* benefits. *Id.* at 23. By contrast, Defendants argue only that a conflict exists with respect the "request for injunctive relief … in the future." Opp. at 9. Not only is such a conflict hypothetical, but the Third Circuit has explained that conflicts about declaratory and injunctive relief are rare. *New Directions,* 490 F.3d at 313 ("Conflicts of interest are rare in Rule 23(b)(2) class actions seeking only declaratory and injunctive relief."). That is because the issues for a "(b)(2) class are whether the defendants" violated the law and whether the violation "warrant[s] an injunction." *In re New Motor Vehicles Canadian Export,* MDL 1532, 2006 WL 623591, at *5 (D. Me. Mar. 10, 2006) (citing *Mid-W. Paper Prods. Co. v. Cont'l Grp., Inc.,* 596 F.2d 573, 591 (3d Cir. 1979)). "Even if some class members have not been injured by the challenged practice, a [Rule 23(b)(2)] class may nevertheless be appropriate." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). "Whether some class members prefer the illegal conduct does not undermine a Rule 23(b)(2) class." *In re New Motor Vehicles Canadian Export Antitrust Litig.,* 235 F.R.D. 127, 141 (D. Me. 2006), *vacated on other grounds,* 522 F.3d 6 (1st Cir. 2008); 2 Newberg on Class Actions § 4:28 (5th ed.) (same).

Finally, Defendants criticize Plaintiffs here for failing to submit an expert declaration about the benefits as the *Torres* plaintiffs did. Opp. at 7. But the *Torres* plaintiffs were provided data sufficient to allow an expert calculate the amount of benefits under different assumptions. *Torres*, slip op. at 9-10. Defendants forget that *they successfully opposed producing such data* to Plaintiff by arguing that it was not relevant to class certification and therefore beyond the scope of discovery. ECF No. 72 at 8-9; Order (ECF No. 73). Not only does that argument preclude them from showing that there is anything more than the conflict is more than speculative, but Defendants cannot criticize Plaintiff for failing to present evidence that Defendants argued was irrelevant.

## C.    The Claims Also Meet the Requirements of Rule 23(b)(3)

Defendants argue only that individual issues will predominate over common questions because they assert that "to determine whether any two leaves are comparable, the Court will have to undertake work-group-specific inquiries." Opp. at 23. As Defendants concede that the "proof required to resolve the American *pilots* Claims will be common," Defendants concede that Count II can be certified under Rule 23(b)(3) and that Counts I and III meet the requirements of Rule 23(b)(3) on behalf of the American Pilot Class. *See id.* at 24. But Counts I and III meet the requirements of Rule 23(b)(3) and should be certified on behalf of the Profit Sharing Class and the Paid Leave Class respectively.

### 1.    Common Issues Predominate Over Individual Ones.

Defendants simply assert that "work-group specific inquiries" are necessary to resolve the claims of the various employee groups. Opp. at 24. Tellingly, while Defendants emphasize the number of work groups composing the Profit Sharing Class and Paid Leave Class, they do *not* identify material difference between the policies applicable to the work groups. *See id.* at 23-

24.[9] Defendants rely on a single case to argue lack of predominance, *Ferreras,* where the lack of predominance resulted from a failure to show that a policy that "may have existed for one group of employees" applied to other employee groups. *Supra* Part II.B; Opp. at 23-24; Pls. Mem. at 10-11. By contrast, Defendants' own case cited elsewhere found predominance where the issues concerned defendants' overall conduct toward class members despite various membership programs and contracts that had "numerous different types of memberships … each with differing membership fees, terms and benefits" *Allen,* 249 F.R.D. at 177, 191 (certifying Rule 23(b)(3) class).

Defendants ignore several important concepts about predominance. First, predominance merely requires that "one or more of the central issues" are "susceptible to generalized, class-wide proof" but not some "important matters" can be tried separately. Pl. Mem. at 21-22 (discussing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). Second, predominance evaluates the "nature of the evidence" and the "proof of the essential elements of the cause of action." *Id.* at 22 (quoting *Williams v. Jani-King of Phila. Inc.,* 837 F.3d 314, 319 (3d Cir. 2016)). Third, the focus is on whether "defendant's conduct was common as to all of the class members" and "whether all class members were harmed." *Id.* (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011)). Defendants ignore these concepts because each of them weigh in favor of finding that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* at 21.

Despite observing that leaves were subject to different policies, Defendants do not

---

[9] Defendants elsewhere explain differences about the scheduling software used by pilots and a misstatement of fact regarding pilot bereavement leave, but do not explain how that impacts any issue relevant to proof in this case. *Supra* Part II.C.1. The only relevant differences in leave policies relate to whether certain work groups receive full or differential pay for jury duty—an example of a fact which goes only to calculation of damages and "the degree of the harm."

contest that across all of the workgroups in the Classes, military leave was unpaid, but jury duty and bereavement leave were paid. *Compare* Pl. Mem. at 12 *with* Def. Mem. at 22-24. Nor do Defendants do not dispute that the terms of Profit Sharing Plan are the same for all employees who participate in the Plan. *See* Pl. Mem. at 3-4. Defendants' own case confirms that the evidence to determine whether these leaves are comparable for both the Profit Sharing Class and the Paid Leave Class will be determined by the factors in the DOL Regulations -- the duration, purpose, and voluntariness of the different forms of leave. *Compare Hoefert v. Am. Airlines, Inc.,* 4:18-CV-00466, 2020 WL 109653, at *10 (N.D. Tex. Jan. 9, 2020) *with* Pl. Mem. at 7 (citing 20 C.F.R. § 1002.150(b)). The purpose of the leave does not vary by work groups – e.g., to allow employees to serve in the military, to allow employees to serve on juries, or take time off due to the death of a loved on. *Hoefert,* 2020 WL 109653 at *10, *12 (discussing the general purpose of leaves); AA Dep. (Jewett) at 122:21-123:6, 123:22-124:4, 126:23-127:8. Likewise, whether the leave is considered voluntary will not vary between groups. *Hoefert*, 2020 WL 109653 at *12. As Defendants own case illustrates, the relevant evidence about duration (the most significant factor) will be based on overall *averages of employees. Id.* Unlike the data in *Hoefert* (involving long term military leave), American's own data reveal significant similarity between the average duration of leave: For example, the average duration of military leave for American pilots and flight attendants is 3.06 days for pilots and 3.46 days for flight attendants. Alter Decl ¶¶ 6-7. These averages match the 3 days of bereavement leave provided to *all the workgroups.* AA Dep. (Jewett) 118:21-119:10 The average length of pilot jury duty leave was 1.59 days. Alter Decl. ¶ 8; *see Hoefert*, 2020 WL 109653 at *12 (relying on average length of jury duty of 1.8 days).[10] Finally, Defendants do not contest that if these factors are shown, liability will be established for

---

[10] As Defendants refused to produce and this Court refused to compel production of non-military leave data for non-pilots, comparability of other leaves is not possible.

all groups and all class members will have been harmed by Defendants' conduct. As the relevant

policy provisions are the same and the claims will rely on common, class-wide proof,

predominance is met.

### 2. Defendants Do Not Contest Superiority

Defendants do not contest that the merits of a class action outweigh the available

alternative means of adjudicating the claims of members of the Classes. Pl's Mem. at 24-25.

## IV. Alternatively, the Court can Modify the Class Definitions or Grant Leave for Plaintiff's Counsel to Seek Additional Representatives for Conflicted Subclasses

If the Court concludes that it cannot grant class certification as requested, the Court has

alternatives to denying class certification. First, the Court can modify the class definitions.

*Chedwick v. UPMC,* 263 F.R.D. 269, 272 (W.D. Pa. 2009) ("A court is not bound by the class

definition proposed in the complaint and should not dismiss the action simply because the

complaint seeks to define the class too broadly.") (quoting *Robidoux v. Celani,* 987 F.2d 931,

937 (2d Cir.1993)). For example, as Defendants concede that most of the elements of Rule 23 are

met for a American pilot only class, the Court could certify a class for all three claims for only

American pilots. Second, the Court could allow Plaintiff to seek alternative representation for

subclasses of class members with which he has a conflict or of which he is not typical. *In re*

*FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 335 (D.N.J. 2008) (holding class

representative inadequate but granting class counsel opportunity to propose an alternative)**;** *see*

*Rexam*, 2005 WL 1260914 at * (denying certification of class, but certifying subclasses)**.** Finally,

if the Court determines there is only a hypothetical risk of a conflict at present, but one later

develops, "an appropriate subclass can be established." *Richardson v. Hamilton Int'l Corp.*, 62

F.R.D. 413, 418 (E.D. Pa. 1974); *see Dewey*, 681 F.3d at 189 ("[T]he parties could simply divide

the groups into subclasses that would be certified separately"); *Kohen*, 571 F.3d at 680 ("If and

when the [hypothetical conflicts] become real, the district court can certify subclasses with

separate representation of each.")

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification should be granted.

Dated: June 25, 2020                          Respectfully submitted,

 

 

R. Joseph Barton (admitted *pro hac vice*)
Colin M. Downes (admitted *pro hac vice*)
BLOCK & LEVITON LLP
1735 20th Street, NW
Washington D.C. 20009
Telephone: (202) 734-7046
Fax:    (617) 507-6020
Email: jbarton@blockesq.com
Email: colin@blockesq.com

Peter Romer-Friedman (admitted *pro hac vice*)
GUPTA WESSLER PLLC
1900 L Street NW, Suite 312
Washington, DC 200036
Telephone: (202) 888-1741
Email: peter@guptawessler.com

Michael J. Scimone (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone (212) 245-1000
Email: mscimone@outtengolden.com

Hannah Cole-Chu (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue, NW
Second Floor West
Washington, DC 20001
Telephone (202) 847-4400
Email: hcolechu@outtengolden.com

Matthew Z. Crotty (admitted *pro hac vice*)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave.
Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email:matt@crottyandson.com

Thomas G. Jarrard (admitted *pro hac vice*)
LAW OFFICE OF
THOMAS G. JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Fax: (509) 326-2932
Email: Tjarrard@att.net

Adam Garner
THE GARNER FIRM LTD.
1515 Market St. Suite 1200
Philadelphia PA 19102
Telephone: (215) 645-5955
Facsimile: (215) 645-5960
Email: adam@garnerltd.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Colin M. Downes, hereby certify that on June 25, 2020, I caused the foregoing

Plaintiff's Reply Memorandum in Support of Motion for Class Certification to be electronically

filed using the CM/ECF system, which will send notification of such filing to all counsel of

record.

Colin M. Downes (admitted *pro hac vice*)
BLOCK & LEVITON LLP
1735 20th Street, NW
Washington D.C. 20009
Telephone: (202) 734-7046
Fax:    (617) 507-6020
Email: joe@blockesq.com