**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JAMES P. SCANLAN, on behalf of himself
and all others similarly situated,

        Plaintiff,

-vs.-

AMERICAN AIRLINES GROUP INC., and
AMERICAN AIRLINES, INC.,

        Defendants.

Civil Action No. 2:18-cv-04040-HB

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Mark W. Robertson (*admitted pro hac vice*)
Anton Metlitsky (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
mrobertson@omm.com
ametlitsky@omm.com

M. Tristan Morales (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC  20006
Telephone:  (202) 383-5300
tmorales@omm.com

Kenneth A. Murphy
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone:  (215) 988-2700
kenneth.murphy@faegredrinker.com

*Attorneys for Defendants American Airlines
Group Inc. and American Airlines, Inc.*

## I.      INTRA-CLASS CONFLICTS PRECLUDE CERTIFICATION

Plaintiff's argument that this Court cannot consider the three intra-class conflicts plaguing this suit because Defendants did not describe them in response to a contention interrogatory, (ECF No. 101) ("Reply") at 3-4, is wrong—both factually and legally.

Factually, Defendants could not possibly have waived an argument in opposition to class certification by not responding to a contention interrogatory issued *before* Plaintiff moved for certification.  When Defendants responded to that interrogatory, Defendants did not know the contours of the classes Plaintiff would ultimately seek to represent, and Plaintiff had not at that point even added Count II or the American Pilot Subclass to his complaint.  Thus, Defendants appropriately objected to Plaintiff's contention interrogatory as "premature."  (ECF No. 82-9 at 9.)[1]

Legally, it makes no sense to suggest a defendant could even waive the adequacy requirement (and surely not in this manner).  This is because it is Plaintiff's burden to "actually *prove*" that he "satisfies *each* requirement of Rule 23."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (second emphasis added).  This includes the "adequacy of representation" requirement in Rule 23(a)(4).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).[2]

---

[1] Even so, the interrogatory response included four paragraphs of anticipated arguments, including the fact that Plaintiff "has only ever been employed as a pilot by American" and that "a determination of liability as to each class member is contingent upon which carrier and which leave and/or pay provisions and policies were applicable to that class member."  (ECF 82-9 at 9-10.)  Plaintiff's chief complaint appears to be that he does "not have data to rebut" Defendants' argument.  (Reply at 4.)  But discovery was and is open, (ECF No. 64), and "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have."  Fed. R. Civ. P. 23, advisory committee notes to 2003 amendment.

[2] It would be particularly bizarre if a defendant could be deemed to have waived adequacy of representation in such a manner because the plaintiff is generally incompetent to assert conflicts (by definition, the allegation is that she is conflicted), and the rule is designed specifically to protect

This explains why courts have rejected the argument Plaintiff advances.  *See, e.g.*, *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) ("[T]he burden to prove whether class certification is appropriate rests on the plaintiffs: thus Abbott can hardly be deemed to have 'waived' its Rule 23(a) challenge.").[3]  And it also explains why none of Plaintiff's cases remotely stands for the proposition that a defendant can waive a challenge to adequacy in response to a contention interrogatory.  Indeed, Plaintiff's only case even concerning class certification is about whether issues were "preserved for appeal."  ((Reply at 4) (*citing In re. Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 260-62 (3d Cir. 2019).)[4]

On the merits, Plaintiff does not dispute the point fundamental to the conflicts: profit-sharing is a fixed pie.  Because Plaintiff seeks shares of that fixed pie on behalf of three separate groups with three separate claims—including a breach of contract theory unique to American pilots—it is no surprise to find conflicts.  And while Plaintiff can offer promises that he would aim to maximize the interests of an Envoy mechanic or an American dispatcher, despite countervailing economic incentives presented by his proposed classes, "[f]ar too much turns on

---

the due process rights of absent class members who may be bound to the judgment with or *without* notice and the right to opt out (depending on whether Rule 23(b)(3) or Rules 23(b)(1) and (2) applies).  *See In re Gen. Motors Corp.*, 55 F.3d 768, 784-785, 797-800 (3d Cir. 1995).

[3] Contrary to Plaintiff's assertion, the Third Circuit disagreed only with *Valley Drug*'s analysis of antitrust injury, which it interpreted in a manner that differs from the Eleventh Circuit.  *See In re K-Dur Antitrust Litig.*, 686 F.3d 197, 223–24 (3d Cir. 2012).

[4] Plaintiff also argues that Defendants are precluded from raising the pilot-specific equitable estoppel defense. (Reply at 11-14; Opp. at 3-4).  At the time of American's written discovery responses, Plaintiff had not yet testified, as he did at his March deposition, that the Allied Pilots Association traded away paid military leave for pilots in exchange for millions of dollars in other benefits, and that it did so while Plaintiff served as Chairman of the Military Affairs Committee and advisor to the Negotiating Committee.  (Opp. at 21.)

the adequacy of representation to accept it on blind faith." *See Gen. Motors*, 55 F.3d at 797.[5]

As to the conflict within the American pilot group, the central fact is undisputed: there are putative class members who no longer take military leave and who will be worse off in future years by virtue of Plaintiff's proposed change to profit-share distributions. Because Plaintiff seeks injunctive relief as to the profit-sharing plan, these pilots would be locked into years of diminished profit-sharing returns if Plaintiff prevailed as to the Profit Sharing Class.[6]

## II.    AS TO NON-PILOTS, PLAINTIFF IS WRONG ON THE MERITS

Plaintiff's argument that the differences between pilots and non-pilots are irrelevant to class certification reflects a fundamental misunderstanding of the merits of his claims and the required comparability analysis as to the leaves at issue.

First, Plaintiff argues "this is a case of a common right shared by all class members that happens to be articulated in separate contracts." (Reply at 7) (internal quotation marks omitted). This is strikingly wrong. Can American pilots take paid military leave because the mechanics' CBA provides for such leave? Can American deny pay for a flight attendant's planned jury duty absence, as it does for pilots, even though the flight attendant CBA expressly requires pay for such absences? Can a chief pilot in Miami deny a bereavement request for an administrative assistant in Chicago, as she can for a pilot in Miami? No, no, and no.

---

[5] If, for example, Plaintiff prevailed on summary judgment on his (meritless) contract claim (Count II) for profit sharing, he would receive *every* profit-sharing credit he seeks in this litigation, and he could *only lose* profit sharing dollars by continuing to pursue Count I.

[6] If accepted, Plaintiff's argument that there is no conflict because American Airlines Group Inc. ("AAG") is not likely to "make a profit anytime soon," (Reply at 17), would defeat his claim of standing. If there is no profit to be had, then plaintiff is not imminently likely to be injured by AAG's administration of the profit-sharing plan. *See, e.g.*, *Schurr v. Resorts Int'l Hotel, Inc.* 196 F.3d 486, 495 (3d Cir. 1999).

3

For pilots alone, planned absences—including for jury duty, bereavement, or military leave—are not paid: pilots are contractually required to identify any such absence, American then schedules around the absence, and the absence is unpaid.  ((ECF No. 98) ("Opp.") at 16-19.) For pilots, then, if the question is whether jury duty or bereavement are paid, the answer is no, except in defined circumstances which the CBA and scheduling system are *designed to minimize or avoid*.[7]  Not a single other work group would provide this same answer to this central question, which goes to the heart of determining whether the benefit Plaintiff seeks is "generally provided" by American "to employees having *similar seniority, status, and pay*" on a non-military leave of absence.  38 U.S.C. § 4316(b)(1)(B) (emphasis added).  Plaintiff's assertion that the pilot-only structure for scheduling and pay creates no material difference with non-pilot groups, when the pilot structure alone treats jury duty and bereavement as unpaid except in circumstances the pilot CBA is designed to minimize or avoid, confirms that Plaintiff's motion "is based on a fundamentally flawed premise."  (Opp. at 13.)

Second, Plaintiff does not dispute that "[p]ilots take more military leave than non-pilots," (Reply at 9), nor does he suggest that his recent average of 130 days of military duty per year is atypical among pilots.  Plaintiff also concedes that the *amount* of military leave employees take is relevant in determining whether a military leave policy is "comparable" to non-military leave policies, but, he argues, it is relevant *only* based on the duration of each isolated absence.  (*Id.*) Thus, according to Plaintiff, if he takes a two-day military leave on 65 occasions in 2020, the

---

[7] Plaintiff concedes that chief pilots have full discretion over pilot bereavement requests greater than three days (including based on operational considerations).  (Reply at 9.)  But there is more: the pilot CBA vests discretion in chief pilots over any leave of absence request, unless the CBA expressly provides otherwise, and for pilots unlike every other represented group, the CBA does not provide for paid bereavement leave for any length.  (Opp. at 18-19.)

two-day length of the absence is relevant to comparability, but the fact that those absences *added up* to 130 days in the year is *irrelevant* to the comparability analysis.

Plaintiff overreaches.  While the Department of Labor ("DOL") has identified the duration of the leave as perhaps the most important factor, it did not somehow *exclude* by implication other factors (like frequency or cumulative duration).  *See* 20 C.F.R. § 1002.150(b).  To the contrary, "Congress carefully constructed" USERRA to account for the "legitimate concerns of employers," *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 304-05 (4th Cir. 2006), and an implied paid military leave rule that requires hundreds of days of paid military leave because one two-day leave is comparable to jury duty would do just the opposite.[8]

DOL's regulations provide a clear example.  DOL states: "a two-day funeral leave will not be comparable to an extended military leave."  (DOL Final Rules, 70 Fed. Reg. 75246-01 at 75264.)  That makes sense—because the *amount* of leave taken by the employee will have different impacts on the employer's staffing and operation.  The same is plainly true of the *frequency* of military leave; certainly, at a minimum, for pilots, who are scheduled to fly a few days at a time, rather than Monday-Friday each week.  The amount of leave that an employer expects to provide under any leave policy is relevant to the comparability of different leaves, and that is true whether or not employees like Plaintiff take 65 two-day or 13 ten-day absences.

Dated:  July 3, 2020

Respectfully submitted,

By: */s/ Mark W. Robertson*

Mark W. Robertson (*admitted pro hac vice*)

---

[8] DOL's final rules recognize that duration and frequency are two factors that employers evaluate in assessing a military leave of absence.  *See generally*, DOL Final Rules at 75258 ("[G]ood faith contacts with the military to express legitimate concerns about timing, frequency, and duration of an employee's military service do not evidence a discriminatory motive.").

Anton Metlitsky (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
mrobertson@omm.com
ametlitsky@omm.com

M. Tristan Morales (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
tmorales@omm.com

Kenneth A. Murphy
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
kenneth.murphy@dbr.com

*Attorneys for Defendants American Airlines
Group Inc. and American Airlines, Inc.*