IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
JAMES P. SCANLAN on his own      :      CIVIL ACTION
behalf and all others similarly  :
situated                         :
                                 :
          v.                     :
                                 :
AMERICAN AIRLINES GROUP, INC.,   :      NO. 18-4040
et al.
```

MEMORANDUM

Bartle, J.                                    October 8, 2021

      Plaintiff James P. Scanlan, a commercial airline pilot and a Major General in the United States Air Force Reserve, has sued defendants American Airlines Group, Inc. ("AAG") and American Airlines, Inc. ("American"), his employer and AAG's wholly owned subsidiary, in this putative class action under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301 et seq., and for breach of contract.  In essence, plaintiff claims that he and the classes he seeks to represent have not received the compensation or benefits due to them under the statute and by contract. Plaintiff seeks declaratory, injunctive, and monetary relief. Before the court is the plaintiff's motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.

I

Plaintiff has worked as a pilot for American since 1999 and has participated in AAG's Global Profit Sharing Plan since 2016.  Throughout his employment with American and while he has participated in the Plan, plaintiff has taken periods of leave to perform his military service in the reserves.  For instance, plaintiff took leave for military service 128 days in 2016 and 132 days in 2017.  Most of these periods of leave were for only a few days at a time although some extended up to fourteen days.

American does not pay its pilots when they take military leave no matter how long or short that leave is.  Likewise, with several exceptions, it does not pay its other employees when they take such leave.[1]  It does, however, pay employees who take leave for jury duty or bereavement.  American employees who take leave for jury duty either receive their full regular pay or the difference between their regular compensation

---

[1].    Plaintiff concedes that some American employees are paid for short-term military leave and that those employees have been excluded from the proposed classes.  While plaintiff's motion for class certification does not reference these exceptions in the class definitions, plaintiff's second amended complaint states that the following are excluded from the proposed classes and subclass:  (a) employees responsible for administering the Plan; (b) employees who reached settlements or judgments against AAG in individual USERRA actions; and (c) employees covered by existing agreements representing certain passenger service employees, fleet service employees, and mechanical employees.

and their pay as jurors.  The collective bargaining agreement
("CBA") between American and the Allied Pilots Association on
behalf of American pilots is silent as to bereavement leave.
According to defendants' corporate representative Todd Jewett,
the company policy applies when the CBA is silent.  American's
policy is to provide up to three days of paid bereavement leave
in the event of a death of an immediate family member.

American's parent company, AAG, is also the parent
company of Envoy Air, Inc., Piedmont Airlines, Inc., and PSA
Airlines, Inc.  AAG adopted and implemented the Profit Sharing
Plan effective January 1, 2016 to share a portion of its profits
with employees of American and its subsidiary airlines who are
participants in the Plan.  Employees who are eligible to
participate in the Plan include pilots, flight attendants,
mechanics, and passenger service employees as well as non-union
management and non-management employees.  Participants are
categorized by different so-called "work groups" based on their
position and union representation.

Under the Plan, AAG pays profit sharing awards each
spring to the Plan participants that total five percent of AAG's
pre-tax earnings from the preceding year.  Participants receive
their award as a lump sum cash payment and may contribute all or
part of the award to their retirement plans.  AAG calculates
each participant's individual award by dividing the five percent

3

of AAG's pre-tax earnings by the aggregate amount of all participants' earnings and multiplying this resulting value by an individual participant's "eligible earnings."  Eligible earnings are based on the participant's "compensation" as defined by his or her applicable 401(k) plan.  Earnings from paid leave are credited to the Plan participants for purposes of this allocation.

AAG may modify or terminate the Plan at any time. Profit sharing is not guaranteed.  AAG has not had profits to distribute since 2019.

AAG does not credit short-term military leave[2] toward a participant's eligible earnings under the Plan when employees are not paid for such leave.  However, it does credit the leave and impute income under the Plan for employees when they take leave for jury duty or bereavement.  As a result, plaintiff and other similarly situated employees who have taken military leave received lower profit sharing awards than they would have received if credit had been given for such leave.  This

---

2.   For purposes of this action, "short-term military leave" is defined as consecutive leave that is sixteen days or fewer as explained by defendants' corporate representative who testified that after sixteen days an employee is removed from the payroll and reinstated when back from leave.  Plaintiff agrees that military leave that is longer than sixteen consecutive days is not short-term, and the employee would not be paid for any of this leave.

situation will continue if and when profits are distributed among Plan participants in the future.

                              II

        USERRA is one of a series of laws that Congress has enacted to protect the rights of military service members who take leaves of absence from their employers to perform military service.  Crews v. City of Mt. Vernon, 567 F.3d 860, 864 (7th Cir. 2009); Rogers v. City of San Antonio, 392 F.3d 758, 762 (5th Cir. 2004).  Congress stated in the first section of USERRA that its purposes, among others, are "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages of civilian careers and employment which can result from such service" and "to prohibit discrimination against persons because of their service in the uniformed services."  38 U.S.C. §§ 4301(a)(1) and (a)(3); see also Carroll v. Del. River Port Auth., 843 F.3d 129, 131 (3d Cir. 2016).  As our Court of Appeals has explained, "we must construe USERRA's provisions liberally, in favor of the service member."  Gordon v. Wawa, Inc., 388 F.3d 78, 81 (3d Cir. 2004).  USERRA seeks to treat those employees in non-career military service equally with employees not engaged in military service.

        Plaintiff alleges in Count I of the second amended complaint that AAG's policy of not crediting short-term military leave to participants' eligible earnings for purposes of its

                              5

Profit Sharing Plan but doing so for jury duty and bereavement leave violates USERRA, specifically § 4316(b)(1).[3]  Plaintiff also alleges a violation of § 4316(b)(1) in Count III based on American's failure to pay its employees for short-term military leave while paying its employees for leave taken for jury duty or bereavement.  In denying defendants' earlier motion to dismiss Counts I and III, this court explained in its June 18, 2019 Memorandum and Order that compensation for short-term military leave is a right and benefit within the meaning of this statute.  See Scanlan v. Am. Airlines Grp., 384 F. Supp. 3d 520 (E.D. Pa. 2019).  Our Court of Appeals has recently affirmed this holding in a similar case.  See Travers v. Fed. Express Corp., 8 F. 4th 198 (3d Cir. 2021).

Plaintiff also brings a claim against AAG in Count II for breach of contract based on the language of the AAG Profit Sharing Plan.  The Plan calculates the amount of each participant's profit sharing award based on that participant's eligible earnings.  Eligible earnings, as noted above, are defined in the Plan as "compensation" as that term is defined in

---

3.    35 U.S.C. § 4316(b)(1) provides, in part, that "a person who is absent from a position of employment by reason of service in the uniformed services shall be . . . (A) deemed to be on furlough or leave of absence while performing such service; and . . . (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay."

the participant's 401(k) qualified defined contribution plan.
For American pilots, their 401(k) plan provides that employees
will be considered compensated for qualified military service
"at the same annual rate as the Eligible Employee's average rate
of Compensation from the Employer during the 12 months
immediately preceding the qualified military service."
Plaintiff alleges that AAG is violating the terms of the Plan by
not including credit or imputed income for American pilots'
short-term military service.

The class which plaintiff seeks to certify under Count
I is a profit sharing class of current and former employees of
American and all AAG affiliates who have participated in the
Plan at some point since its inception on January 1, 2016 and
who are harmed and will continue to be harmed as a result of
violation of § 4316 ("Profit Sharing Class").  The proposed
class

> consists of participants in the Profit
> Sharing Plan who took short-term military
> leave at any AAG affiliate (including
> American) from the inception of the Plan
> 2016 to the present.[4]  Count I is brought on
> behalf of the Profit Sharing Class and
> alleges that AAG violated USERRA [§ 4316] by
> not crediting periods of short-term military
> leave under its Profit Sharing Plan.

---

4.   The affiliates of AAG are its subsidiaries Envoy, Piedmont,
and PSA.

7

Members of this proposed class must also have been employed in the United States while a participant in the Plan or were a citizen or national or permanent resident of the United States while employed in a foreign country and have been a participant whose profit sharing award did not include credit or imputed earnings for short-term military leave.

Plaintiff also seeks to certify a subclass of the Profit Sharing class under Count II limited to American pilots who are or were eligible to participate in the American pilots' 401(k) plan and who have been harmed and will continue to be harmed as a result of breach of contractual provisions in the Profit Sharing Plan ("Profit Sharing Pilots Subclass").  This proposed subclass

> consists of members of the Profit Sharing Class who were pilots at American Airlines. Count II of the . . . Second Amended Complaint is brought on behalf of the American Pilots Profit Sharing Subclass and alleges that AAG committed breach of contract and violated the terms of the Profit Sharing Plan by not crediting periods of short-term military leave under its Profit Sharing Plan.

Finally, plaintiff moves for certification under Count III of a class of current and former American employees who have been harmed and will continue to be harmed as a result of violation of § 4316 because of American's failure to pay them

for short-term military leave ("Paid Leave Class").  This
proposed class

> consists of American employees who took
> short-term military leave between 2013 and
> the present.  Count III is brought on behalf
> of the Paid Leave Class against American
> alleging that the Class Members were
> entitled to be paid at least the difference
> between their regular pay and military pay
> when they took short-term military leave.

Excluded from the proposed classes and subclass are
the following:  members of the committee responsible for
administering the Plan; participating employees who reached
settlements or judgments against AAG in individual USERRA
actions regarding inadequate profit sharing or failure to pay
for short-term military leave; and certain passenger service,
fleet service, and mechanical employees covered under existing
agreements between the airlines and those employees' respective
unions.

III

Class certification may only be granted if the four
requirements of Rule 23(a) of the Federal Rules of Civil
Procedure are first satisfied:

> (a) Prerequisites.  One or more members of a
> class may sue or be sued as representative
> parties on behalf of all members only if:
>
>     (1) the class is so numerous that
> joinder of all members is impracticable;

> (2) there are questions of law or fact
> common to the class;
>
> (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class; and
>
> (4) the representative parties will
> fairly and adequately protect the interests
> of the class.

Fed. R. Civ. P. 23(a).  The elements of this four-part test are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997).

The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence.  In re Modafinil Antitrust Litig., 837 F.3d 238, 248 (3d Cir. 2016).  To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a "rigorous analysis."  Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011).  In doing so, the district court must look beyond the pleadings.  In re Hydrogen Peroxide Litig., 552 F.3d 305, 316 (3d Cir. 2008).

A. Numerosity

There is no minimum number needed to satisfy the numerosity requirement.  In re Modafinil, 837 F.3d at 249-50; Kerrigan v. Phila. Bd. of Election, 248 F.R.D. 470, 473-74 (E.D. Pa. 2008).  As stated above, Rule 23 provides that numerosity is

10

established where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'Impracticable does not mean impossible,' and refers rather to the difficulties of achieving joinder." In re Modafinil, 837 F.3d at 249 (quoting Robidouz v. Celani, 987 F.2d 931, 935 (2d Cir. 1993)).

Defendants do not contest the numerosity of the proposed classes.  Based on discovery provided by defendants, there are at least 950 American pilots who took short-term military leave between January 1, 2013 and December 31, 2018 who are potential members of the Paid Leave Class, in addition to other American employees who took short-term military leave. There are at least 500 American pilots who are potential members of the Profit Sharing class and the Profit Sharing Pilots subclass.  Employees from Envoy, Piedmont, and PSA would add to these numbers for the Profit Sharing class, although the number of such class members is not quantified in the record.  Joinder of all would be impracticable.  Plaintiff has met his burden to demonstrate numerosity for all proposed classes under Rule 23(a)(1).

### B. Commonality

For commonality, "[t]he bar is not high."  In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., 795 F.3d 380, 393 (3d Cir. 2015).  It "does not require identical claims or

11

facts among class member[s]." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592-93 (3d Cir. 2012). A single common question is sufficient. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011). In fact, "as long as all putative class members were subjected to the same harmful conduct by defendant, Rule 23(a) will endure many legal and factual differences among the putative class members." In re Cmty. Bank, 795 F.3d at 397.

Plaintiff asserts that there is a common question for all putative class members in Counts I and III, that is whether short-term military leave is comparable to leave for jury duty or bereavement and thus must be credited under the Plan for purposes of Count I or compensated for purposes of Count III, all pursuant to § 4316(b). Plaintiff contends that there is a separate common question of law in Count II. That question is whether the language of the Plan requires AAG to include for American pilots credit for compensation for short-term military leave.

Defendants concede that there is commonality as to the American pilots' claims on all three counts. Nonetheless, defendants argue that plaintiff cannot satisfy the commonality prong of Rule 23(a)(2) for other employees of American or employees of the regional airlines because there is no company-wide policy at American or the regional airlines for jury duty or bereavement leave. Instead, defendants assert that

12

leave for these two events is collectively bargained for by each work group.

The court agrees with plaintiff that there exists a common question of law for the proposed classes in Counts I and III as to whether short-term military leave is comparable to jury duty and bereavement and should thus be similarly credited or compensated.  The fact that different work groups may be compensated for jury duty and bereavement differently than other work groups is not relevant to this discussion.  USERRA does not require that all leave for military service be compensated, only that such leave be compensated when comparable leave is compensated.

There is also a common question for the proposed subclass in Count II.  That question is whether AAG has breached the terms of the Plan by not crediting the short-term military leave of American pilots.

As there is at least one common question for each of the proposed classes, regardless of any respective work groups, Rule 23(a)(2) has been satisfied.

C. Typicality

Plaintiff must also satisfy the requirement for typicality, the third prong of the Rule 23(a) analysis. Typicality means that "the claims of the class representatives must be typical of the class as a whole."  <u>Johnson v. HBO Film</u>

13

Mgmt., Inc., 265 F.3d 178, 184 (3d Cir. 2001).  Typicality
ensures "that the class representatives are sufficiently similar
to the rest of the class – in terms of their legal claims,
factual circumstances, and stake in the litigation" and that
their representation is fair to the rest of the class.  In re
Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir.
2009).

        The court must evaluate whether the legal theories and
factual circumstances of the proposed class and representative
are sufficiently similar as well as whether the proposed
representative is subject to any unique or atypical defenses.
Id. at 597-98.  Although the legal theories and factual
circumstances need not be identical, there must be enough
similarity "so that maintaining the class action is reasonably
economical and the interests of the other class members will be
fairly and adequately protected in their absence."  Id. at 598.

        Plaintiff asserts that his claims are typical for both
the class for Count I and the class for Count III because the
same policy is challenged, that is the decision of AAG not to
give credit or impute income to Plan participants who took
short-term military leave and the decision of American not to
pay its employees when taking short-term military leave.
Plaintiff also avers that plaintiff's claims are typical of the
subclass in Count II because the same contractual provision in

the Plan is challenged regarding calculation of profit share awards.

Defendants counter that factual circumstances differ significantly between pilots on the one hand and the other putative class members on the other because of the many CBAs across multiple work groups of American and AAG subsidiary employees and the differences in amount of leave taken by pilots compared to non-pilots.  In total, even after plaintiff's exclusions of certain employees from the class, the proposed classes involve   thirty-three work groups across four airlines, many of which have different CBAs.  These various CBAs cover pilots, flight attendants, mechanics, fleet service employees, stock clerks, flight simulator engineers, maintenance control technicians, maintenance training specialists, dispatchers, and flight crew training instructors.  There are different factual circumstances within each CBA regarding the compensation structure.  Significantly, there are material variations for paid leave for jury duty and bereavement.[5]

The factual circumstances of plaintiff and the American pilots who have taken military leave as a group are different in another way from the factual circumstances of the

---

[5]  Plaintiff even recognizes these differences as counsel for plaintiff stated at oral argument that plaintiff does not seek to represent every work group at American, Envoy, Piedmont, and PSA.

other proposed class members.  Count II on behalf of American
pilots in the Profit Sharing Pilots subclass is a breach of
contract claim concerning a provision in the Plan document which
makes reference to the Plan participants' 401(k) plans.
According to plaintiff, the 401(k) plan for plaintiff and other
American pilots provides for compensation for eligible employees
for qualified military service.  Plaintiff makes no reference to
any other 401(k) plans for non-pilots or non-American employees.

        Plaintiff also seeks to bring a paid leave claim in
Count III only on behalf of American employees who took military
leave.  In this claim, plaintiff seeks payment of wages for
those American employees in addition to what they may be
entitled in terms of profit sharing under the Plan in Count I.
No such claim for wages is made on behalf of the employees of
the regional airlines who are part of the Plan.  Plaintiff thus
seeks a more favorable outcome for the American employees than
for others.

        In addition, defendants maintain that plaintiff's
claims are atypical in that he and other American pilots are
subject to an atypical defense based on their CBA which at one
time included pay for military leave but has not done so since
2013.  The court rejects defendants' argument that the American
pilots are estopped because they have bargained away their right
to such compensation.  USERRA specifically provides that it

"supersedes any . . . contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter."  38 U.S.C. § 4302(b).  Thus, defendants may not use the CBA with American pilots as a shield from allegations of a violation of USERRA.

The court finds, and defendants do not dispute, that plaintiff's claims are typical of those of American pilots who took short-term military leave in the designated years of each claim.  However, the court finds that the factual and legal claims of American pilots like plaintiff differ significantly from those who do not fit into this category.  It would not be fair or reasonably economical for plaintiff to represent those who are not American pilots.  In sum, plaintiff's claims are typical for purposes of Rule 23(a)(3) of the claims of the American pilots who took or will take short-term military leave in the years specified for each count but are not typical of the claims of the other putative class members.

### D. Adequacy

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Here, the court "primarily examines two matters:  the interests and incentives of the class representatives, and the experience and

performance of class counsel." <u>In re Cmty. Bank</u>, 795 F.3d at 393.  "The principal purpose of the adequacy requirement is to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class." <u>Id.</u>

In determining whether a class representative is qualified to serve as such, only "a minimal degree of knowledge" is necessary. <u>New Directions Treatment Servs. v. City of Reading</u>, 490 F.3d 293, 313 (3d Cir. 2007).  As our Court of Appeals has explained, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." <u>In re Cmty. Bank</u>, 795 F.3d at 393.  This prong of the Rule 23(a) analysis often overlaps with the typicality prong and may share questions relevant to the analysis of both. <u>In re Schering Plough</u>, 589 F.3d at 602.

First, it is uncontested that plaintiff's counsel is extremely experienced in representing plaintiffs in employment related class action litigation.  He has done so for more than eighteen years, including USERRA class actions for the past eight years.  Plaintiff himself is also an adequate representative insofar as he has been actively engaged in this litigation and has read the pleadings. <u>See New Directions</u>, 490 F.3d at 313.

18

Defendants agree that plaintiff is an adequate representative for a class of pilots for Count I insofar as he seeks declaratory and monetary relief for the failure to credit short-term military leave for past profit shares under the Plan. In this regard, plaintiff seeks to recover the amounts due from AAG for the class over and above the fixed amount that was deposited into the Plan at the time since all that money has already been paid out.

Defendants, however, dispute the adequacy of plaintiff's representation of the class regarding prospective declaratory and injunctive relief in Count I for future profit shares. As to those profits, the total amount to be divided and distributed will be a fixed amount, that is the amount AAG puts into the Plan. Thus any future increase to one participant's share of the profit sharing pie because of credit for military leave will thereby decrease shares of the pie of other participants who do not take military leave since profits are distributed on a pro rata basis proportional to each participant's eligible earnings.

Furthermore, defendants assert that, if successful, plaintiff will see his share of the profits increase since he has taken many days of short-term military leave in the past. For example, if plaintiff's eligible earnings without credit for short-term military leave is $100 but his eligible earnings with

credit for his military leave is $125 then other participants'
shares will proportionally decrease since plaintiff is entitled
to a bigger share of the pie.  Defendants contend that this
creates a conflict for plaintiff as a class representative since
plaintiff's potential increase of profit shares as a result of
success in this litigation as well as the profit shares of some
of the class members will come at the expense of other
participants who took fewer days of military leave.  Defendants
assert, for instance, that those who took short-term military
leave in 2016 when the Plan was instituted but have not taken
leave since will receive smaller profit shares in subsequent
years than they would receive if plaintiff were not successful
in this lawsuit.

        In essence, defendants maintain that some pilots or
other class members would be opposed to participation in the
lawsuit because their share of the pie may be smaller if USERRA
is enforced than if it is not enforced.  Defendants cannot
defeat class certification based on a conflict on the ground
that some proposed class members favor the continuation of
unlawful conduct.  See Ruggles v. WellPoint, Inc., 272 F.R.D.
320, 338 (N.D. N.Y. 2011).  To hold that a conflict exists under
such circumstances would undermine the will of Congress and the
rule of law.  The court rejects this argument of defendants as a

basis to defeat class certification of the Profit Sharing class in Count I and the pilots subclass in Count II.

Furthermore, plaintiff rightly argues that any future conflicts as described by defendants are hypothetical.  See In re Flonase Antitrust Litig., 284 F.R.D. 207, 218 (E.D. Pa. 2012).  Although defendants have indicated that there are employees who took leave in the beginning of the putative class period but have not taken military leave thereafter, this does not determine what they may do in the future.  Whether these putative class members will be better or worse off in the future as a result of this litigation cannot really be known at this time.  The conflict in this instance is too speculative to preclude class certification.

Defendants further contend that plaintiff is not an adequate representative because of a class conflict between the Paid Leave class in Count III on behalf of American employees and the Profit Sharing class in Count I on behalf of all Plan participants who take short-term military leave because plaintiff only seeks paid leave on behalf of the American employees.  As previously discussed regarding the typicality of plaintiff's claims, plaintiff is in effect seeking a full loaf on behalf of American employees in both Counts I and III and half a loaf on behalf of all other Plan participants at regional

airlines only in Count I.[6]  This further undermines the ability of plaintiff to vigorously represent the interests of the putative class members at regional airlines.

As our Court of Appeals has explained, there is often a similarity and overlap between typicality and adequacy when determining class certification.  See In re Schering Plough, 589 F.3d at 602.  Based on the significant differences in factual circumstances of American pilots compared to non-pilots at American and employees at regional airlines, as discussed with regard to typicality, the interests and incentives of plaintiff as a pilot at American are not aligned with the interests and incentives of other putative class members who are not American pilots.  Just as plaintiff's claims are not typical of the claims of those at American who are not pilots and Plan participants at regional airlines, the court finds that plaintiff is an inadequate class representative under Rule 23(a)(4) on behalf of those putative class members who are not American pilots.

---

6.   Defendants also raise arguments that plaintiff will be incentivized to win Count II on behalf of American pilots and lose Count I on behalf of all Plan participants to benefit American pilots. This argument is no longer relevant as the court has already determined with regard to typicality under Rule 23(a)(3) that the proposed classes should all be limited to American pilots.

IV

Plaintiff has met his burden to serve as the class representative for a class of American pilots under Rule 23(a)(1)-(4) on all three counts in the second amended complaint.  In addition to the prerequisites of Rule 23(a), plaintiff must also satisfy one of the requirements under Rule 23(b).

Plaintiff asserts that the proposed class may be certified under any of the provisions of Rule 23(b).  Rule 23(b)(1)(A) applies when separate actions would risk establishing "incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  A class under this provision is one in which "the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity." Amchem, 521 U.S. at 614.

Rule 23(b)(1)(B) is for a class in which separate actions would "be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1)(B).  Such a class most often concerns a limited fund "in which numerous persons make claims against a fund insufficient to satisfy all claims." Amchem, 521 U.S. at 614.

Rule 23(b)(2), often called the "injunctive relief" class, provides for certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) applies to actions in which "the relief sought must perforce affect the entire class at once." Wal-Mart, 564 U.S. at 360-62. Because the relief sought in a (b)(2) class must be generally applicable to the entire class, classes certified under (b)(2), as with (b)(1) classes, are mandatory and do not provide notice to potential class members or an opportunity to opt out. See Fed. R. Civ. P. 23(c)(2); see also Wal-Mart, 564 U.S. at 362.

Rule 23(b)(3), on the other hand, is often referred to as the "money damages class" and allows for certification when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors to evaluate when determining certification under (b)(3) include the interest of class members in controlling the separate actions, the extent and nature of any other litigation on this same controversy, the desirability or lack thereof of concentrating the litigation in

a particular forum, and the difficulties in case management.
See Fed. R. Civ. P. 23(b)(3)(A)-(D).  Rule 23(b)(3) "allows
class certification in a much wider set of circumstances but
with greater procedural protections," that is notice of the
class and an opportunity to opt-out from the class.  Wal-Mart,
564 U.S. at 362.

Since plaintiff seeks injunctive and declaratory
relief, the court will first evaluate whether certification
under Rule 23(b)(2), the "injunctive relief class," is proper.
Defendants counter that a (b)(2) class fails because plaintiff
seeks individualized monetary relief that differs as to each
class member.

The Supreme Court in Wal-Mart Stores, Inc. v. Dukes
held that "claims for individualized relief" do not satisfy
(b)(2) and that monetary relief that "is not incidental to the
injunctive or declaratory relief" may not be certified under
(b)(2).  564 U.S. 338, 360 (2011).  Wal-Mart involved a proposed
class of over one million female employees of Wal-Mart in which
plaintiffs alleged gender discrimination in violation of Title
VII and sought injunctive and declaratory relief and backpay.
The Court found that the backpay plaintiffs sought for the class
was subject to individualized relief and thus could not be
certified under (b)(2) which "applies only when a single
injunction or declaratory judgment would provide relief to each

25

member of the class." Id.  The Court, however, declined to reach the broader question of whether Rule 23(b)(2) only applies when requests for injunctive or declaratory relief are sought and thus precludes all requests for monetary damages.

In declining to reach the question of incidental monetary relief, the Court cited the decision of the Court of Appeals for the Fifth Circuit in Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998).  There the court defined incidental damages as those "to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established . . . . That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief." Id. at 415.  The court went on to explain that incidental monetary damages "should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." Id.  Thus, incidental damages are more of a "group remedy."  Id.

Our Court of Appeals cited Allison when it explained that incidental damages are "those 'that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.'" Barabin v. Aramark Corp., 2003 WL 355417 at *5 (3d Cir. 2003) (quoting

26

Allison, 151 F.3d at 415).  In that case, our Court of Appeals determined that incidental damages depend on:  (1) "whether such damages are of a kind to which class members would be automatically entitled"; (2) "whether such damages can be computed by 'objective standards' and not standards reliant upon 'the intangible, subjective differences of each class member's circumstances'"; and (3) "whether such damages would require additional hearings to determine."  Id. at *5-6; see also Allison, 151 F.3d at 415.

        Although the Supreme Court in Wal-Mart did not decide whether incidental monetary damages are permissible under (b)(2), the Court of Appeals for the Seventh Circuit held in Johnson v. Meriter Health Services Employee Retirement Plan that it understands Wal-Mart to foreclose "'individualized' awards of monetary damages, which we understand to be awards based on evidence specific to particular class members."  702 F.3d 364, 370 (7th Cir. 2012).  However, when "the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program, so that there is no need for notice and the concerns[7] expressed in Wal-Mart opinion" then a

_____

7.   The Court in Wal-Mart raised the issue that in (b)(2) actions "predominantly for money damages we have held that absence of notice and opt out violates due process."  Wal-Mart, 564 U.S. at 363 (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (2011)).  The Court acknowledged, however, that it has "never held that to be so where the monetary claims do not

district court can permit monetary damages in a (b)(2) class.
<u>Id.</u> at 372.[8]

Plaintiff in this action seeks the following:  a
declaration that AAG's policy not to credit short-term military
leave violates USERRA and was willful; a declaration that
American's policy not to pay employees who take short-term
military leave while paying those who take leave for jury duty
or bereavement violates USERRA and was willful; a declaration
that eligible earnings under the Plan must include leave taken
for short-term military obligations; a recalculation of past and
future profit share awards consistent with this decision; a
declaration that American pay its employees who take short-term
military leave comparable to leave taken for jury duty and
bereavement; an injunction for AAG to compute profit sharing
awards based on credit for short-term military leave; an
injunction for American to compute and compensate class members

---

predominate."  <u>Id.</u>

8.   The Seventh Circuit further explained that this
determination "is on the assumption that <u>Wal-Mart</u> left intact
the authority to provide purely incidental monetary relief in a
(b)(2) class action, as we think it did."  <u>Johnson</u>, 702 F.3d at
372.  Our Court of Appeals has not yet reached the issue of
whether incidental relief is still permitted in a (b)(2) class
following <u>Wal-Mart</u>.  The decision of the Seventh Circuit in
<u>Johnson</u>, however, has been widely cited by other courts
certifying claims for incidental monetary damages under (b)(2).
<u>See</u> <u>e.g.</u>, <u>Berry v. Schulman</u>, 807 F.3d 600 (4th Cir. 2015); <u>Amara
v. CIGNA Corp.</u>, 775 F.3d 510 (2d Cir. 2014); <u>see also</u> <u>Cunningham
v. Wawa, Inc.</u>, 387 F. Supp. 3d 529 (E.D. Pa. 2019).

for short-term military leave; liquidated damages from AAG and American pursuant to 38 U.S.C. § 4323(d)(1)(C); and pre-judgment and post-judgment interest on any monetary relief.[9]

As previously stated, this court deems certification of a class of American pilots proper under Rule 23(a). This proposed class primarily seeks declaratory and injunctive relief in declaring that AAG and American have violated USERRA by failing to credit or compensate short-term military leave and enjoining AAG and American to credit and compensate this short-term military leave the same as jury duty and bereavement leave in the future. This relief applies generally to the entire proposed class of American pilots who were all subject to the same leave policies at American and profit sharing distribution scheme under AAG's Profit Sharing Plan.

The additional monetary relief plaintiff seeks, namely profit share awards consistent with this decision and compensation for short-term military leave as well as liquidated damages,[10] is incidental to the request for declaratory and

_____

9.  Plaintiff also seeks attorney fees, expert witness fees, and court costs pursuant to 38 U.S.C. § 4323(h)(2).

10.  Plaintiff also seeks liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C) which permits the court to require the employer to pay an employee an amount equal to compensation for loss of wages or benefits because of the employer's failure to comply with this statute as liquidated damages "if the court determines that the employer's failure to comply with the provisions of this chapter was willful." These damages can be

injunctive relief and flows from the requested injunction.  If
plaintiff is successful, profit shares will be distributed and
paid leave will be compensated according to any declaration that
this court may enter.  This relief is not individualized, as was
the case in Wal-Mart.  In that case, plaintiffs sought backpay
for discrimination and would have had to each show their
entitlement to such backpay on a case-by-case basis.  Here
plaintiff and the rest of the proposed class need not provide
individualized evidence for their claims to profit share awards
and compensation for leave.  Instead, they will automatically be
entitled to this relief if defendants are found to have violated
USERRA and must therefore treat short-term military leave the
same as they do jury duty and bereavement leave.

In addition, monetary relief can be calculated on an
objective basis and is not dependent on any subjective
difference in circumstance.  Should the court find that
defendants violated USERRA, the amount of credit for profit
sharing or paid leave each class member is entitled to can be
readily calculated by applying his or her rate of pay to the
amount of short-term leave taken and would not require
individual fact finding.  These calculations can all be made by
computer.  See Johnson, 702 F.3d at 372.  No additional hearings

---

calculated by a computer.

would be necessary to determine this relief.  Moreover notice is
not needed to determine to what each class member would be
entitled should plaintiff be successful in this suit.
Defendants' actions are applicable to the class and can
therefore be addressed on a class-wide basis.

Since defendants have refused to act on grounds that
apply to a class of American pilots as a whole so that final
injunctive relief is necessary and plaintiff's request for
monetary damages is incidental to the declaratory and injunctive
relief sought, certification of a class of American pilots under
Rule 23(b)(2) is proper.  As the class may be certified under
Rule 23(b)(2), the court need not determine whether
certification is appropriate under Rule 23(b)(1) or (b)(3).  Our
Court of Appeals has explained that "an action maintainable
under both (b)(2) and (b)(3) should be treated under (b)(2) to
enjoy its superior res judicata effect and to eliminate the
procedural complications of (b)(3), which serve no useful
purpose under (b)(2)."  Stoetzner v. U.S. Steel Corp., 897 F.2d
115, 119 (3d Cir. 1990).

V

Finally, plaintiff must also show by the preponderance
of the evidence that the class is ascertainable.  See Marcus,
687 F.3d at 592-93.  The class must be "defined with reference
to objective criteria," and there must be "a reliable and

31

administratively feasible mechanism for determining whether
putative class members fall within the class definition." Hayes
v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2012).

Plaintiff asserts, and defendants do not disagree,
that members of the proposed class can be readily determined
based on defendants' records, some of which have already been
produced.  American has already identified all those who took
military leave between 2013 and the date of production as well
as the dates on which that leave was taken.  AAG has produced
similar records.  These employees are identifiable by a unique
employee identification number.  The court therefore agrees that
the members of the proposed class are readily ascertainable.

VI

Plaintiff has met the requirements of Rule 23(a) and
(b)(2) for certification of a class of current and former
American Airlines, Inc. pilots.  The court will divide this
approved class of American pilots into a subclass for each of
plaintiff's three claims.  See Sullivan v. DB Invs., Inc., 667
F.3d 273 (3d Cir. 2011).

First, this court certifies a subclass with regard to
Count I for AAG's alleged violation of § 4316 as relates to the
Profit Sharing Plan.  This subclass will consist of current and
former American Airlines, Inc. pilots who:  participated at some
point in the AAG Global Profit Sharing Plan since its inception

on January 1, 2016; while participants in the Plan, were employed in the United States or were a citizen or national or permanent resident of the United States and employed in a foreign country; took short-term military leave in a year during which they were entitled to receive an award under the Plan; and were not credited or imputed earnings for this short-term military leave.

Second, the court certifies a subclass with regard to Count II for breach of contract of those American pilots included in the subclass in Count I who, from January 1, 2016 through the date of judgment in this action, are or were eligible to participate in the American Airlines, Inc. 401(k) Plan for Pilots and subject to taxation in the United States.

Third, the court certifies a subclass with regard to Count III of all current and former American Airlines, Inc. pilots who took short-term military leave while employed at American at any time from January 1, 2013 through the date of judgment in this action and were not paid for that leave equal to what they would have received had they taken leave for jury duty or bereavement.[11]

---

11.  Excluded from the certified class are any American pilots responsible for administering the Profit Sharing Plan and former or current American pilots who have obtained individual judgments against or settlements with AAG or American in USERRA profit sharing actions for failure to credit or compensate short-term military leave.