IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN, et al.        :        CIVIL ACTION
                                :
          v.                    :
                                :
AMERICAN AIRLINES GROUP,        :        NO. 18-4040
INC., et al.                    :

MEMORANDUM

Bartle, J.                                    August 29, 2024

          Plaintiff James P. Scanlan, an American Airlines pilot
and retired Major General in the United States Air Force
Reserve, and Carla Riner, an American Airlines pilot and a
Brigadier General in the Delaware Air National Guard, have
brought this class action against that defendants American
Airlines Group, Inc. and American Airlines, Inc. under the
Uniformed Services Employment & Reemployment Rights Act, 38
U.S.C. § 4301, et seq. ("USERRA") and for breach of the profit
sharing plan initiated and established by defendants.  The
second amended complaint alleges that defendants American
Airlines Group, Inc. and American Airlines Inc. violated Section
4316(b)(1) of USERRA and the terms of the profit sharing plan
because they pay or credit employees for their imputed earnings
when on jury duty and bereavement leave but not when employees
are on short-term military leave.

          Before the court is the motion of defendants American
Airlines Group, Inc. and American Airlines, Inc. for summary

judgment on plaintiffs' request for liquidated damages under
USERRA (Doc. # 173) and defendants' motion to strike plaintiffs'
jury trial for any claims seeking non-liquidated damages under
USERRA (Doc. # 201).

                                I

        This action has a prolonged history.  After discovery,
the court certified several subclasses under Rule 23(b)(2) and
23(b)(3) of the Federal Rules of Civil Procedure.  See Order,
Scanlan v. Am. Airlines, Grp., Inc., Civ. A. No. 18-4040 (E.D.
Pa. May 3, 2022) (Doc. # 166).  This court thereafter granted
the defendants' motion for summary judgment on all claims.  Our
Court of Appeals affirmed on the breach of contract claim
relating to the profit sharing plan but reversed on the USERRA
claims.  It held that these latter claims must be resolved by
the factfinder.  Scanlan v. Am. Airlines Grp., Inc., 102 F.4th
164, 70 (3d Cir. 2024).  In granting the motion for summary
judgment, this court did not reach the issue related to
liquidated damages and did not have before it at that time the
motion to strike the jury demand.  These issues are now ripe for
consideration.

                                II

        Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate "if the movant shows that there
is no genuine dispute as to any material fact and the movant is

                              -2-

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). The court views the facts and draws all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient evidence for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id. In addition, Rule 56(e)(2) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

III

The court turns first to defendants' motion for summary judgment on the issue of liquidated damages.

USERRA provides in part for the following relief:

> [T]he court may require the employer to pay
> the person an amount equal to the amount
> referred to in subparagraph (B)[1] as
> liquidated damages, if the court determines
> that the employer's failure to comply with
> the provisions of this chapter was willful.

38 U.S.C. § 4323(d)(1)(C).

The Supreme Court has held that a violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute[.]"  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  The Supreme Court made clear that a finding of willfulness cannot be based on negligence or a completely good faith but incorrect assumption that there was compliance with the relevant statute in all aspects.  Id. at 134-35.

Plaintiffs contend that defendants acted willfully because they were advised by plaintiffs of their violation of USERRA and then did nothing.  As evidentiary support, plaintiffs rely first on defendants' Answer to Interrogatory # 13.  In that interrogatory, plaintiff asked defendants to show how they responded to learning of plaintiffs' allegation concerning USERRA and how defendants became aware of and responded to those complaints.  Defendants simply answered they became aware of

---

1.   Subparagraph (B) reads: "The court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter."

plaintiff's claim "when he filed the amended complaint on January 7, 2019."

Plaintiffs also cite an e-mail chain and deposition testimony to support its position that defendants' violation of USERRA was willful.  Plaintiffs assert that defendants' violation of USERRA was raised by plaintiffs' union representatives in 2017 with Todd Jewell, defendants' managing director of labor relations and that defendants took no action. The e-mail chain consists of messages between plaintiff James Scanlan and various pilots, including representatives on their Negotiating Committee which interacted with the defendants.  The e-mails are dated from February 2, 2017 through March 31, 2017. The e-mails focus almost exclusively on the defendants' profit sharing plan which was a benefit established by the defendants but was not a benefit negotiated as a result of collective bargaining.  While USERRA was mentioned in passing in some of the e-mails, any mention with one exception was tied to the discussion of the profit sharing plan.  Significantly, there is absolutely nothing in the e-mails to demonstrate that any representatives of the pilots raised an alleged violation of USERRA with any representatives of the defendants during the period of the e-mails or at any other time before this lawsuit was filed.

In his deposition to which plaintiffs cite, Jewell testified that he did not recall if he consulted with an attorney concerning a USERRA violation during this period.  In any event, the question to him appears to relate to the terms of the profit sharing plan – not USERRA.

Plaintiffs' references to the profit sharing plan are now irrelevant since the profit sharing plan is no longer a part of this action.  As noted above, the Court of Appeals affirmed this court's grant of summary judgment in favor of defendants on this claim.

Plaintiffs, of course, have the burden of proof on the issue of willfulness.  It is the plaintiffs who must come forward at this stage with sufficient evidence to show that a genuine dispute of material fact exists.  Their contention that defendants have advanced no evidence of any kind regarding their efforts to comply with USERRA does not help plaintiffs defeat defendants' motion for summary judgment.  See Harter v GAF Corp., 967 F.2d 846, 851-52 (3d Cir. 1992).  The absence of any evidence of willfulness does not carry the day for plaintiffs.

In sum, plaintiffs have presented no evidence to establish willfulness.  Their citations to the record provide nothing to support their assertion that defendants knew that they were violating USERRA or that they acted in reckless disregard of whether their position violated USERRA.

The critical issue under USERRA pending before the court is whether short term military leave, for which employees receive no pay or benefits from defendants, is comparable to jury duty and bereavement leave for which employees do receive pay and benefits.  The Court of Appeals in this action ruled that the issue of comparability is for the factfinder.  It explained that there is evidence that jury duty and military leave have a common purpose of civic duty but that there is also evidence of differences as jury duty is compulsory and military leave is not compulsory.  The Court observed that the factfinder will have to weigh the evidence as to whether military duty and bereavement leave have a common public purpose.  As part of the comparability analysis, the factfinder will need to weigh the similarities and the distinctions concerning duration, frequency, and the employees' control with respect to these various types of leave.  Scanlan v. American Airlines Grp., Inc., 102 F.4th 164, 170 (3d Cir. 2024).  Finally, the factfinder must then decide if military leave compares or contrasts with jury duty and bereavement leave.

Plaintiffs have pointed to no case where any factfinder has found or any court has determined that bereavement leave or jury duty is comparable to military leave. On the contrary, there have been district judges who have held that military leave is not comparable to bereavement leave or

-7-

jury duty or that plaintiffs such as those here are not entitled to relief under USERRA as a matter of law.  See e.g., Order, White v. United Airlines, Civ. A. No. 19-114 (N.D. Ill. Mar. 24, 2024) (Doc. # 127); White v. United Airlines, 416 F. Supp. 3d 736 (N.D. Ill. 2019); Travers v. Fed Ex Corp., 473 F. Supp. 3d 421, 434 (E.D. Pa. 2020), rev'd, 8 F.4th 198 (3d Cir. 2021); Hoefert v. American Airlines, Inc., 438 F. Supp. 3d 724, 742 (N.D. Tex. 2020); Petty v. Metro. Gov't of Nashville-Davidson Cnty., Civ. A. No. 05-680, 2006 WL 3333509 (M.D. Tenn. Nov. 16, 2006), rev'd, 538 F.3d 431 (3d Cir. 2008), cert. denied, 556 U.S. 1165 (2009); Scanlan v. American Airlines Grp., Inc., 638 F. Supp. 3d 453 (E.D. Pa. 2022), rev'd, 102 F.4th 164 (3d Cir. 2024).

These decisions, even if wrong, further negate plaintiffs' argument that defendants' similar interpretation of USERRA constituted willful misconduct.  With so many courts ruling as they have, it is not reasonable to conclude that defendants knew they were wrong or acted in reckless disregard of whether their conduct was prohibited by USERRA.

On the record before the court, plaintiffs have advanced no evidence to prove willfulness on the part of defendants, and thus defendants cannot be held liable for

liquidated damages.  Accordingly, defendants are entitled to summary judgment on this issue.[2]

IV

Defendants concede that plaintiffs would be entitled to a jury trial for liquidated damages had that remedy remained available in this case but argue that the right to a jury trial extends no further.  The defendants now move to strike plaintiff's demand for a jury trial on claims for non-liquidated damages with respect to loss of wages and benefits.[3]

In addition to liquidated damages, USERRA includes the following remedies in Section 4323:

> (d)(1)    In any action under this section, the court may award relief as follows:
>
> (A)   The court may require the employer to comply with the provisions of this chapter.

---

2.   Plaintiffs rely heavily on <u>Serricchio v. Wachovia Securities LLC</u>, 658 F. 3d 169 (2d Cir. 2011), in which the Court of Appeals for the Second Circuit concluded that defendant had willfully violated USERRA in connection with the reinstatement of the plaintiff following his military service.  Among other statutory violations, the defendant knowingly delayed his reemployment for four months after he had reapplied despite USERRA's requirement that an employee under such circumstances "shall be promptly reemployed."  <u>Id.</u> at 191-92.  This is a far cry from the facts presented by the plaintiffs here.

3.   The Court of Appeals in its recent opinion, referred to the factfinder as the jury.  However, that Court did not have before it the question as to whether the plaintiffs were entitled to a jury trial and in this court's view did not decide, despite its terminology, whether a jury or non-jury trial is warranted. <u>See, e.g.</u>, <u>Scanlan</u>, 102 F.4th at 170.  All parties agree that the issue was not decided on appeal.

-9-

(B)   The court may require the employer
to compensate the person for any loss of
wages or benefits suffered by reason of such
employer's failure to comply with the
provisions of this chapter.

. . .

(2)(A) Any compensation awarded under
subparagraph (B) . . . shall be in addition
to, and shall not diminish, any of the other
rights and benefits provided for under this
chapter.

(e)  Equity powers. – The court shall use,
in any case in which the court determines it
is appropriate, its full equity powers,
including temporary or permanent
injunctions, temporary restraining orders,
and contempt orders, to vindicate fully the
rights or benefits of persons under this
chapter.

38 U.S.C. § 4323.

In this action, plaintiffs have sued the defendants

for failing to pay them wages and provide them with benefits

while they were on short-term military leave.  Plaintiffs seek

declaratory, injunctive, and monetary relief for themselves and

the members who comprise the certified classes under Rule

23(b)(2) and Rule 23 (b)(3) of the Federal Rules of Civil

Procedure.

A party has the right to a jury trial when guaranteed

by the Seventh Amendment to the Constitution or by statute.[4]

_____

4.   The Seventh Amendment has not been incorporated into the
due process clause of the Fourteenth Amendment.  McDonald v.
Chicago, 561 U.S. 742, 765 n.13 (2010).

Tull v. United States, 481 U.S. 412, 417 n.3 (1987).  The
Seventh Amendment provides that "[i]n suits at common law, where
the value in controversy shall exceed twenty dollars, the right
of trial by jury shall be preserved[.]"  The Amendment preserves
the right to a jury trial as it existed when the Amendment was
adopted in 1791.  Curtis v. Loether, 415 U.S. 189, 191 (1974).
The Amendment mirrors the situation as it existed at that time
in England where a jury trial was customary in the law courts
but not required in courts of equity and admiralty.  The right
to a jury trial applies not only to common law claims but also
to claims enforceable under a statute if legal rights and
remedies are created.  Id. at 193-194.

        To determine whether a statutory claim is subject to a
jury trial, it must likewise be determined whether it is more
akin to an action tried in English law courts or to suits in the
courts of equity or admiralty.  The court must then examine the
remedy sought, that is whether it is legal or equitable in
nature.  In resolving whether a party is entitled to a jury
trial under the Seventh Amendment, the characterization of the
relief is more important than finding whether the claim is
analogous to one heard in the law courts of England in the late
eighteenth century.  As The Supreme Court stated in Curtis v.
Loether,

> But when Congress provides for enforcement
> of statutory rights in an ordinary civil
> action in the district courts, where there
> is obviously no functional justification for
> denying the jury trial right, a jury trial
> must be available if the action involves
> rights and remedies of the sort typically
> enforced in an action at law.

Id. at 195.

In Dairy Queen Inc. v. Wood, 369 U.S. 469 (1962), the Supreme Court faced the question whether the district court had erred in striking the defendant's demand for a jury trial. The action involved a licensing agreement involving the trademark "Dairy Queen." The plaintiffs, the owners of the trademark, claimed that the defendant had materially breached the agreement by defaulting on the periodic payments due to plaintiffs. When defendant continued to use the trademark despite cancellation of the defendant's right to do so, plaintiffs filed suit. Plaintiffs sought temporary and permanent injunctive relief to prevent future use of the trademark, an accounting to determine the amount of money due, and an injunction pending an accounting. Id. at 475. The Supreme Court held that defendant was entitled to a jury trial on the claim for money damages for breach of contract and for trademark infringement. Id. at 479-80. The fact that plaintiffs used the term "accounting" in the complaint was of no moment as the right to a jury trial did not depend on the words used in the pleading. Id. The Supreme

Court further held that the right to a jury trial may not be lost even where legal issues may be characterized as incidental to equitable issues.  Id.

The most analogous precedent in the Third Circuit on the question whether plaintiffs are entitled to a jury trial is Gruca v. U.S. Steel Corp., 495 F.2d 1252 (3d Cir. 1974).  There, plaintiff, a veteran, brought suit for legal and equitable relief under the Military Selective Service Act ("MSSA") of 1967.  See 50 App. U.S.C. § 459 (codified at 50 U.S.C. § 1518 (1970)).  Plaintiff had worked for the defendant as a laborer for several years before entering military service.  After his discharge and return to work, he claimed he was denied the seniority to which he was entitled.  This denial delayed his ability to obtain a superior and more lucrative position as a crane operator.  He sought both adjustment to his seniority status and back pay.  Gruca, 495 F.2d at 1254.  The Court had to decide if his claims were time-barred.  To determine this question, the Court delved into whether plaintiff sought legal relief as to which the state statute of limitations would apply or whether he sought equitable relief as to which the doctrine of laches would govern.

The court held that the plaintiff's "arsenal of remedies under [Section] 459 [of MSSA] is not limited solely to those which are equitable in nature."  Id. at 1257.  Section 459

-13-

gave the court the power to require the employer "to comply with
. . . [certain provisions of the section] and to compensate such
person for any loss of wages and benefits . . ."  The Court
understood this statutory language to allow the plaintiff to
seek both legal and equitable relief.  Id.  Since the court
concluded that plaintiff's claim could not be characterized "as
being exclusively in equity to enforce rights cognizable only in
equity," the state statute of limitations, and not the doctrine
of laches, applied to his claim seeking legal relief.  Id.  It
cited Dairy Queen, Inc., supra, in support.[5]

MSSA was the predecessor to USERRA.  Travers, 8 F.4th
at 200-01.  The provision of USERRA providing remedies to a
plaintiff is virtually identical to that in MSSA, except that
USERRA has added the remedy of liquidated damages when the
defendants' conduct is willful.  As noted above, MSSA and USERRA
provide:

---

5.   As it turned out, the Court ultimately held that the time
limit under the statute of limitations and under the doctrine of
laches was the same.  Gruca, 495 F.2d at 1258.

|                MSSA                |               USERRA                |
|-----------------------------------|-------------------------------------|
|       (50 App. U.S.C. § 459)      |       (38 U.S.C. § 4323(1)(B))      |
|                                   |                                     |
| The district court . . .          | The court may require               |
| shall have power . . .            | the employer to                     |
| To require such employer          | compensate the person               |
| to comply with such               | for any loss of wages or            |
| [aforesaid] provisions            | benefits suffered by                |
| and to compensate such            | reason of such                      |
| person for any loss of            | employer's failure to               |
| wages or benefits                 | comply with the                     |
| suffered by reason of             | provisions of this                  |
| such employer's unlawful          | chapter.                            |
| action.                           |                                     |

Our Court of Appeals has held that the claim for payment of money under MSSA is a legal claim seeking a remedy which is legal in nature. Gruca, 495 F.2d at 1257-28. Accordingly, such a claim for payment of money for lost wages under USERRA is likewise a legal claim in nature for which the plaintiffs are entitled to a jury trial. Plaintiffs here, like the plaintiff in Gruca, also pleaded equitable claims for relief. These claims are intermingled with those for payment of money damages. The fact that equitable claims are in the picture does not override the right of plaintiffs to a jury trial for loss of wages and benefits.

The defendants argue that the reasoning of Gruca has been superseded by later congressional amendments related to the MSSA and to USERRA which have eliminated any limitations period for claims brought under these statutes. Defendants maintain

-15-

that such changes incorporate the intent of Congress to fashion claims under USERRA and the MSSA as equitable in nature and to deny plaintiffs a right to a jury trial.

Defendants cite a 1974 Senate Report on a proposed amendment to the MSSA, which states: "Providing further, that no State statute of limitations shall apply to proceedings under this section."  The report goes on to say that "[t]his amendment would clarify the original intent of Congress that all reemployment rights actions under the Act are to be governed by equitable principles."  The report then referenced two Fifth Circuit decisions which applied a short state statute of limitations.  It also identified <u>Gruca</u>, which was described as applying "a state statute of limitations to the monetary portion of the veteran's claim, but applied the equitable doctrine of laches to his claim for seniority adjustment."  In support of the elimination of state statutes of limitations to bar claims, the report concluded, "[t]hese [Court of Appeals] holdings operate to the detriment of the veteran who must rely, in most cases, on the assistance of the Government to vindicate his claim."

The Veterans' Benefits Improvement Act, enacted in 2008, amended USERRA.  Pub. L. No. 110-389 (110th Cong. 2008).  The Act removed the prior language first included in MASSA and later in USERRA that "no state statute of limitations shall

-16-

apply."  In its place, USERRA now excludes any limitations

period, regardless of the source.  USERRA states:

> If any person seeks to file a complaint
> . . . with . . . a Federal or State court
> under this chapter alleging a violation of
> this chapter, there shall be no limit on the
> period for filing the complaint . . . .

38 U.S.C. § 4327(b).

This court agrees with the cogent dissent in <u>Troy v.</u>

<u>City of Hampton</u> that the purpose of prohibiting the defense of

state statutes of limitations in MSSA was simply to prevent

short deadlines from denying veterans the salutary benefits of

that law.  756 F.2d 1000, 1008-09 (4th Cir. 1985) (Ervin, J.,

dissenting).  USERRA in 2008 simply contained reworded language

to the same if not broader effect.

While the 1974 Senate Report, to the extent relevant,

states, as noted above, that "reemployment rights actions [under

MSSA] should be governed by equitable principles," it is not in

this court's view an expression of the intent of Congress that

veterans were not to have a right to a jury trial for loss of

wages and benefits.  If Congress had intended that result, it

knows how to say so.  The first definition of "equitable" in

<u>Black's Law Dictionary</u> (12th ed. 2024) is "[j]ust; consistent

with principles of justice and right."  The meaning of

"equitable principles" as used in the 1974 report is not

synonymous with the eighteenth century meaning of equitable

-17-

claims and remedies for which a party must submit to a non-jury trial.  In short, Congress has not invalidated the right to a jury trial in USERRA and has not superseded <u>Gruca</u> on this issue.

Defendants have also cited a number of cases for back pay under Title VII of the Civil Rights Act, the Americans with Disabilities Act of 1990, and 42 U.S.C. § 1983 in support of their argument that plaintiffs' claims under USERRA are equitable.  <u>See, e.g.</u>, <u>Staub v. Proctor Hosp.</u>, 532 U.S. 411, 417 (2011); <u>Spencer v. Wal-Mart Stores, Inc.</u>, 469 F.3d 311, 317 (3d Cir. 2006); <u>Gurmankin v. Costanzo</u>, 626 F.2d 1115, 1123 (3d Cir. 1980).  There is no need to delve into the intricacies of these cases as the statutory language is not the same as in the MSSA and USERRA.  Our Court of Appeals, albeit many years ago, has spoken in <u>Gruca</u> as to the language at issue here.  This court must abide by that holding and not circumvent it by relying on an analysis of different statutes which have different purposes or on what other circuits may have concluded.

Finally, the court notes that it has certified classes under Rule 23(b)(2) and Rule 23(b)(3).  These classifications do not control whether a party is entitled to a jury trial under the Seventh Amendment.  <u>See, e.g.</u>, <u>Randall v. Rolls-Royce</u>, 637 F.3d 818, 825 (7th Cir. 2011).

Accordingly, the motion of defendants to strike plaintiffs' demand for a jury trial will be denied.

-18-