**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES P. SCANLAN, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Civil Action No. 2:18-cv-04040-HB |
| -vs.- | |
| AMERICAN AIRLINES GROUP INC., and AMERICAN AIRLINES, INC., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR BIFURCATION OF TRIAL & ADDRESSING ISSUES REQUESTED AT THE MARCH 11, 2025 STATUS CONFERENCE**

Plaintiff respectfully submits this memorandum, as requested by the Court at the March 11, 2025 status conference, to address how this case could proceed on a bifurcated basis and in support of Plaintiff's motion to bifurcate the trial. Given the continued delay by the United States Department of Defense in producing records that are necessary to calculate damages and the length of time that this case has been pending, proceeding with a bifurcated trial is the way to proceed that best secures the just, speedy, and inexpensive determination of this action as required by Rule 1 of the Federal Rules of Civil Procedure. The trial in this case could and should be bifurcated either by separating liability from damages (or any monetary relief) or trying all issues except the issue of the amount of any reduction due to pay by the military as either are allowed under the Seventh Amendment (even if tried by separate juries) and under Third Circuit precedent.

## BACKGROUND

Plaintiff James Scanlan filed this case more than 6 years ago in September 2018. ECF No. 1. After denying Defendants' motion to dismiss and their request for interlocutory appeal, this Court entered scheduling orders beginning in August 13, 2019 that ordered the parties to "proceed with class action and merits discovery *excluding the issue of damages*." ECF No. 64 (Second Scheduling Order) ¶ 1 (emphasis added); ECF No. 68 (Third Scheduling Order) ¶ 3 (emphasis added). Unlike in some of the other cases in which the Parties jointly sought records from the United States Department of Defense ("DOD") and the United States Department of Homeland Security ("DHS"), Defendants in this case did not seek to subpoena records from DOD or DHS, which they could have done while discovery on liability and class was allowed if they believed that they were relevant to class certification or liability. *See* Declaration of Michael Scimone ("Scimone Decl.") ¶¶ 4, 6.

1

As Plaintiff considered the DOD and DHS records *only relevant* to the issue of damages, and specifically the amount of the reduction to calculate differential pay, Plaintiff was prevented from issuing subpoenas until the issuance of the Scheduling Order dated October 19, 2021. ECF No. 127. That Order provided: "*All fact discovery* shall proceed forthwith and continue in such a manner as will assure that all requests for, and responses to, discovery will be served, noticed, and completed by March 31, 2022." *Id.* (emphasis added). Less than two months later, on December 2, 2021, "Plaintiff [sought] to subpoena certain categories of documents from the United States Department of Defense related to members of the Count III Subclass." ECF No. 128 ¶ C. Plaintiff explained: "As the remedy Plaintiff seeks for Count III is differential pay – the difference between compensation Plaintiff alleges that American ought to have paid members of the Count III Subclass and their actual military pay – Plaintiff believes these documents and information are *relevant to the alleged damages in this action*." *Id.* (emphasis added). On that basis, the Court found good cause to issue the subpoenas. ECF No. 129 ¶ 3.

After the DOD had still not produced records in response to the subpoena and after a conference with counsel, this Court entered an order on April 18, 2022 clarifying that the "deadlines for any expert reports and summary judgment motions and briefs are not applicable as to information to be provided by the Department of Defense *as to damages*." ECF No. 159 ¶ 8 (emphasis added). In short, that Order made clear that the only issue for which the deadline for discovery remained open was as to damages based on records to be produced by the DOD and the deadline to seek discovery for any other purpose had passed. *See id.*

At the time that this Court entered summary judgment for Defendants, the subpoenas to DOD and DHS remained outstanding without production of any documents. After the Third Circuit reversed summary judgment on Counts I and III and remanded the case, Plaintiff again

sought to subpoena DOD and DHS. ECF No. 209. Once again, Plaintiff explained the purpose of seeking these records was only for damages: "Because the remedy Plaintiff seeks for Count III is differential pay—the difference between compensation Plaintiff alleges American ought to have paid members of the Count III Subclasses and their actual military pay—the Court has previously held that good cause existed to issue subpoenas to the DOD." *Id.* at 1-2 (citing orders).

Unfortunately, the DOD and DHS have still not produced documents responsive to the subpoenas. Declaration of R. Joseph Barton ("Barton Decl.") ¶ 2. Based similar subpoenas issued in on other similar cases and the existence of at least one other subpoena seeking similar records for even longer time period, it is unlikely that DOD will produce documents in the near future. Scimone Decl. ¶¶ 5, 7. Even if they do produce responsive data within the next six months, it is likely that the analysis of the data by the experts, expert reports and expert discovery will take another several months. *Id.* ¶ 5. As such, the trial of this case should be bifurcated to proceed with the issues that can be presented at trial now.

## ARGUMENT

**I.     Rule 42 Affords Significant Discretion Whether and How To Bifurcate A Trial**

Rule 42 of the Federal Rules of Civil Procedure provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. Rule 42(b); *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 n.5 (3d Cir. 1997) (citing 9 Charles A. Wright et al, *Federal Practice and Procedure* § 2387 (1995)). "It is well-established by a wealth of case law that ultimately the question of whether to conduct separate trials under Rule 42(b)

3

should be, and is, a matter left to the sound discretion of the trial court on the basis of the circumstances of the litigation before it." 9A Fed. Prac. & Proc. Civ. § 2388.

First, the Third Circuit has advised that "[s]everance of the question of liability from other issues can 'reduce the length of trial, particularly if the severed issues [are] dispositive of the case, and can also improve comprehension of the issues and evidence.'" *In re Paoli*, 113 F.3d at 452 n.5 (quoting *Manual for Complex Litigation, Third* § 21.632, at 119 (1995)) (alterations in original). Thus, liability for this case can be tried separately from damages.

Second, the Third Circuit determined that trying parts of liability to two different juries would not violate the Seventh Amendment. In *In re Paoli R.R. Yard PCB Litigation*, a multi-plaintiff case alleging harms from exposure to toxic chemicals, the district court ordered that the trial would proceed in two phases. *In re Paoli,* 113 F.3d at 452. Phase I addressed "'issues of exposure, causation, medical monitoring, and property damages.' If a jury returned a verdict favorable to the plaintiffs, Phase II would determine the defendants' liability for all claims, and the amount, if any, of punitive damages." *Id.* After losing at trial on Phase I, plaintiffs argued that the district court's bifurcation of the trial violated their right to trial by jury as guaranteed by the Seventh Amendment because the jury would have to make foreseeability determinations when considering the causation issues of Phase I, whereas a different jury would have to make the same determinations when considering the negligence issues of Phase II. *Id.* at 452 & n.5. The Third Circuit squarely rejected the argument that a first trial with one jury addressing some liability issues and a second trial addressing other liability issues "conducted before a different jury" would have "offended the Seventh Amendment." *Id.* at 452 & n.5. As the Third Circuit explained, "the Seventh Amendment requires that, when a court bifurcates a case, it must 'divide issues between separate trials in such a way that the same *issue* is not reexamined by different

4

juries.'" *Id.* at 452 & n.5 (emphasis added). The *Paoli* plaintiffs argued that "both Phase I causation issues and Phase II negligence issues would require the jury to make foreseeability determinations." *Id.* Not only was that issue not addressed in Phase I, but the Third Circuit explained that merely because "certain evidentiary items might have been relevant to both phases of trial" does not prohibit bifurcation because the Seventh Amendment "prohibition is not against having two juries review the same evidence, but rather against having two juries decide the same essential issues." *Id.* (citing *In re Innotron Diagnostics,* 800 F.2d 1077, 1086 (Fed. Cir. 1986)). Thus, the Third Circuit decision in *Paoli* illustrates that it would likewise not violate the Seventh Amendment for one jury to determine the amount of damages before offset or reduction and the second jury to determine the amount of the offset or reduction.

"Trying a bifurcated claim before separate juries does not run afoul of the Seventh Amendment," so long as a given factual issue is "not [ ] tried by different, successive juries." *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 169 n.13 (2nd Cir. 2001) *overruled in part on other grounds by Wal-Mart v. Dukes*, 564 U.S. 338 (2011); *see Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1127 (7th Cir. 1999) (explaining the same). As the Second Circuit explained, utilizing bifurcation in this manner "calls for sound case management, not [outright] avoidance of the procedure." *Robinson*, 267 F.3d at 169 n.13 (quoting Steven S. Gensler, *Bifurcation Unbound,* 75 Wash. L.Rev. 705, 736–37 (2000) (footnotes omitted)). Sound case management requires the following:

> First, the court needs to carefully define the roles of the two juries so that the first jury does not decide issues within the prerogative of the second jury. Second, the court must carefully craft the verdict form for the first jury so that the second jury knows what has been decided already. If the first jury makes sufficiently detailed findings, those findings are then akin to instructions for the second jury to follow.

5

*Id.* As other Circuits have likewise recognized, the issues decided by the first jury simply become "law of the case" and are removed from consideration by the second jury. *Houseman*, 171 F.3d at 1127 (citing *In re Innotron Diagnostics*, 800 F.2d at 1085).

Given the unavailability of the records from the Department of Defense, Plaintiffs propose that this case can be bifurcated in at least one of two ways: First, the Court could simply bifurcate liability from damages or other monetary relief. Second, the Court could bifurcate the issue of the amount of any reduction of damages due to pay by the military and try all other issues.

## II.     The Issue of Liability Could Readily Be Tried Separate From Damages

The core issue of liability in this case turns on whether all or some amount of short-term military leave (defined as 16 days or fewer) is comparable to two types of non-military leave for which American provides paid leave – jury duty leave and bereavement leave. *See Scanlan v. Am. Airlines Grp., Inc.*, 102 F.4th 164, 168 (3d Cir. 2024);[1] *see* Def. Mem. in Support of Summary Judgment (ECF No. 173-1) at 1 ("To prevail, Plaintiffs must prove that jury-duty leave and bereavement are 'comparable' to military leave for pilots at American.") & 4 (same). The Second Amended Complaint alleges that (1) American violated USERRA § 4316(b)(1) by failing to pay pilots for periods of short-term military leave despite paying pilots for periods of jury-duty and bereavement leave; and (2) AAG violated USERRA 4316(b)(1) by failing to credit pilots under the profit-sharing plan with earnings during periods of short-term military leave despite crediting earnings from periods of jury-duty and bereavement leave. *Scanlan,* 102 F.4th at 168; Second Amend. Compl. (ECF No. 81-3) ¶¶ 74-82 (Count I) and ¶¶ 94-101 (Count III).

---

[1] As the Third Circuit has already held that rights and benefits include pay while on leave, that issue has been resolved as a legal matter. *Id.*

The Third Circuit held that "[c]omparability is critical to the pilots' USERRA claims." *Scanlan*, 102 F.4th at 170. It concluded that the issue of comparability was a question of fact for the jury. *Id.* The Third Circuit found that there was sufficient evidence based on the record before it that "a reasonable jury could find that short-term military leave is comparable to jury-duty leave or bereavement leave based on the three factors mentioned in the implementing regulation [duration, purpose, and control], and any other factors it may consider," and recited the evidence on each of the enumerated factors. *Id.* at 168 & 170-171. Of course, as there was no evidence of damages in the record, the Third Circuit made these evaluations about the sufficiency of Plaintiffs' evidence without considering any evidence about damages. *See id.* That the Third Circuit was able to determine that Plaintiffs had sufficient evidence on liability without considering any evidence of damages demonstrates that the core remaining issue of liability can be successfully and properly bifurcated from that of damages.

As this Court itself concluded on class certification, "plaintiff and the rest of the proposed class need not provide individualized evidence for their claims to profit share awards and compensation for leave. Instead, they will automatically be entitled to this relief if defendants are found to have violated USERRA and must therefore treat short-term military leave the same as they do jury duty and bereavement leave." *Scanlan v. Am. Airlines Grp., Inc.*, 567 F.Supp.3d 521, 536 (E.D. Pa. 2021). That observation remains true.[2]

Finally, it would promote judicial efficiency to bifurcate the trial because once the jury

---

[2] Despite Defendants' suggestion of a potential motion for decertification, they have made no such motion because they have no evidence to do so as illustrated by their erroneous suggestion that they might somehow utilize evidence from another case involving another airline (Southwest) as a basis for their motion for decertification. Not only would such evidence not be relevant to this case, but this evidence was not produced in discovery in this case, Plaintiff here has had no opportunity in this litigation to rebut it, and Defendants should be prevented from relying on it including pursuant to Fed. R. Civ. R. 37(c).

7

decided which length of leaves were comparable, then there would be no need to determine damages or whether there was any reduction for miliary pay for leaves that were longer than the length of leave that the jury determined was comparable. For example, the Third Circuit noted that "[a] majority of each type of leave—65.2% of short-term military leaves, 87.2% of jury-duty leaves, and 97% of bereavement leaves—lasted between one and three days." *Scanlan,* 102 F.4th at 169 n.5. If a jury were to determine that only military leaves of up to three days were comparable to jury and bereavement leave, then there would no need to address damages or any "offset" or reduction for pay from the military for leaves longer than three days.

### III. The Issue of the Amount of Reduction Based on Military Pay Can Be Tried Separately From All Other Issues in the Case

Once a jury has decided liability, as this Court explained, Plaintiffs and the Class would be entitled to "declaratory and injunctive relief in declaring that AAG and American have violated USERRA by failing to credit or compensate short-term military leave and enjoining AAG and American to credit and compensate this short-term military leave the same as jury duty and bereavement leave in the future." *Scanlan,* 567 F.Supp.3d at 536. This Court also explained that the amount of "monetary relief can be calculated on an objective basis and is not dependent on any subjective difference in circumstance." *Id.* If a jury finds that defendants violated USERRA (i.e. by determining that military leave is comparable to either jury leave or bereavement leave and the duration of leave that is comparable),[3] "the amount of credit for profit

---

[3] "[A]n employee on military leave is entitled to "the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services.'" *Scanlan,* 102 F.4th at 168 (quoting 20 C.F.R. § 1002.150(b)). As a result, if a jury determines that both jury leave and bereavement leave is comparable to military leave, Plaintiff and the Class would be entitled to the benefits afforded to the most favorable. As bereavement is limited to 3 days and if a jury were to determine that the appropriate durational comparator for jury leave was longer, then Plaintiffs and the Class would be entitled to paid military leave for the comparable length of jury duty.

8

sharing or paid leave each class member is entitled to can be readily calculated by applying his or her rate of pay to the amount of short-term leave taken and would not require individual fact finding." *Id.* Indeed, once the jury determines what duration of military leave is comparable to the non-military leave, the necessary "calculations can all be made by computer" and it is likely that "[n]o additional hearings would be necessary to determine" at least the gross amount of damages if not the entire "relief." *Id.* (citing *Johnson v. Meriter Health Servs. Emp. Ret. Plan,* 702 F.3d 364, 372 (7th Cir. 2012)). To the extent that additional proceedings are necessary on the amount of offset, that issue can likely be resolved by either summary judgment or a special master. *See* Fed. R. Civ. P. Rule 53. But even if this remaining issue must be presented to a jury, there is no reason that this issue cannot be bifurcated from all other issues in the case.

At the status conference on March 11, 2025, Defendants argued that bifurcating damages or allowing two separate juries to decide damages issues was prohibited by a Third Circuit case, *Romer v. Baldwin,* 317 F.2d 919 (3d Cir. 1963). Not only does the subsequent decision by the Third Circuit in *Paoli* refute that assertion, but the actual holding of *Romer* does not support Defendants' assertion. In *Romer*, a jury had returned a verdict that defendants were not liable in a personal injury action, but also determined the amount of plaintiff's damages. *Romer,* 317 F.2d at 922. On appeal, the Third Circuit reversed and remanded the liability determination, but also addressed whether a jury on remand should determine just liability or both liability and damages. *Id.* The Third Circuit held a new trial on both liability and damages was necessary because the damage finding was "divorced from practical effect." *Id.* at 923. The Third Circuit was concerned that the amount of damages was impacted by jurors' understanding that the amount would not actually have to be paid. *Id.* There is no parallel here. The first jury's determination would not be divorced from practical effect. They would make a determination whether

9

Defendants were liable, and if so, for what amount (whether in number of paid leave days or gross damages before offset) and with the understanding or instruction that the amount may be later reduced in subsequent proceedings to account for pay from the military. Thus, nothing in *Romer* prevents bifurcating these two issues related to damages.

**IV.    Defendants' Recent Suggestion That the Data From DOD or DHS Are Relevant to the Merits is Belied by Defendants' Failure to Seek these Records in Discovery**

At the status conference on March 11, 2025, Defendants suggested that the data from DOD and DHS are necessary to address liability and class certification issues. But that assertion is inconsistent with the reasons why these records were sought *by Plaintiff* and the basis on which the Court found good cause to issue the subpoenas. In seeking permission from the Court to issue these subpoenas, Plaintiff repeatedly explained that the data sought from the DOD and DHS were relevant only for one purpose – because the data "is necessary to determine the damages." ECF No. 209 at 2; *see* ECF No. 169 at 3; ECF No. 128 ¶ C. Specifically, Plaintiff explained that "[t]o calculate differential pay for Count III Subclass members, Plaintiff' will need to offset the amounts that members of the Count III Subclasses were paid by the [military] against the American Airlines pay Plaintiff contends they should have received." ECF No. 169 at 3; ECF No. 209 at 2; ECF No. 128 ¶ C. And the basis for this Court finding good cause in each of its orders allowing the issuance of these subpoenas to the DOD and DHS was only because the remedy Plaintiff seeks for Count III is differential pay – the difference between compensation Plaintiff alleges American ought to have paid members of the Count III Subclasses and their actual military pay. ECF Nos. 212 (DOD & DHS), 170 (DHS), 138 (DOD), 129 (DOD). The only reason for the issuance of these subpoenas was for purposes of damages.

Yet, Defendants now belatedly assert that the data from the DOD and DHS are somehow relevant to their defense to liability (or for purposes of a decertification motion). But Defendants

10

*never* sought these records from the DOD or DHS – even the stipulated requests show that Plaintiff sought to subpoena the records – and certainly not for any purpose other than damages. Each time, the subpoenas were sought by Plaintiff. ECF No. 169 at 1; ECF No. 209 at 1; ECF No. 128 ¶ C. If Defendants considered the records from the DOD and DHS relevant to issues on the merits or class certification, they could have sought them as early as August 13, 2019 because the Second Scheduling Order (as well as the Third Scheduling Order) ordered the parties to "proceed with class action and merits discovery *excluding the issue of damages*." ECF No. 64 ¶ 1; ECF No. 68 ¶ 3. Despite having years to seek these records if they thought these records were relevant to some issue other than damages, Defendants did not do so. Defendants' failure to seek such discovery earlier should not prevent a bifurcated trial now.

      Precisely because Plaintiff considered these records *only relevant* to the issue of damages, and specifically the amount of the reduction to calculate differential pay, Plaintiff was prevented from issuing subpoenas until the issuance of the Scheduling Order dated October 19, 2021. ECF No. 127. That Order provided: "*All fact discovery* shall proceed forthwith and continue in such a manner as will assure that all requests for, and responses to, discovery will be served, noticed, and completed by March 31, 2022." *Id.* ¶ 2. Less than two months later, on December 2, 2021, "Plaintiff [sought] to subpoena certain categories of documents from the United States Department of Defense related to members of the Count III Subclass." ECF No. 128 ¶ C. That Request explained as follows: "As the remedy Plaintiff seeks for Count III is differential pay – the difference between compensation Plaintiff alleges American ought to have paid members of the Count III Subclass and their actual military pay – Plaintiff believes these documents and information are relevant to the alleged damages in this action." *Id.* That was the sole basis for seeking these records and the order granting that request. ECF No. 129 ¶ 3.

After the DOD had still not produced records in response to the subpoena and after a conference with counsel, this Court entered an order on April 18, 2022 clarifying that the "deadlines for any expert reports and summary judgment motions and briefs are not applicable as to information to be provided by the Department of Defense *as to damages*." ECF No. 159 ¶ 8 (emphasis added). In short, that Order made clear that the only issue for which the deadline for discovery remained open was as to damages based on records to be produced by the DOD and the deadline to seek discovery for any other purpose had passed. Thus, Defendants' argument that these records are relevant or necessary to any other issues is precluded by the deadlines previously established by the Court.

V.      **The Interest of Justice Favors Bifurcation**

As Defendants noted at the status conference on March 11, 2025, this case is one of several cases that were filed alleging that a number of airlines' practice of providing paid leave for several forms of non-military leave but not providing paid leave for short-term military leave violated USERRA § 4316(b). But this case was filed in September 2018, three months *before* any of those other cases. See Scimone Decl. ¶ 2. One of those cases (*Clarkson v. Alaska*) settled within a few months of trial (after summary judgment was reversed), with final approval granted. Barton Decl. ¶ 4. Another (*Huntsman v. Southwest*) also recently settled with a trial only a few months away. Scimone Decl. ¶ 3. Despite the progress of these other cases, Defendants offer no solution to allow this case to progress and would simply prefer that this case stagnate while waiting on the DOD and DHS to produce data.

Nor is the delay confined to a matter of months. Based on the experience of Class Counsel – who are also Class Counsel in these other cases – the time for the DOD to produce this data will likely be substantial. *See* Scimone Decl ¶ 7. The recent reductions of employees in

the federal government suggests that will likely exacerbate that delay. *E.g. id.* ¶ 8. Even if the DOD produces all of the data by September 2025, which is unlikely given the history of DOD producing this data in other cases, it will likely require months for the experts to review the data, perform calculations, and prepare their expert reports. *See id.* ¶ 5. Once the expert reports are prepared, the parties will undoubtedly want to take depositions of the experts. In short, it is likely that expert reports and discovery on this one remaining issue will not be complete until at least early 2026. Such continued delay is inconsistent with the purpose of the Rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. Rule 1.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to bifurcate should be granted and the Court should either bifurcate the issues of liability from damages or bifurcate the offset to or reduction of damages based on military pay received by Class Members from all other issues in the case.

Dated: April 10, 2025

Respectfully submitted,

R. Joseph Barton
(admitted *pro hac vice*)
THE BARTON FIRM LLP
1633 Connecticut Ave., Ste. 200
Washington D.C. 20009
Telephone: (202) 734-7046
jbarton@thebartonfirm.com

Adam Harrison Garner (Bar I.D. 320476)
The Garner Firm Ltd.
1617 John F. Kennedy Blvd., Suite 550
Philadelphia PA 19103
Telephone: (215) 645-5955
Facsimile: (215) 645-5960
adam@garnerltd.com

Michael J. Scimone
(admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue 25th Floor
New York, NY 10017
Tel: (212) 245-1000
mscimone@outtengolden.com


Peter Romer-Friedman
(admitted *pro hac vice*)
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street, NW, Suite 300
Washington, DC 20006
Tel: (202) 355-6364
peter@prf-law.com

Matthew Z. Crotty
(admitted *pro hac vice)*
RIVERSIDE NW LAW GROUP, PLLC
905 W. Riverside Ave.
Suite 208
Spokane, WA 99201
Tel: (509) 850-7011
mzc@rnwlg.com

Thomas G. Jarrard
(admitted *pro hac vice)*
LAW OFFICE OF THOMAS G. JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Tjarrard@att.net

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

      I, Ming Siegel, hereby certify that on April 10, 2025, I electronically filed the foregoing **Memorandum in Support of Plaintiff's Motion for Bifurcation of Trial & Addressing Issues Requested at the March 11, 2025 Status Conference** using the CM/ECF system, which sent notification of such filing to all counsel of record in this case.

_____
Ming Siegel