# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAMES P. SCANLAN, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> -vs.- <br><br> AMERICAN AIRLINES GROUP INC., and AMERICAN AIRLINES, INC., <br><br> Defendants. | Civil Action No. 2:18-cv-04040-HB |

## DEFENDANTS AMERICAN AIRLINES, INC. AND AMERICAN AIRLINES GROUP INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE TRIAL

Jason Zarrow (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
jzarrow@omm.com

M. Tristan Morales (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye St. NW, Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
tmorales@omm.com

Mark W. Robertson (*admitted pro hac vice*)
Anton Metlitsky (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
mrobertson@omm.com
ametlitsky@omm.com

Kenneth A. Murphy (PA 58162)
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Telephone: (215) 656-3300
ken.murphy@us.dlapiper.com

*Attorneys for Defendants American Airlines Group Inc. and American Airlines, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT....................................................................................................................... 3

I.      THE MILITARY'S RECORDS ARE RELEVANT TO LIABILITY .............................. 4

II.     IT WOULD BE IMPROPER TO BIFURCATE DAMAGES ACROSS TWO
         TRIALS.................................................................................................................. 10

CONCLUSION.................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bagnall v. City of Sunrise*,
2011 WL 3715123 (S.D. Fla. Aug. 24, 2011).............................................................6

*Barr Lab'ys, Inc. v. Abbott Lab'ys*,
978 F.2d 98 (3d Cir. 1992)...........................................................................10

*Botey v. Green*,
2017 WL 11679726 (M.D. Pa. June 8, 2017)...........................................................10

*Castle v. Sangamo Weston, Inc.*,
837 F.2d 1550 (11th Cir. 1988) ......................................................................11

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009)..............................................................................1, 5

*Huntsman v. Sw. Airlines Co.*,
2021 WL 391300 (N.D. Cal. Feb. 3, 2021) ..............................................................5

*Jones-Silverman v. Allstate Fire & Casualty Ins. Co.*,
2017 WL 3262453 (E.D. Pa. July 31, 2017)..............................................................4

*Leisek v. Brightwood Corp.*,
278 F.3d 895 (9th Cir. 2002) ......................................................................5, 6

*Lis v. Robert Packer Hosp.*,
579 F.2d 819 (3d Cir. 1978)...........................................................................3

*Lowe v. Phila. Newspapers, Inc.*,
594 F. Supp. 123 (E.D. Pa. 1984) ....................................................................10

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
998 F.2d 1144 (3d Cir. 1993)...........................................................................9

*In re Paoli R.R. Yard PCB Litigation*,
113 F.3d 444 (3d Cir. 1997)..........................................................................12

*Pease v. Lycoming Engines*,
2011 WL 4458841 (M.D. Pa. Sept. 23, 2011) ..............................................................3

*Reeves v. Travelers Cos.*,
2017 WL 1361546 (E.D. Pa. Apr. 11, 2017) .........................................................4, 12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Romer v. Baldwin*,
    317 F.2d 919 (3d Cir. 1963)..................................................................................11, 12

*Sweigart v. Voyager Trucking Corp.*,
    2024 WL 3565306 (3d Cir. July 29, 2024)................................................................3

*Travers v. Fed. Express Corp.*,
    8 F.4th 198 (3d Cir. 2021) .........................................................................................7

*Treadways LLC v. Travelers Indem. Co.*,
    467 F. App'x 143 (3d Cir. 2012) ...............................................................................8

*US Airways, Inc. v. Sabre Holdings Corp.*,
    938 F.3d 43 (2d Cir. 2019)........................................................................................11

*Veikos v. Trs. of Univ. of Penn.*,
    2023 WL 5939864 (E.D. Pa. Sept. 12, 2023) ...........................................................9

**Statutes**

38 U.S.C. § 4312...........................................................................................................5

38 U.S.C. § 4316(b) .......................................................................................................1

38 U.S.C. § 4316(b)(1)(A)..............................................................................................7

38 U.S.C. § 4316(b)(1)(B) ..............................................................................................5

**Regulations**

70 Fed. Reg. 75,246, 75,263 (2005) ..............................................................................1

**Rules**

Fed. R. Civ. P. 42(b) ..................................................................................................3, 10

Fed. R. Civ. P. 42 Advisory Committee Note - 1966 Amendment .................................3

Fed. R. Evid. 401 ....................................................................................................2, 7, 8

**INTRODUCTION**

Plaintiffs contend that because they receive pay during jury-duty and bereavement leave, they are entitled under Section 4316(b) of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4316(b), to pay during "short-term military leave."  In their motion for bifurcation (Dkt. 227-1), Plaintiffs ask the Court to bifurcate liability from damages.  Their thesis:  The military's records are not relevant to the comparability inquiry under 20 C.F.R. § 1002.150(b), which can be tried separately from damages.  Plaintiffs are wrong for one simple reason:  They ignore a threshold element of their Section 4316(b) claims.

Section 4316(b) provides that "a person who is absent from a position of employment by reason of service in the uniformed services shall be (A) deemed to be on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay and who are on furlough or leave."  38 U.S.C. § 4316(b).  Section 1002.150(b)'s comparability inquiry is a regulatory gloss on the statute's last requirement, contained in Section 4316(b)(1)(B).  *See* 70 Fed. Reg. 75,246, 75,263 (2005).  But contrary to Plaintiffs' thesis, comparability is not the *only* element a plaintiff must prove to establish a Section 4316(b) claim.

To prove a Section 4316(b) claim, the plaintiff must first establish that his absence from work was "by reason of service in the uniformed services."  38 U.S.C. § 4316(b).  This statutory language—"by reason of"—imposes a causation requirement.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).  To satisfy this element, the plaintiff must prove that he was absent because of covered military service during a period of leave for which he seeks benefits, and not for some other reason.  If the plaintiff actually took a personal day off, or visited his

doctor, he has no claim under Section 4316(b), even if his leave is marked as a "military leave" in his employer's records.  By its terms, Section 4316(b) protects only absences from work because of military service.

The military's service records are directly relevant to this element.  The records will show when absent class members performed service.  If the military's records match Defendants' leave records, then this element will be satisfied.  But if the military's records do not match Defendants' leave records, it is doubtful an absent class member can satisfy the "by reason of" element, at least without coming forward with additional proof showing he performed covered military service on the day(s) in question.  For example, if Defendants' records reflect a three-day stretch of leave but there is no corresponding military service record, it is questionable whether, without more, the class member could make out a *prima facie* case.  The military's records are more probative of when employees actually performed service than Defendants' leave records, which reflect only employee self-reports (usually without providing written military documentation) of military service.  But regardless the weight of the military's service records, there is no doubt the records are *relevant* to the "by reason of" element of the class's claims.  The records will make it "more or less probable," Fed. R. Evid. 401, that class members were absent from their employment by reason of covered military service on the days in question.

This "by reason of" requirement is a threshold element that must be satisfied *before* the jury can conduct the comparability inquiry under Section 4316(b)(1)(B) and 20 C.F.R. § 1002.150(b).  The jury's task is to compare *protected* military leave to a form of non-military leave, here jury-duty and bereavement leave.  If a period of leave was not "by reason of" covered service, it is not protected by Section 4316(b) and the claim fails at the threshold.  Under the

2

statute, there would be nothing for the jury to compare.  If it turns out, for example, that a three-day stretch of leave in Defendants' records was not in fact for covered military service, then the jury here would not compare it to jury-duty or bereavement leave.  The jury needs to know what it is comparing before it can undertake any comparison, and the "by reason of" element is critical to the former inquiry.

In short, because the military's service records are relevant to a threshold liability question, Plaintiffs' request for bifurcation fails.  But there is also a practical reason to deny bifurcation.  For the parties, the Court, and jurors alike, this case should only be tried once, and it should be tried right the first time.  No less than the legal requirements of Section 4316(b), practical considerations also counsel strongly against bifurcation.  Defendants understand the desire to press forward.  But trying this case correctly, just once, should be the goal.

All that said, the Court need not resolve the parties' dispute about bifurcation if it agrees the classes should be decertified.  If the Court decertifies the classes, the only claims pending before the Court will be those belonging to named Plaintiffs James Scanlan and Carla Riner.  Obtaining military records for only two individuals should be easy, and then the case can be set for trial.

## ARGUMENT

A court has discretion to order a separate trial of one or more separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b); *Sweigart v. Voyager Trucking Corp.*, 2024 WL 3565306, at *3 (3d Cir. July 29, 2024).  But "[b]ifurcating a trial into separate liability and damages sections is the exception, not the rule."  *Sweigart*, 2024 WL 3565306, at *3; *see also Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978) ("[S]eparation of issues for trial is not to be routinely ordered." (quoting Fed. R. Civ. P. 42 Advisory Committee Note – 1966 Amendment)); *Pease v. Lycoming Engines*, 2011 WL

4458841, at *2 (M.D. Pa. Sept. 23, 2011) ("[B]ifurcation is not meant to be a routine practice."). The movant has the burden to show bifurcation is warranted. *Reeves v. Travelers Cos.*, 2017 WL 1361546, at *1 (E.D. Pa. Apr. 11, 2017); *see also Jones-Silverman v. Allstate Fire & Casualty Ins. Co.*, 2017 WL 3262453, at *1 (E.D. Pa. July 31, 2017).

In this case, bifurcation of liability and damages would be improper because the military records the parties are waiting for are directly relevant to liability. As such, Plaintiffs' sole argument in support of bifurcation—that proceeding with a liability trial would be more efficient because this Court has everything it needs *except* with respect to damages—is incorrect. Nor is there a practical reason to grant bifurcation. The Court should preside in this case over only one trial.

Even if this Court agrees to bifurcate the trial, it should at a minimum deny Plaintiffs' alternative request to "try[] all issues except the issue of the amount of any reduction due to pay by the military." Dkt. 227-1 at 1. That request, which amounts to a request that the Court bifurcate the single damages element across multiple trials, has no basis in law.

## I.    THE MILITARY'S RECORDS ARE RELEVANT TO LIABILITY

Plaintiffs' sole argument in support of bifurcating damages from liability is that the only remaining liability question is comparability, and the military's records are not relevant to that question. *See* Dkt. 227-1 at 7–8 & n.3. Plaintiffs' argument rests on an incorrect premise—namely, that the only "remaining issue of liability," *id*. at 7, is "comparability."

Section 4316(b) provides:

[A] person who is absent from a position of employment *by reason of service in the uniformed services* shall be . . . entitled to such other rights and benefits . . . as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence . . . .

4

38 U.S.C. § 4316(b)(1)(B) (emphasis added). Thus, "[i]n alleging a [S]ection 4316(b)(1) violation, a plaintiff must show the following elements: (1) that he or she is absent from a position of employment; (2) that absence is by reason of service in the uniformed services; and (3) that he or she was denied other rights and benefits not determined by seniority and generally provided by the employer to other employees who are furloughed or on a leave of absence and who have similar seniority, status, and pay." *Huntsman v. Sw. Airlines Co.*, 2021 WL 391300, at *10 (N.D. Cal. Feb. 3, 2021).

The "by reason of" element is right there in the first clause of the statute. And it imposes a causation requirement: service in the uniformed services must be the cause of the employee's absence. *See Gross*, 557 U.S. at 176 ("because of" and "by reason of" have same meaning). Plaintiffs' bifurcation motion simply skips over this element of the class's claims. But the "by reason of" element is no less important than comparability.[1] If the plaintiff was absent because he was performing "service in the uniformed services," then he may be entitled to recover. But if he was absent because he was doing anything else, then his claim for benefits fails at the threshold. *Cf. Leisek v. Brightwood Corp.*, 278 F.3d 895, 901 (9th Cir. 2002) (employee's absence without orders not protected by USERRA's reemployment provision, 38 U.S.C. § 4312). For instance, if a plaintiff was absent to visit a civilian doctor or to take care of a sick child, he would not be entitled to benefits under Section 4316(b). And that is true regardless of whether the absence is marked down in the employer's records as a "military leave." USERRA, by its terms, protects only those absences caused by military service—not those described in the employer's records as military leave.

---

[1] Plaintiffs appear to confuse the Third Circuit's statement that comparability is "critical" to their claims, with a suggestion that comparability is the *only* relevant question for purposes of liability. *See* Dkt. 227-1 at 7.

The military's service records are directly relevant to the "by reason of" element of the class's claims. Those records will identify, for each class member, "the begin and end dates of each period of military service recorded in the relevant department's systems." Dkt. 212 ¶ 2. As such, they will tend to prove (or disprove) each class member's assertion that they were absent because they were performing military service on any given day. *Cf. Leisek*, 278 F.3d at 901 (similar issue under Section 4312); *Bagnall v. City of Sunrise*, 2011 WL 3715123, at *6 (S.D. Fla. Aug. 24, 2011) (similar issue under Section 4316(d)).

Consider some hypothetical examples:

- Defendants' records show that a pilot took military leave from January 14-16, 2018. But there are no military records showing service on or even around those dates. Defendants will have a strong argument that the absence was not "by reason of" covered military service because the military has no record of covered military service.

- Defendants' records show that a pilot took five days of military leave from March 1-5, 2019. But the military's records show that the pilot performed military service on March 1st and 2nd, but not March 3rd, 4th, or 5th. Defendants will have a strong argument that the employee cannot recover for the last three days because those days of absence were not "by reason of" covered military service.

- Defendants' records show that a pilot took seven days of military leave from August 21-27, 2017. The military's show that the pilot performed military service on all those days, except the 27th. Additional evidence would be needed to determine whether that day is protected. The pilot may claim that he was traveling to his AA flight base, which may be protected by USERRA depending on various timing factors. But he would need to testify to that effect. Without testimony that the pilot was excused under USERRA for the 27th, that day would appear not to be protected and the pilot would only be entitled to pay for six days (assuming comparability).

- Defendants' records show that a pilot took 16 days of military leave, from December 1-16. But the military's records show that the pilot performed military service on all of those days *and* on December 17. The leave would actually be 17 days, and the pilot's absence would fall outside the class's claims, which are limited to leaves lasting 16 days or fewer.

As these examples illustrate, the military's records are directly relevant to the "by reason of" element of the classes' claims. In some instances, the records are likely to be dispositive.

6

But even if they are not, there is no question that they will tend to make it "more or less probable," Fed. R. Evid. 401, that an employee was absent "by reason of" military service on the days for which he seeks pay.

An analogy to sick leave brings the point home. Imagine a plaintiff with a claim that he was denied sick leave benefits protected by state law. The first thing the plaintiff would need to prove is that he was actually sick on the day(s) in question. Without doubt, medical records would be relevant to that inquiry, even if the plaintiff had previously reported to his employer that he was out because he was sick. So too here. The military records are relevant to liability, and the Court should not proceed to trial without relevant evidence. Or imagine a products-liability case where the plaintiff planned to introduce medical records to establish damages. If those medical records would also be relevant to whether the product in question had caused plaintiffs' injuries (that is, if they were also relevant to liability), a court would be ill advised to rush to try liability before the medical records were produced.

In fact, the military records are also relevant to the comparability inquiry because they will inform which periods of absence the jury must compare. As shown above, the "by reason of" requirement is a threshold element in the statute. If an absence was not "by reason of" military service, the employee is not entitled to any pay, and there is no basis for asking about comparability. The jury must determine which absences are protected before it can start comparing anything. *See Travers v. Fed. Express Corp.*, 8 F.4th 198, 202 (3d Cir. 2021) (starting point for the comparison under Section 4316(b) is "employees 'absent from a position of employment by reason of service in the uniformed services'" (quoting 38 U.S.C. § 4316(b)(1))).

Some additional examples illustrate this point.  Assume a five-day leave in Defendants' records.  If the pilot cannot prove that he was actually absent by reason of protected service, then a claim based on that leave would fail at the threshold, and the leave would not be compared to jury-duty or bereavement leave.  Now assume Defendants' records show a Saturday-Monday military leave.  If the jury looked only at Defendants' records, the duration would be three days.  But if the pilot was only performing covered service on Saturday and Sunday and took Monday as a personal day off, the duration of protected leave would be two days.  The military's records may affect the duration of the leaves included in the comparability inquiry.  Or consider a 16-day leave in Defendants' records.  If the military records showed that the employee was performing military service for 17 days, the leave would not fit within the class definitions and would not be compared by the jury.  Again, the jury needs to know *what* it is comparing (absences that are "by reason of" service) before it can conduct any comparison.

In sum, the military's records are relevant to the statute's "by reason of" requirement.  That requirement is a threshold element of the classes' claims that must be resolved before the jury can reach the question of comparability.  Plaintiffs are therefore wrong that the Court can or should proceed straight to trial on comparability.

Defendants explained all of this in the recent conference in Chambers, yet Plaintiffs offer no response on the merits.  Their sole argument in opposition is that the military records cannot be relevant to liability because *Plaintiffs* requested them for purposes of proving damages.  *See* Dkt. 227-1 at 10–11.  But the reason evidence is requested has no bearing on whether it is probative of liability.  Under Rule 401, relevancy turns on whether evidence has a "tendency to make a [consequential] fact more or less probable."  Fed. R. Evid. 401.  "[E]vidence is irrelevant only when it has *no* tendency to prove the fact."  *Treadways LLC v. Travelers Indem. Co.*, 467 F.

App'x 143, 147 (3d Cir. 2012) (internal quotation marks omitted).  The military's records are unquestionably relevant to liability.  And that is true regardless of who requested them or the reason for the request.

Moreover, the reason Defendants did not seek the records earlier is because the records would help Plaintiffs prove liability.  Defendants cannot be faulted for declining to request documents for an opposing party.  Indeed, Defendants' position is that Plaintiffs cannot make out a *prima facie* liability case without the military's records because Defendants' leave records are hearsay if offered to prove that employees *actually* performed service.  They are employee self-reports (frequently without documentation) that they intended to perform (or previously performed) military service, not proof the employees actually performed military service on any particular day.  Again consider a case involving sick-leave benefits.  An employee's report that he was out sick would not be proof that he was actually sick on the day in question.  But even if the self-report had some probative value, it still would make no sense to proceed to trial while waiting for medical records that would tend to prove or disprove the employee's claim.  Or consider the products-liability suit discussed above.  It would be improper to rush to trial on liability before receiving medical records relevant to liability, no matter who requested them.  There is no justification for proceeding to trial without relevant evidence.[2]

---

[2] Whether or not there would be a jury reexamination problem under the Seventh Amendment depends on the inquiries allowed at the second phase.  If the Court permitted the jury to determine, for purposes of calculating damages, that certain leave days in Defendants' records were not "by reason of" covered military service based on the military's service records, then there would be a reexamination problem.  In that scenario, the jury in phase 1 would find Defendants liable for failing to compensate plaintiff for those days.  And then the jury in phase 2 would be permitted to effectively unwind that liability finding for days where there are no corresponding service records.  That would violate the Seventh Amendment.  *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1183–85 (3d Cir. 1993) (trial court's suggestion that damages jury could, as part of its damages calculation, consider causation question already determined by liability jury was "clear violation of the Seventh Amendment"); *see also Veikos v. Trs. of Univ. of Penn.*, 2023 WL 5939864, at *3 (E.D. Pa. Sept. 12, 2023) (jury considering damages may not "reexamine the still-extant liability jury's causation opinion").

Rushing to trial on liability would also be ill-advised from a practical perspective. Two trials—which is what Plaintiffs propose—will impose serious costs on the Court, the jury pool, and the parties. Defendants recognize this case has been pending for many years, but there is a powerful reason to try the case only once, correctly. Nor is there a real downside to waiting. This is not an especially complex case of the sort where bifurcation would enhance juror comprehension. *See Barr Lab'ys, Inc. v. Abbott Lab'ys*, 978 F.2d 98, 115 (3d Cir. 1992). And Plaintiffs do not suggest that a single trial would be inconvenient or prejudicial. See Fed. R. Civ. P. 42(b). This Court should thus abide by "the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties." *Botey v. Green*, 2017 WL 11679726, at *1 (M.D. Pa. June 8, 2017) (citing *Lowe v. Phila. Newspapers, Inc.*, 594 F. Supp. 123, 125 (E.D. Pa. 1984)). It should conduct a single trial and do so correctly, with all of the relevant evidence.

## II.   IT WOULD BE IMPROPER TO BIFURCATE DAMAGES ACROSS TWO TRIALS

As an alternative to bifurcating damages from liability, Plaintiffs ask the Court to "bifurcate the offset to or reduction of damages based on military pay received by Class Members from all other issues in this case." Dkt. 227-1 at 13. In other words, they would have the first jury determine "whether Defendants were liable, and if so, for what amount (whether in number of paid leave days or gross damages before offset)," and have the second jury determine the "reduc[tion] . . . to account for pay from the military." *Id.* at 9–10. There is no legal basis for that sort of bifurcation.

Plaintiffs have repeatedly stated—and this Court has reiterated—that damages here are equal to "differential pay," or the difference between their civilian pay and their military pay. *See, e.g.*, SAC at 32 (requesting declaration that Defendants must pay plaintiffs "an amount equal to the difference between their regular compensation while working at AAI and the amount

10

of compensation received from the government for their military service during periods of short-term military leave"); Dkt. 212 ¶ 2 ("Plaintiff seeks as relief for the Count III Subclasses 'differential pay'—the difference between the compensation Plaintiff alleges [Defendants] ought to have paid members of the Count III Subclass and their military pay.").  Now, Plaintiffs propose splitting that number into two component parts and conducting a different trial for each. The jury at the first trial would determine how much Plaintiffs would have earned in regular compensation from Defendants on the days they were allegedly absent for military leave—what Plaintiffs call "gross damages."  Dkt 227-1 at 13.  At the second trial, the jury would determine how much Plaintiffs were paid by the military for those same days.  The difference between those two figures represents the damages to which Plaintiffs believe they are entitled.

But neither of those two figures has any independent significance, and no one suggests that either represents what Defendants would have to pay were Plaintiffs to prevail.  The Third Circuit in *Romer v. Baldwin*, 317 F.2d 919 (3d Cir. 1963), expressly warned against inviting jurors to decide those sorts of hypothetical amounts that will not "have to be paid."  *Id.* at 923; *cf. US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 60 n.6 (2d Cir. 2019) (expressing "general doubt . . . as to the wisdom of" crediting verdicts based on "hypothetical questions"); *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1560–61 (11th Cir. 1988) (invalidating verdict based on "conditional" ruling).  This Court should deny Plaintiffs' request to have a jury engage in such a hypothetical exercise not once, but twice.

Plaintiffs' efforts to distinguish *Romer* fail.  They contend that here, unlike in *Romer*, "[t]he first jury's determination would not be divorced from practical effect" because the jury would be determining the "amount (whether in number of paid leave days or gross damages before offset)" for which Defendants were liable.  Dkt. 227-1 at 9–10.  But, as Plaintiffs

11

immediately proceed to acknowledge, Defendants are actually *not* liable for, and so will not have to pay, that "gross damages" amount.  Rather, the jury will determine "gross damages" "*with the understanding or instruction* that the amount may be later reduced . . . to account for pay from the military." *Id.* at 10 (emphasis added).  Having a jury determine a "damages" figure it "understand[s]" the defendant will not have to pay is precisely what *Romer* warned against: "[A]wareness that damages as determined by the fact finder *will actually be imposed upon the defendant* and awarded to the plaintiff is an important influence upon the process of arriving at a fair and meaningful verdict.  Such awareness is in itself a significant safeguard against capricious or cavalier treatment of the issue of damages." *Romer*, 317 F.2d at 923 (emphasis added).  This case is thus indistinguishable from *Romer*.[3]

On the other side of the ledger, Plaintiffs offer no justification—much less any legal basis—for bifurcation of a singular damages element, despite it being their burden to do so.  *See Reeves*, 2017 WL 1361546, at *1.  To obfuscate the absence of a legal basis for their request, Plaintiffs simply try to redefine their military pay as an "offset" to what they claim are the true damages: how much they would have earned working for Defendants.  In so doing, they appear to be suggesting that Plaintiffs' military pay is an affirmative defense (an "offset" defense).  But that mischaracterizes the damages inquiry.  A reduction in the amount of military pay is part and parcel of Plaintiffs' *prima facie* damages case, as explained immediately above.  *Supra* at 10–11.  So, Plaintiffs' proposal is that the Court bifurcate a *single* element—damages—into multiple

---

[3] Plaintiffs spill much ink on the Third Circuit's decision in *In re Paoli R.R. Yard PCB Litigation*, 113 F.3d 444 (3d Cir. 1997), and suggest that *Paoli* somehow undermines *Romer*.  But the relevant issue in *Paoli* was whether bifurcating that trial violated the Seventh Amendment by prompting two juries to decide similar issues. *Id.* at 452 n.5.  As to Plaintiffs' proposed alternative bifurcation of the *damages* element, Defendants' argument is different.  It is that such bifurcation is impermissible for the separate and independent reason that it asks the first jury to make a "gross damages" determination that does not reflect Defendants' actual liability.

pieces.  Unsurprisingly, Plaintiffs cite no authority suggesting that sort of bifurcation is proper.

None exists.  And Third Circuit precedent precludes this Court from doing so.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion

to bifurcate the trial.

Dated: May 1, 2025

Respectfully submitted,

By: */s/* Mark W. Robertson

| | |
|---|---|
| Jason Zarrow (*admitted pro hac vice*)<br>O'MELVENY & MYERS LLP<br>400 South Hope Street, 19th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 430-6000<br>Facsimile: (213) 430-6407<br>jzarrow@omm.com | Mark W. Robertson (*admitted pro hac vice*)<br>Anton Metlitsky (*admitted pro hac vice*)<br>O'MELVENY & MYERS LLP<br>1301 Avenue of the Americas<br>New York, NY 10019<br>Telephone:  (212) 326-2000<br>Facsimile:  (212) 326-2061<br>mrobertson@omm.com<br>ametlitsky@omm.com |
| M. Tristan Morales (*admitted pro hac vice*)<br>O'MELVENY & MYERS LLP<br>1625 Eye St. NW, Washington, DC 20006<br>Telephone: (202) 383-5300<br>Facsimile: (202) 383-5414<br>tmorales@omm.com | Kenneth A. Murphy (PA 58162)<br>One Liberty Place<br>1650 Market Street, Suite 5000<br>Philadelphia, PA 19103-7300<br>Telephone: (215) 656-3300<br>ken.murphy@us.dlapiper.com |

*Attorneys for Defendants American Airlines
Group Inc. and American Airlines, Inc.*

13

## CERTIFICATE OF SERVICE

I, Mark W. Robertson, hereby certify that on May 1, 2025, I electronically filed the foregoing Memorandum in Opposition to Plaintiffs' Motion to Bifurcate Trial using the CM/ECF system, which sent notification of such filing to all counsel of record in this case.

/s/ Mark W. Robertson